**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GALINA M. NOVAKHOVA,** | : | |
| ***Plaintiff,*** | : | **CASE NO. 2:26-CV-0585-CFK** |
| **v.** | : | |
| **ANJELIQUE J. BONILLA, et al.,** | : | |
| ***Defendants*** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION AND REARGUMENT OF ECF NOS. 113 AND 114 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) AND LOCAL CIVIL RULE 7.1(g), WITH ALTERNATIVE RELIEF UNDER RULE 60(b)(1) ONLY IF THE COURT TREATS THE DISPOSITION AS FINAL**

## NON-WAIVER AND APPELLATE PRESERVATION

Plaintiff Galina M. Novakhova, proceeding *pro se*, files this Memorandum and the accompanying Motion without waiving, abandoning, limiting, conceding, or releasing any claim, capacity allegation, remedy, jurisdictional position, objection, constitutional argument, service position, Rule 55 position, appellate position, or other substantive or procedural right previously asserted or otherwise available, including but not limited to her rights under the First Amendment, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., the Due Process Clause, the Federal Rules of Civil Procedure, and the Local Civil Rules of this Court. Without limiting the

foregoing, nothing in this filing waives: (1) Plaintiff's claims for compensatory and punitive damages; (2) her claims against every Defendant in both individual and official capacities; (3) her claims against private co-conspirators; (4) her right to pursue criminal referrals through the appropriate authorities; or (5) any remedy available under 42 U.S.C. §§ 1983, 1985(3), and 1986, the Constitution, or applicable state law.

Plaintiff expressly preserves her right to seek appellate review of ECF Nos. 113 and 114 and of any ruling on this Memorandum, regardless of the disposition of this Memorandum and subject to the governing rules of appellate jurisdiction and timing.

Plaintiff affirmatively states that ECF No. 21 is NOT the operative pleading in this action; the operative pleading is ECF No. 8, the Amended Complaint, as both ECF No. 9 (Jan. 30, 2026) and ECF No. 13 (Feb. 13, 2026) independently characterize it. ECF No. 21 is a subsequent filing whose status as any further amendment has never been authorized by Rule 15(a) motion, court order, or written consent.

Plaintiff addresses directly, in Part IV.B below, her own prior ECF No. 44, which contains contrary wording, and explains there why that wording does not establish the superseding effect Plaintiff disputes.

Nothing in this Memorandum shall be construed as consent to any characterization of ECF No. 21 as the operative pleading, sole or otherwise, or as a concession concerning any disputed pleading-history issue preserved elsewhere in the record.

**ALL RIGHTS RESERVED WITHOUT PREJUDICE**

If appellate review becomes available, Plaintiff further preserves the legal question of the scope and application of judicial or quasi-judicial immunity; the Third Circuit reviews such immunity determinations de novo when properly before it. See *Dotzel v. Ashbridge*, 438 F.3d 320, 324-25 (3d Cir. 2006). Plaintiff does not contend that Dotzel independently creates appellate jurisdiction over this interlocutory dismissal; she cites it only to preserve the applicable standard of review if and when appellate jurisdiction exists.

**RESERVATION OF RIGHT TO SEEK CORRECTION OR SUPPLEMENTATION**

Plaintiff expressly reserves the right to seek leave, as permitted by the Federal Rules of Civil Procedure, the Local Civil Rules, and applicable Court orders, to correct any inadvertent factual, clerical, typographical, citation, cross-reference, formatting, or other error subsequently identified in this Memorandum, Motion, Declaration, or accompanying exhibits, and to request supplementation where necessary to clarify the record or address a material omission. Plaintiff proceeds pro se, without litigation staff, and has undertaken extensive research, preparation, and review while simultaneously facing multiple pending dispositive motions, Court-imposed deadlines, and previously noticed religious-observance limitations. Plaintiff submits these papers within the applicable filing period to preserve her right to seek reconsideration and does not intend any inadvertent omission, misstatement, or incomplete citation to constitute abandonment, concession, or knowing waiver of any claim, argument, objection, evidence, or remedy otherwise preserved. Plaintiff respectfully requests that, should a material correction or supplementation become necessary, the Court permit an appropriate corrective filing upon timely motion and a showing sufficient under the applicable procedural rules, without unnecessary prejudice to any party.

# TABLE OF CONTENTS

**NON-WAIVER AND APPELLATE PRESERVATION** ........ 1

**RESERVATION OF RIGHT TO SEEK CORRECTION OR SUPPLEMENTATION** ........ 3

**TABLE OF AUTHORITIES** ........ 7

**I. INTRODUCTION: THE COURT SHOULD VACATE ECF NOS. 113 AND 114 BECAUSE THEY WERE ENTERED BEFORE PLAINTIFF'S OPPOSITION PERIOD ON ECF NO. 110 HAD EXPIRED, AND BECAUSE THE TRUNCATED BRIEFING DETERMINED THE SCOPE OF A MERITS RULING ON JUDICIAL IMMUNITY** ........ 11

First, was Plaintiff's response period on ECF No. 110 cut short? ........ 11
Second, why did the shortened period affect the scope of what the Court decided? ........ 11
Third, what relief should the Court grant? ........ 12

**II. FACTS AND PROCEDURAL BACKGROUND: THE RECORD ESTABLISHES THAT ECF NO. 113 WAS SIGNED FOUR DAYS AFTER ECF NO. 110 WAS FILED, THAT ECF NOS. 113 AND 114 WERE ENTERED SEVEN DAYS AFTER ECF NO. 110 WAS FILED, AND THAT BOTH DATES PRECEDED THE DATE PLAINTIFF'S RESPONSE WAS PROCEDURALLY DUE** ........ 15

**III. GOVERNING STANDARD: ECF NOS. 113 AND 114 ARE INTERLOCUTORY ORDERS THAT RULE 54(B) AND LOCAL RULE 7.1(G) AUTHORIZE THIS COURT TO RECONSIDER** ........ 25

This Memorandum Does Not Implicate Domestic-Relations Abstention ........ 27
Plaintiff's Georgia UCCJEA/PKPA Jurisdictional Claims Require Consideration Under the Governing Federal and State Statutes and Bear Directly on the Jurisdictional and Constitutional Issues Presented by ECF Nos. 113 and 114 ........ 28

**IV. ANALYSIS** ........ 31

A. QUESTION ONE: THE RESPONSE PERIOD WAS CUT SHORT, BECAUSE THE COURT DECIDED ECF NO. 110 BEFORE THE PERIOD LOCAL RULE 7.1(C) RESERVED HAD RUN AND WITHOUT ANY ORDER SHORTENING IT ........ 31
*1. The Challenged Ruling.* ........ *31*
*2. The Specific Error.* ........ *31*
*3. The Governing Authority.* ........ *32*
*4. The Record Support.* ........ *35*
(a) ECF No. 108 Expressly Preserved Later Merits Briefing and Could Not Have Served as an Opposition to a Motion That Did Not Yet Exist. ........ 36
(b) Plaintiff Was Actively Preparing the ECF No. 110 Opposition, Filed ECF No. 117 First for a Specific Scheduling Purpose, and Discovered the Dismissal Only While Completing That Filing. ........ 36
(c) The Premature Ruling Occurred During a Religious-Observance Period That Plaintiff Had Noticed in Advance and That the Court Had Already Partially Accommodated. ........ 37
*5. The Material Prejudice.* ........ *39*
*6. Plaintiff's Absence of a Pre-Ruling Opposition Should Not Be Treated as Forfeiture Under Rule 46.* ........ *40*
*7. The Requested Correction.* ........ *42*
B. THE GOVERNING PLEADING MUST BE IDENTIFIED BEFORE ANY ACT OR REMEDY CAN BE ASSESSED: ECF NO. 21 IS NOT THE OPERATIVE PLEADING, AND ECF NO. 44 DOES NOT HOLD OTHERWISE ........ 42
*1. The Challenged Ruling.* ........ *42*
*2. The Specific Error.* ........ *42*
*3. The Governing Authority.* ........ *43*

*4. The Record Support, Including ECF No. 44's Contrary Wording.* .......... *43*
*5. The Material Prejudice.* .......... *46*
*6. The Sequence the Court Should Follow Before Any Dismissal With Prejudice.* .......... *47*
*7. The Requested Correction.* .......... *47*
C. QUESTION TWO: THE SHORTENED RESPONSE PERIOD AFFECTED THE SCOPE OF THE DISMISSAL, BECAUSE A TIMELY OPPOSITION WOULD HAVE CHANGED WHAT THE COURT DECIDED ON THE MERITS OF IMMUNITY .......... 48
*The question here is different: what would a timely opposition have changed in the merits analysis ECF No. 113 actually performed?* .......... *48*
1. The Court Should Not Have Dismissed Judge McCabe With Prejudice Because ECF No. 113 Narrowed the Conduct Attributed to Her Without Adversarial Testing. .......... 53
*2. The Court Could Not Dismiss Judge Kristiansson With Prejudice for "Judicial Actions" It Never Identified.* .......... *54*
*2A. Each Challenged Act Requires Its Own Act-by-Act Analysis of Source, Allegation, Function, Jurisdiction, and Relief.* .......... *57*
*113. As to Judge McCabe:* .......... *57*
114. As to Judge Kristiansson: .......... 59
(a) Act .......... 59
*The governing framework is as follows:* .......... *60*
*Function* .......... *60*
(b) Act .......... 61
(c) Act .......... 61
(d) Act .......... 62
(e) Act .......... 62
*3. Judicial Immunity Turns on Function, Not Title.* .......... *63*
*4. The Constitutional and Textual Framework Supports, but Does Not Replace, the Controlling Immunity Test.* .......... *64*
*5. The Court Should Correct the Jurisdictional Premise Because ECF No. 113 Relied on a Statute That Does Not Confer the Jurisdiction It Cited.* .......... *69*
*6. Damages, Declaratory Relief, Injunctive Relief, and Capacity Are Not the Same Question and Each Requires Separate Analysis.* .......... *72*
*7. Rooker-Feldman Does Not Bar Claims Based on Independent Injury.* .......... *75*
*8. Leave to Amend and Futility Are Not Resolved by a Bare Assertion of Futility.* .......... *78*
*9. Persuasive Authority Confirms That Judicial Immunity Requires Act-Specific Analysis, Not Categorical Dismissal Based on Judicial Status.* .......... *80*
*10. The Requested Correction.* .......... *81*
D. THE PREMATURE FEDERAL DISMISSAL COMPOUNDED A DOCUMENTED COURSE OF OBSTRUCTION, DISCRIMINATORY TREATMENT, DENIAL OF DUE PROCESS, AND INTERFERENCE ACROSS MULTIPLE FORUMS .......... 82
E. QUESTION THREE: THE COURT HAS AUTHORITY TO GRANT THE RELIEF REQUESTED, AND EACH ITEM OF RELIEF IS TIED TO A SPECIFIC ERROR .......... 85
*1. The Procedural Vehicle.* .......... *85*
*2. Alternatively, If the Court Treats ECF Nos. 113 and 114 as Final for Rule 60 Purposes, the Same Record Supports Relief Under Rule 60(b)(1).* .......... *86*
*3. Records Access: The Transcripts and Records the Act-by-Act Analysis Requires.* .......... *87*
*4. Leave to Amend in the Alternative.* .......... *89*
*5. Appellate Preservation.* .......... *90*

*6. Effect on Appellate Deadlines and the Pending Third Circuit Appeal.* ........ *91*

**V. CONCLUSION AND RELIEF REQUESTED** ........ **92**

## TABLE OF AUTHORITIES

**Cases**

*AFSCME ex rel. Fillman v. Rendell*, 986 A.2d 63 (Pa. 2009) ........................ 64, 65, 66, 68, passim

*Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017) ............................................................ 60, 73, 76

*Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168 (3d Cir. 1990) ........................................................................................................................ 33, 40

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) ...................................................................... 27

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ........................................ 64

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ............................................................................ 32

*Azubuko v. Royal*, 443 F.3d 302 (3d Cir. 2006) ............................................................ 72, 75, 80

*Bellinsky v. Galan*, Nos. 24-1351 & 24-1352 (10th Cir. July 22, 2025) (unpublished) ............... 76

*Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000) ............ 70, 73, 80, passim

*B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013) ............................................................ 75

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821) ........................................................... 65, 68

*Daker v. Keaton*, No. 20-10798, slip op. (11th Cir. Aug. 12, 2021) (per curiam) (unpublished) ................................................................................................................... 74

*Dennis v. Sparks*, 449 U.S. 24 (1980) ..................................................................................... 74

*DiRuggiero v. Rodgers*, 743 F.2d 1009 (3d Cir. 1984) ............................................................ 75

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .... 18, 50, 51, 65, 75, 76, 77, 79, 81, passim

*Dotzel v. Ashbridge*, 438 F.3d 320 (3d Cir. 2006) ............................................................. 89, 90

*Edwards v. Randolph County Sheriff*, No. 25-10843 (11th Cir. Sept. 28, 2026) .......................... 77

*Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486 (3d Cir. 1997) ................ 75, 76

*Ex parte Siebold*, 100 U.S. 371 (1879) ............................................................................... 67, 68

*Figueroa v. Blackburn*, 208 F.3d 435 (3d Cir. 2000) ................................................ 67, 68, 69, 80

*Flemming v. South Carolina Electric & Gas Co.*, 239 F.2d 277 (4th Cir. 1956) ......................... 67

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247 (3d Cir. 2007) ........................................................................................................ 46, 51, 77, 78

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................. 77, 94

*Forrester v. White*, 484 U.S. 219 (1988) ....... 53, 54, 57, 60, 61, 63, 64, 67, 68, 69, 71, 80, passim

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760 (3d Cir. 2000) 53, 54, 57, 60, 61, 62, 63, 64, 67, 68, 69, 71, 80, passim

*Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023) ..................................................................... 63

*Grayson v. Mayview State Hospital*, 293 F.3d 103 (3d Cir. 2002) ........................................ 77, 94

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ........................................ 75, 76, 80

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................ 73

*Hammond v. Acerno*, No. 25-2022 (3d Cir. June 18, 2026) (nonprecedential) ... 35, 47, 51, passim

*Harper v. Merckle*, 638 F.2d 848 (5th Cir. Unit B 1981) ........................................ 80

*Howlett v. Rose*, 496 U.S. 356 (1990) ........................................ 64, 65, 68

*In re Asbestos Products Liability Litigation (No. VI)*, 718 F.3d 236 (3d Cir. 2013) .................... 34

*In re N.G.*, 2018 IL 121939 (Ill. 2018) ........................................ 66, 67, 68

*In the Interest of G.G.B.*, No. 35 WAP 2024 (Pa. Mar. 26, 2026) ........................................ 71

*Kemp v. United States*, 596 U.S. 528 (2022) ........................................ 86

*Lazaridis v. Wehmer*, 591 F.3d 666 (3d Cir. 2010) ........................................ 90

*Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980) ........................................ 79

*Lucarell v. McNair*, 453 F.2d 836 (6th Cir. 1972) ........................................ 79

*Manning v. Manning*, No. 1164 MDA 2022 (Pa. Super. Ct. Feb. 15, 2023) (nonprecedential) ........................................ 60

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ........................................ 64, 68, 95

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................ 32

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) ........... 26, 90

*Mikhail v. Kahn*, 572 F. App'x 68 (3d Cir. 2014) (nonprecedential) .................. 69, 70, 71, passim

*Mikhail v. Kahn*, 991 F. Supp. 2d 596 (E.D. Pa. 2014) ...................................... 69, 70, 71, passim

*Mireles v. Waco*, 502 U.S. 9 (1991) .................... 53, 54, 57, 60, 62, 63, 67, 68, 69, 80, 90, passim

*Montgomery v. Louisiana*, 577 U.S. 190 (2016) ........................................ 67

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) ........................................ 76

*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824) ........................................ 63

*Palowsky v. Campbell*, Nos. 2018-C-1105 c/w 2018-C-1115 (La. June 26, 2019) ...................... 80

*Peeples v. Citta*, 501 F. App'x 109 (3d Cir. 2012) (not precedential) ........................................ 77

*People v. Aguilar*, 2013 IL 112116 (Ill. 2013) ........................................ 66

*Perkins v. Eskridge*, 366 A.2d 21 (Md. 1976) ........................................ 67

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................ 46, 50, 51, 77, 80, passim

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) .................................... 34

*Pulliam v. Allen*, 466 U.S. 522 (1984) ........................................ 70, 75

*Ramos v. Louisiana*, 590 U.S. 83 (2020) ........................................ 65, 68

*Regaolo v. Target Corp.*, No. 25-2514 (3d Cir. Feb. 3, 2026) (nonprecedential) 33, 34, 40, 51, 78, passim

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) ... 66

*Riehm v. Engelking*, 538 F.3d 952 (8th Cir. 2008) ... 76

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989)... 65, 68, 90

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)... 18, 50, 51, 65, 75, 76, 77, 79, 81, passim

*Santosky v. Kramer*, 455 U.S. 745 (1982) ... 52, 66

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ... 50, 51

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)... 28, 76

*Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991)... 33, 34, 35, 40, passim

*Stamus v. Dutcavich*, 938 A.2d 1098 (Pa. Super. 2007)... 59, 60

*State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399 (3d Cir. 2016) ... 25

*Stump v. Sparkman*, 435 U.S. 349 (1978)... 53, 54, 57, 63, 67, 68, 80, 90, passim

*Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719 (1980)... 74

*Thompson v. Thompson*, 484 U.S. 174 (1988)... 75

*Todman v. Mayor & City Council of Baltimore*, No. GLR-19-3296 (D. Md. Sept. 23, 2020), ECF No. 44 ... 67

*Troxel v. Granville*, 530 U.S. 57 (2000) ... 52, 66

*United States v. Peters*, 9 U.S. (5 Cranch) 115 (1809) ... 65

**Constitutional Provisions**

U.S. Const. art. III, § 2... 27, 57, 64, 78

U.S. Const. art. VI, cl. 2... 28, 64, 65, 66, 68, passim

U.S. Const. amend. I ... 27, 39

U.S. Const. amend. XIV, § 1 ... 27, 28, 30, 32, 52

16A Am. Jur. 2d Constitutional Law § 195 ... 67

**Statutes and Rules**

28 U.S.C. § 1292(b) ... 91

28 U.S.C. § 1331... 27

28 U.S.C. § 1738A (Parental Kidnapping Prevention Act) ... 28, 29

42 U.S.C. § 1983... 21, 27, 48, 56, 64, 67, 68, 70, 73, 74, 75, 76, 80, 90, passim

42 U.S.C. § 1985... 21, 27, 48, 56, 64

42 U.S.C. § 1986... 21, 27, 48, 56, 64

42 U.S.C. § 2000bb et seq. (Religious Freedom Restoration Act) .................................. 13, 16, 39

23 Pa. Cons. Stat. §§ 6101-6122 (Protection From Abuse Act) .. 18, 46, 48, 49, 54, 55, 59, 60, 61, 62, 69, 78, 81, 83, 87, 88, passim

23 Pa.C.S. § 6108(d) ........................................................................................................ 59

23 Pa.C.S. § 6117(a) ........................................................................................................ 59

23 Pa.C.S. § 5424 (Uniform Child Custody Jurisdiction and Enforcement Act, temporary emergency jurisdiction) ............................................................................ 30

42 Pa.C.S. § 931(a) ............................................................................... 57, 68, 69, 71, passim

42 Pa.C.S. § 6321 ..................................................................................... 48, 68, 71, passim

62 P.S. § 761 (Interstate Compact on the Placement of Children) ........................................ 57, 78

O.C.G.A. § 19-9-60 ........................................................................................................ 28

O.C.G.A. § 19-9-61 ........................................................................................................ 29

O.C.G.A. § 19-9-62 (Georgia Uniform Child Custody Jurisdiction and Enforcement Act, exclusive, continuing jurisdiction) ............................................................................ 29

O.C.G.A. § 19-9-64 (Georgia Uniform Child Custody Jurisdiction and Enforcement Act, temporary emergency jurisdiction) ........................................................................... 30

Fed. R. Civ. P. 4(m) ................................................................................................ 18, 36

Fed. R. Civ. P. 6(a)(1)(C) ................................................................................................ 25

Fed. R. Civ. P. 6(b)(1)(A) ........................................................ 13, 16, 17, 23, 24, 38, 85, passim

Fed. R. Civ. P. 6(d) ................................................................ 11, 12, 22, 32, 39, 40, 88, passim

Fed. R. Civ. P. 7(a) ........................................................................................ 18, 21, 59, 60

Fed. R. Civ. P. 12(b)(6) ........................................................................ 33, 50, 51, 75, 78, passim

Fed. R. Civ. P. 15(a)(2) ........................................................................................ 42, 77, 89, 94

Fed. R. Civ. P. 26(d)(1) ........................................................................................................ 88

Fed. R. Civ. P. 45 ........................................................................................................ 88

Fed. R. Civ. P. 46 ............................................................................................ 40, 41, 90, passim

Fed. R. Civ. P. 54(b) ........................................................ 12, 13, 23, 25, 26, 85, 86, 91, passim

Fed. R. Civ. P. 55(a) ........................................................................................................ 56

Fed. R. Civ. P. 59(e) ............................................................................ 25, 26, 85, 91, passim

Fed. R. Civ. P. 60(b)(1) ........................................................................ 13, 17, 85, 86, passim

Fed. R. App. P. 4(a)(1)(A) ........................................................................................................ 91

Fed. R. Civ. P. 60(b)(4) ........................................................................................................ 86

E.D. Pa. Local Civil Rule 7.1(c) .................... 11, 12, 22, 23, 25, 31, 32, 33, 34, 39, 40, 41, passim

E.D. Pa. Local Civil Rule 7.1(g) ............................................................ 13, 25, 85, 86, passim

## I. INTRODUCTION: THE COURT SHOULD VACATE ECF NOS. 113 AND 114 BECAUSE THEY WERE ENTERED BEFORE PLAINTIFF'S OPPOSITION PERIOD ON ECF NO. 110 HAD EXPIRED, AND BECAUSE THE TRUNCATED BRIEFING DETERMINED THE SCOPE OF A MERITS RULING ON JUDICIAL IMMUNITY

This Memorandum presents three separate questions, and this Memorandum answers them separately.

**First, was Plaintiff's response period on ECF No. 110 cut short?**

**It was.**

The Court signed ECF Nos. 113 and 114 on September 25, 2026, four days after ECF No. 110 was filed, and entered them on September 28, 2026, before the response period that Local Civil Rule 7.1(c) and Federal Rule of Civil Procedure 6(d) reserved to Plaintiff had run, and no order shortened that period. Part IV.A.

**Second, why did the shortened period affect the scope of what the Court decided?**

Because ECF No. 113 decided judicial immunity on the merits, on a pleading Plaintiff disputes, after identifying a single act of Judge McCabe and no act of Judge Kristiansson, and ECF No. 114 then dismissed every claim against both judges with prejudice, including claims for declaratory relief that ECF No. 113 did not separately address. A timely opposition would have placed before the Court the governing pleading, each challenged act, its function, its jurisdictional premise, the remedy sought for it, and a concrete amendment. Parts IV.B and IV.C.

**Third, what relief should the Court grant?**

Because ECF No. 114 adjudicates fewer than all claims and parties and contains no Rule 54(b) determination, the Court retains authority under Rule 54(b) to revise it now. Plaintiff requests the Court to vacate the with-prejudice disposition, reopen briefing, address the transcripts and records Plaintiff has been unable to obtain, and, in the alternative, permit the specific amendment identified below. Part IV.E.

Plaintiff respectfully seeks reconsideration and reargument of the Memorandum and Order at ECF Nos. 113 and 114. The dispositive point is procedural and concrete: Defendants Judge Cateria McCabe and Judge Viktoria Kristiansson filed ECF No. 110 on September 21, 2026; their own certificate of service states that Plaintiff was served by U.S. first-class mail; Local Civil Rule 7.1(c) afforded fourteen days after service to oppose the motion, and Federal Rule of Civil Procedure 6(d) added three days for mail service. Yet the Court signed ECF No. 113 on September 25, only four days after ECF No. 110 was filed, and entered ECF Nos. 113 and 114 on September 28, before Plaintiff's response period had expired and without an order shortening that period.

The absence of an opposition on September 25 or September 28 was not waiver, abandonment, neglect, or a strategic decision not to respond. Plaintiff was actively preparing the ECF No. 110 opposition and intended to file it immediately after first filing ECF No. 117, a renewed extension motion addressing the broader deadline problem created by ECF Nos. 110 and 111 and other substantive filings during Plaintiff's previously noticed religious-observance period. While completing the ECF No. 117 filing and attempting to link it to the relevant docket events on September 28, Plaintiff discovered that ECF No. 110 was not available in the related-event selection list and that ECF Nos. 113 and 114 had already disposed of ECF No. 110 and dismissed

the Judicial Defendants with prejudice. Plaintiff's opposition in active preparation was next in her filing sequence.

The premature disposition also occurred after Plaintiff had expressly told the Court in ECF No. 108 that the merits defenses announced by counsel had not yet been briefed, that she preserved all opposition to them, and that those defenses should not be adjudicated unless and until properly raised and fully briefed. ECF No. 108 was filed September 15—six days before ECF No. 110 existed—and therefore could not have been an opposition to ECF No. 110. ECF No. 114 nevertheless denied ECF No. 108 as moot when granting ECF No. 110.

The timing also fell inside the religious-observance period Plaintiff placed before the Court and all counsel of record in advance, through ECF No. 73, filed August 20, 2026, which advised that Plaintiff is an observant Jewish *pro se* litigant with no litigation staff, and ECF No. 100, filed September 9, 2026, which supplied the specific 2026 observance dates and invoked Rule 6(b)(1)(A), the Free Exercise Clause, and RFRA. Plaintiff additionally sent individual emails notifying each counsel of record of her religious observances, copying the Court's chambers on those communications. The Court had already partially accommodated that period in ECF No. 105. Part II, paragraphs 1 through 7; Part IV.A.4(c).

The precise relief Plaintiff seeks is threefold: (1) **vacate** or reconsider ECF Nos. 113 and 114; (2) **permit** Plaintiff to file her response to ECF No. 110 and **decide** that motion only after adversarial briefing; and (3) if the Court will not reopen briefing, **consider** the concrete proposed amendment identified in Part IV.C.8 below rather than a generic preservation of amendment rights. Which procedural rule supplies the standard for that relief — Federal Rule of Civil Procedure 54(b) and Local Civil Rule 7.1(g), governing reconsideration of an interlocutory order, or Rule

60(b)(1) in the alternative — depends on the verified finality and docket status of ECF Nos. 113 and 114, which Part III below establishes before any argument is made under either standard. Concretely, that means Plaintiff requests a narrow corrective remedy: **vacate** ECF Nos. 113 and 114, **restore** ECF No. 110 to an active briefing posture, **reinstate** ECF No. 108 for separate disposition, permit Plaintiff to file the opposition that she was actively preparing when the Court ruled, and decide the Judicial Defendants' motion only after full adversarial briefing; in the alternative, if the Court declines to reopen briefing, Plaintiff requests leave to file the concrete amendment identified in Part IV.C.8 below, which identifies the specific allegations Plaintiff would add, their sources, the defendant each concerns, and the relief each could support, rather than a generic preservation of amendment as to an unspecified curable deficiency.

This Memorandum does not arise from an isolated scheduling disagreement. Plaintiff brought this federal civil-rights action because she contends that state and private actors obstructed justice, denied due process, discriminated against her on religious and civil-rights grounds, interfered with her fundamental parental and religious rights, **failed to protect her minor child while the child was in state custody**, obstructed investigation of the child's February 22, 2025 sexual assault, withheld or concealed material information, retaliated against Plaintiff for challenging official mis-conduct, <u>and used procedural barriers to block meaningful access to courts, evidence, relief and her child</u>. **Those allegations are serious because the underlying conduct is serious.** They are Plaintiff's allegations and testimony unless otherwise identified as record evidence or a court finding; they are not softened merely because Defendants dispute them.

The reconsideration issue is therefore not simply whether ECF No. 110 was decided a few days early. Plaintiff contends that ECF Nos. 113 and 114 compounded the very obstruction, discrimination, and denial of a meaningful opportunity to be heard that this action seeks to redress:

the Court adjudicated a dispositive motion **before Plaintiff's opposition period expired**, relied on ECF No. 21 as the operative pleading when ECF No. 21 is not the operative pleading — the operative pleading is ECF No. 8, for the reasons explained above and in Part IV.B below — reduced Judge McCabe's conduct to a custody order and Judge Kristiansson's conduct to an unidentified 'judicial action,' disregarded the broader verified record, and dismissed the Judicial Defendants with prejudice before receiving the opposition Plaintiff was preparing.

Consistent with the non-waiver statement above, Plaintiff seeks this relief without waiving any right, claim, or remedy preserved there.

## II. FACTS AND PROCEDURAL BACKGROUND: THE RECORD ESTABLISHES THAT ECF NO. 113 WAS SIGNED FOUR DAYS AFTER ECF NO. 110 WAS FILED, THAT ECF NOS. 113 AND 114 WERE ENTERED SEVEN DAYS AFTER ECF NO. 110 WAS FILED, AND THAT BOTH DATES PRECEDED THE DATE PLAINTIFF'S RESPONSE WAS PROCEDURALLY DUE

1. On August 20, 2026, Plaintiff filed ECF No. 73, titled "Plaintiff's Notice of September 2026 Religious Observance Affecting Availability." The court-filed Notice stated that it was informational and administrative only and requested no ruling, deadline modification, discovery adjudication, or other substantive relief. It advised the Court and all counsel that September and early October 2026 included multiple Jewish holidays lasting several days or weeks and recurring Shabbat observances that would substantially and intermittently limit Plaintiff's availability for sustained litigation work.

2. ECF No. 73 further stated that Plaintiff would not have the same continuous or predictable availability ordinarily available for substantial discovery review, legal research, and preparation of filings. It stated that Plaintiff proceeds without counsel and has no attorneys, associates, paralegals, administrative assistants, investigators, or litigation staff to perform litigation work on her behalf, and that Plaintiff must personally review the record, discovery productions, correspondence, recordings, documentary evidence, and other materials and personally research and prepare procedurally appropriate filings.

3. ECF No. 73 explained that Plaintiff had undertaken discovery and preservation efforts during July and August so responsive materials could be obtained and meaningfully reviewed before the approaching period of religious observance materially reduced her continuous availability. It further explained that Plaintiff's decision not to consent to additional extensions that could further delay discovery was informed in substantial part by the approaching observance period and the fact that, as a *pro se* litigant, she must personally perform all work in the action.

4. Most importantly for the present issue, ECF No. 73 stated that it was filed so the Court and all counsel would have advance notice and so that any reduced or intermittent litigation activity during September and early October would not be misunderstood as abandonment of the action, lack of diligence, or diminished urgency. It also expressly preserved every right, claim, objection, argument, defense to any defense, procedural position, discovery request, preservation demand, deadline-related position, and relief previously asserted or later asserted, and confirmed that Plaintiff remained actively engaged in prosecuting the action.

5. On September 9, 2026, Plaintiff filed ECF No. 100 under Rule 6(b)(1)(A), the Free Exercise Clause, and RFRA. ECF No. 100 supplied the specific Philadelphia-area 2026 observance dates:

Rosh Hashanah, September 11-13; the Ten Days of Repentance, September 13-20; Yom Kippur, September 20-21; Sukkot, September 25 through October 2; Shemini Atzeret, October 3; Simchat Torah, October 4; and recurring weekly Shabbat observances. It sought one unified November 2 deadline for dispositive motions, oppositions to Plaintiff's pending motions, and other substantive filings reasonably requiring a response, specifically to avoid the rolling chain of deadlines that Plaintiff had warned about in advance.

6. On September 10, 2026, counsel Jeffrey I. Pasek filed ECF No. 101 on behalf of the Defender Association of Philadelphia and Theo Ciccarelli Cornetta. Those Defendants expressly consented to Plaintiff's requested extension through November 2, 2026, stated that they understood Plaintiff sought the relief under Rule 6(b)(1)(A), and did not oppose entry of an appropriate scheduling order. ECF No. 101 therefore independently confirms the procedural vehicle actually invoked by ECF No. 100 and also demonstrates that at least those represented Defendants identified no litigation prejudice from the requested scheduling accommodation.

7. On September 11, 2026, the Court entered ECF No. 105. The Order stated that ECF No. 100 was “GRANTED” and established November 2 as the deadline for Plaintiff's responses to ECF Nos. 89 and 93 and replies to Defendants' responses to pending default requests. Although ECF No. 100 itself invoked Rule 6(b)(1)(A), and ECF No. 101 expressly confirmed that defense counsel understood the motion to arise under Rule 6(b)(1)(A), ECF No. 105 described the motion as brought under Rule 60(b). Plaintiff preserves that distinction for accuracy. At the same time, she does not contend that Rule 60(b) is categorically unavailable or harmful; as explained below, **Rule 60(b)(1) independently provides potentially useful alternative relief from a final judgment or order based on judicial mistake, including legal error**, if the Court treats ECF Nos. 113 and 114 as final rather than interlocutory.

8. On September 15, 2026, Plaintiff filed ECF No. 108 in response to ECF No. 96 and, alternatively, under Rule 4(m). ECF No. 108 expressly stated that the Judicial Defendants' merits defenses were only announced, not briefed, preserved all opposition to those defenses, distinguished the allegations concerning Judge McCabe from the allegations concerning Judge Kristiansson, and asked the Court to decline adjudication of those defenses unless and until they were properly raised and fully briefed.

9. ECF No. 108 also preserved a detailed state-court and service chronology, including Plaintiff's April 9 attempted recusal filing concerning Judge Kristiansson, June 18 facsimile transmissions, the June 24 PFA filing-window event, the June 25 Pennsylvania Supreme Court filing in No. 55 EM 2026 containing the federal summons, and the July 22 direct transmission of federal materials to Michael Daley, Esq.

10. Defendants Judge McCabe and Judge Kristiansson filed ECF No. 110 on September 21, 2026. ECF No. 110 asserted judicial immunity, Rooker-Feldman, and failure to state a claim, and requested dismissal with prejudice and without leave to amend.

11. The pleading and record history predating ECF No. 110 is critical. **On January 28, 2026, Plaintiff filed ECF No. 2, the Complaint, together with ECF No. 3, an emergency motion for a temporary restraining order and preliminary injunction. Sealed ECF No. 8, the Amended Complaint, followed the next day, January 29, 2026.** Plaintiff's July 22, 2026 notice to counsel, later filed at ECF No. 64-3, expressly identified ECF No. 3 and sealed ECF No. 8 as the original operative federal pleadings and separately stated that ECF No. 21, filed May 1, 2026, remained pending on the Court's docket. The docket itself, independently of that notice, identifies ECF No. 2 as the Complaint and ECF No. 8 as the Amended Complaint; ECF No. 9 at 1. ECF No. 3 is the

same-day Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction, Writ of Habeas Corpus, and Mandamus, a motion rather than a pleading, Fed. R. Civ. P. 7(a)-(b); ECF No. 9 at 1 (denying ECF No. 3 without prejudice). The Complaint, ECF No. 2, named Judge Cateria McCabe and Judge Viktoria Kristiansson for official-capacity prospective relief. Plaintiff states, from her own personal knowledge of what she filed under seal, that the Complaint alleged an ongoing federal civil-rights course of conduct involving concealment, religious and cultural suppression, interstate interference, and concerted action by state and private actors, and that it further stated that Plaintiff's minor child was sexually assaulted in DHS custody on February 22, 2025 with evidence on record and that the State obstructed the investigation and failed to notify Plaintiff. Because ECF No. 2 remains sealed, Plaintiff identifies this description as her own statement of the sealed pleading's content, available for the Court's review of the sealed filing itself.

12. Plaintiff continued placing the judicial misconduct and related constitutional injuries on the federal record after January 28. ECF No. 28-1, filed May 20, 2026, expressly alleged that Judge McCabe ordered access to Plaintiff's private medical and therapy records over counsel's objection and without a proper subpoena; permitted and gave effect to restrictions barring Plaintiff from speaking native language with her child; denied a Russian-language interpreter to Plaintiff's mother; restricted Plaintiff's access to the child's private Jewish school and community as a whole; knew of the February 22, 2025 sexual assault and AWOL in state custody yet took no protective action; presided over the May 21, 2025 termination hearing reflected in the sealed order as proceeding with 'No exhibits presented' no facts, no evidence; discharged DHS custody while granting temporary legal custody to Alla Izrailova in New Jersey without ICPC approval; and sustained the dependency adjudication despite DHS's November 14, 2024 'Unfounded'

investigation. ECF No. 28-1 also alleged that state actors concealed the child's AWOL/runaway status from Plaintiff after the sexual assault and interfered with Plaintiff's efforts to locate and protect her child. That is a clear abuse of discretion.

13. ECF No. 28-1 separately alleged obstruction of the sexual-assault investigation: Detective Christopher Brennan was assigned to the criminal SVU investigation, and Plaintiff stated that DHS/CUA3, GAL Theo Ciccarelli Cornetta, actors at Defenders', and private actors interfered with access, information, and investigative follow-up so that the investigation remained incomplete. Plaintiff further states, based on her own recorded interaction concerning the later missing-child investigation, that a detective stated, 'no one wants to get sued,' while describing his contact with DHS's legal department after the case was discharged. He is identified in that recording as 'Det. Culbreath'; the recording concerns the later missing-child report, not the February 22, 2025 assault. ECF No. 28-1 at 21. Plaintiff relies on that statement as evidence supporting her contention that avoidance of liability for the child's assault and the failures that followed supplied motive for obstruction of justice, concealment, and continued interference of her constitutional, civil and parental rights. Plaintiff does not ask the Court at reconsideration to adjudicate criminal guilt; she places the statement and the underlying conduct on the record as Plaintiff testimony and identified evidence supporting her civil-rights theory.

14. Plaintiff's evidence and testimony also include statements by her minor child and her mother supporting Plaintiff's contention that **private and state actors were working together to keep the child separated from Plaintiff**. Plaintiff states that her minor child told her that 'everyone told her what to say' and that adults discouraged and enticed her from returning to Plaintiff; Plaintiff further states that her mother made statements confirming cooperation and interference by private and state actors with reunification. These statements are not offered here as court findings. They

are Plaintiff testimony concerning repeated, recorded and reported statements that support her pleaded theories of coordinated interference, coercion, retaliation, and obstruction of fundamental parental rights.

15. Plaintiff repeatedly disputed the later clerical and defense characterization of ECF No. 21 as the sole operative 'Second Amended Complaint.' ECF No. 44 sought correction of that characterization. ECF No. 49 denied the correction request but expressly stated in footnote 1 that the clerical errors raised by Plaintiff were 'not material to any of the issues in this case and do not impact any of the Court's rulings.' ECF No. 108 then reiterated that ECF No. 49 did not hold that ECF No. 21 superseded ECF Nos. 3 and 8, did not adjudicate ECF No. 21 to be the operative 'Second Amended Complaint,' and did not find that a superseding Rule 15 amendment had occurred. ECF No. 107 and others — likewise preserved Plaintiff's non-concession that ECF No. 21 superseded ECF Nos. 3 and 8.

16. The July 22 notice filed as ECF No. 64-3 is especially important because it predates ECF No. 110 and directly contradicts any suggestion that Plaintiff acquiesced in the pleading label. It advised Michael Daley, Esq. that ECF No. 3 and sealed ECF No. 8 were the operative pleadings and that ECF No. 21, filed May 1, 2026, remained pending — a characterization the docket itself does not share as to ECF No. 3, since this Court's own orders identify ECF No. 2, not ECF No. 3, as the Complaint, and ECF No. 3 as a motion rather than a pleading, Fed. R. Civ. P. 7(a)-(b); ECF No. 9 at 1. ECF Nos. 80 and 81 later preserved Plaintiff's individual- and official-capacity positions, damages claims, prospective-relief positions, conspiracy allegations, and non-waiver of any remedy under §§ 1983, 1985, and 1986. ECF No. 108 again preserved those positions and expressly demanded that the merits defenses announced in ECF No. 96 not be adjudicated until they were properly raised and fully briefed.

17. ECF No. 110 nevertheless treated ECF No. 21 as the 'Second Amended Complaint,' argued that Judge Kristiansson was essentially absent from that document, reduced Judge McCabe's alleged conduct to one custody ruling, and asked for dismissal with prejudice and without leave to amend. ECF No. 113 adopted the same narrowed pleading frame, citing only ECF No. 21 and concluding that McCabe's custody decision was judicial and that Kristiansson's unidentified 'judicial actions' were immune. **Plaintiff contends that this was not a harmless labeling issue.** The clerical characterization the Court previously said was immaterial became a substantive premise that narrowed the record, excluded earlier verified pleadings and later filed allegations, affected defense strategy, and materially shaped the with-prejudice dismissal.

18. ECF No. 110's certificate of service states that counsel caused the motion, supporting brief, and proposed order to be served on September 21 by ECF on counsel of record and on Plaintiff by U.S. first-class mail at her post-office-box address. Plaintiff corrects the record and does not dispute actual receipt: she did receive the mailed ECF No. 110 papers. Her reconsideration argument does not depend on nonreceipt; it depends on the undisputed fact that the Court ruled before her opposition period expired.

19. Plaintiff's response to ECF No. 110 was due October 8, 2026, calculated under Local Civil Rule 7.1(c) and Federal Rule of Civil Procedure 6(d) for mail service; see Part IV.A.3 below. Plaintiff has located no order shortening that period.

20. Plaintiff was neither waiting for the opposition deadline to expire nor undecided whether to oppose ECF No. 110. She was actively preparing her opposition and intended to file it immediately after ECF No. 117. Because ECF Nos. 110 and 111 were filed during Plaintiff's previously noticed religious-observance period, creating overlapping response obligations, Plaintiff prioritized ECF

No. 117 to seek coordinated scheduling relief addressing multiple affected filings. On September 28, 2026, while filing ECF No. 117 and selecting related docket entries in CM/ECF, Plaintiff first discovered ECF Nos. 113 and 114, revealing that the Court had already granted ECF No. 110 and dismissed her claims against the Judicial Defendants with prejudice before the ordinary opposition period had expired. Plaintiff thus learned of the dismissal while actively attempting to preserve her response rights, before she could file the opposition she had been preparing and fully intended to submit.

21. On September 25, 2026 — four days after ECF No. 110 was filed and before Plaintiff's response was due—the Court signed ECF No. 113. The Memorandum concluded that judicial immunity barred Plaintiff's claims against the Judicial Defendants.

22. On September 28, 2026, ECF Nos. 113 and 114 were entered. ECF No. 114 granted ECF No. 110, dismissed all claims against Judges McCabe and Kristiansson with prejudice, and denied ECF No. 108 as moot.

23. ECF No. 114 is dated September 25, 2026. It states that it was entered "upon consideration of" ECF No. 110 "and the docket," grants ECF No. 110, orders that "[a]ll claims against Defendant Judge Cateria McCabe and Defendant Judge Viktoria Kristiansson are DISMISSED WITH PREJUDICE," and denies ECF No. 108 "as moot." ECF No. 114 at 1. It refers to no opposition, to no order shortening Plaintiff's response period, and to no Rule 54(b) determination. Id.

24. On the same date, Plaintiff filed ECF No. 117 under Rule 6(b)(1)(A) and Local Civil Rule 7.1(c). ECF No. 117 expressly identified ECF Nos. 110 and 111 as later substantive filings that were not expressly covered by ECF No. 105 and explained that repeated rolling responses would defeat the accommodation already granted.

25. While completing the CM/ECF process for ECF No. 117, Plaintiff attempted to associate the filing with the relevant docket events. ECF No. 110 was not available in the related-event selection list, while surrounding entries including ECF Nos. 109, 111, and newly entered ECF Nos. 113 through 116 were displayed. Plaintiff does not assert a technical reason for the omission because the CM/ECF selection logic has not been independently established. The fact she preserves is that ECF No. 110 was unavailable for selection and that, during that filing process, she discovered ECF Nos. 113 and 114 had already disposed of the motion she was preparing to oppose.

26. The Notice of Electronic Filing for ECF No. 117 records that ECF No. 117 was entered at 8:04 p.m. EDT on September 28, 2026, under a docket number following ECF Nos. 113 through 116, which had been entered earlier that day. Ex. A; Decl. at 6.

27. On September 29, 2026, the Court entered ECF No. 118 granting ECF No. 117 and extending to November 2 Plaintiff's responses to ECF Nos. 89, 93, and 111 and her replies to Defendants' responses to pending default requests. ECF No. 118 again described Plaintiff's Rule 6(b)(1)(A) filing as a Rule 60(b) motion. ECF No. 118 did not expressly restore ECF No. 110 because the Court had already granted it.

28. Also on September 28, 2026, on the letter request of a different Defendant, ECF No. 112, the Court entered ECF No. 115, which orders "that discovery is STAYED until the Court decides the pending motions to dismiss in this case. See ECF Nos. 89, 93, 111." ECF No. 115 at 1. On October 8, 2026, the Court entered ECF No. 124, granting Plaintiff's motion for leave to exceed the page limit for this Memorandum, ECF No. 123. ECF No. 124 states no numerical page limit, and Plaintiff does not read it to authorize anything beyond the leave it grants.

29. The present Memorandum follows promptly to correct the premature sequence, preserve Plaintiff's ability to be heard, and ensure that any renewed merits determination rests on the adversarial record that Local Rule 7.1(c) contemplated.

## III. GOVERNING STANDARD: ECF NOS. 113 AND 114 ARE INTERLOCUTORY ORDERS THAT RULE 54(b) AND LOCAL RULE 7.1(g) AUTHORIZE THIS COURT TO RECONSIDER

30. ECF No. 114 dismissed fewer than all defendants while substantial claims against other parties remain pending. The Order contains no express Rule 54(b) determination that there is no just reason for delay and no direction for entry of partial final judgment. Under the text of Rule 54(b), an order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties does not end the action and "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

31. The Third Circuit recognizes a district court's authority to reconsider interlocutory rulings while the litigation continues. See *State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 & n.14 (3d Cir. 2016). Local Civil Rule 7.1(g) provides the local procedure and requires motions for reconsideration or reargument to be served and filed within fourteen days after entry of the order concerned, other than matters governed by Rule 59(e).

32. ECF Nos. 113 and 114 were entered September 28, 2026. Fourteen days later was October 12, 2026, a federal legal holiday. Under Rule 6(a)(1)(C), when the last day falls on a legal holiday, the period continues to the end of the next day that is not a Saturday, Sunday, or legal holiday. The resulting Local Rule 7.1(g) date is October 13, 2026. Plaintiff filed ECF No. 125 seeking an extension of the reconsideration deadline. On October 14, 2026, the Court granted that motion in

ECF No. 126, expressly extending Plaintiff's deadline to October 14, 2026, at 11:59 p.m. Plaintiff submits the present Motion within the Court-extended period.

33. Reconsideration may be granted upon an intervening change in controlling law, newly available evidence, or “the need to correct a clear error of law or fact or to prevent manifest injustice.” *Max’s Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Max’s further explains that reconsideration is an appropriate means to bring manifest errors of law or fact to the district court’s attention. There, the Third Circuit held that the district court abused its discretion by refusing to address a fundamental point bearing on the judgment. Id. Because ECF Nos. 113 and 114 are interlocutory, Rule 54(b), rather than Rule 59(e), supplies the substantive authority to revise the disposition; Max’s supplies the controlling Third Circuit formulation of the clear-error/manifest-injustice reconsideration ground.

34. Plaintiff invokes the third ground Max's identifies: the need to correct clear error of law or fact and to prevent manifest injustice. She does not contend that an intervening change in controlling law has occurred, and she does not rely on newly discovered evidence; the authorities and record materials cited in this Memorandum predate ECF Nos. 113 and 114 or are cited to show what the Court did not have before it when it ruled. Rule 59(e), which governs a motion to alter or amend a judgment and requires that such a motion be filed "no later than 28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), is not the operative vehicle because no judgment has been entered; this Memorandum is in any event filed well within that period.

35. The present procedural defect is more direct than the one considered in Max’s. Plaintiff did not fail to develop opposition to ECF No. 110 through neglect or tactical choice. Her response period had not expired; she was actively preparing the opposition and intended to file it

immediately after ECF No. 117. The Court nevertheless signed ECF No. 113 four days after ECF No. 110 was filed and entered ECF Nos. 113 and 114 before Plaintiff could file the opposition that was already next in her filing sequence. The omission therefore was not attributable to forfeiture by Plaintiff; it resulted from disposition of the motion before completion of the ordinary adversarial briefing period.

36. Each ground below is presented in the same sequence: the challenged ruling, the specific error, the governing authority, the record support, the material prejudice, and the requested correction. Prejudice is not confined to one section. It is addressed under each ground, because it is the reason each error matters.

**This Memorandum Does Not Implicate Domestic-Relations Abstention**

37. Because a related protection-from-abuse proceeding has continued in state court—notwithstanding that the separate dependency proceeding concluded with the May 21, 2025 termination order, ECF No. 17 at 11—Plaintiff addresses the domestic-relations exception and Younger abstention to preserve the proper exercise of federal jurisdiction. Article III, Section 2 of the United States Constitution extends the federal judicial power to cases arising under the Constitution and laws of the United States, and Congress has conferred federal-question jurisdiction under 28 U.S.C. § 1331. The domestic-relations exception is narrowly confined to divorce, alimony, and child-custody decrees in the context of diversity jurisdiction; it does not categorically bar independent federal-question civil-rights claims arising from domestic-relations proceedings. *Ankenbrandt v. Richards*, 504 U.S. 689, 701–04 (1992).

Plaintiff asserts constitutional and statutory civil-rights claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, including alleged violations of the First Amendment's Free Exercise Clause and the

Fourteenth Amendment's Due Process and Equal Protection Clauses, interference with fundamental parental rights, religious discrimination, conspiracy, obstruction of justice, concealment of material evidence, and interference with the investigation of her minor child's February 22, 2025 sexual assault while in state custody. Plaintiff seeks compensatory and punitive damages, declaratory relief, prospective injunctive relief, and all other legally available remedies. The civil nature of this action does not diminish Plaintiff's allegations of criminal wrongdoing or waive or restrict her right to seek criminal investigation and prosecution through appropriate authorities or pursue judicial and appellate remedies authorized by law.

Nor does the existence of related state proceedings, standing alone, establish grounds for Younger abstention. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72–73, 78 (2013), limits Younger to three exceptional categories: ongoing state criminal prosecutions, certain civil enforcement proceedings, and civil proceedings involving orders uniquely necessary to the state courts' ability to perform their judicial functions. The Court must determine whether the particular proceeding satisfies the governing abstention requirements rather than assume that a domestic-relations context itself requires abstention. Plaintiff presently seeks reconsideration of ECF Nos. 113 and 114 and the additional relief expressly requested in her Motion. Plaintiff submits that neither the domestic-relations exception nor Younger abstention supplies an independent basis to deny that relief.

**Plaintiff's Georgia UCCJEA/PKPA Jurisdictional Claims Require Consideration Under the Governing Federal and State Statutes and Bear Directly on the Jurisdictional and Constitutional Issues Presented by ECF Nos. 113 and 114**

38. Plaintiff's Motion for Leave to File Excess Pages, ECF No. 123, expressly identified her preserved contention that Georgia retains exclusive, continuing jurisdiction over her minor child's

custody under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), O.C.G.A. §§ 19-9-60 et seq., and the federal Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A. The Court granted leave through ECF No. 124. Plaintiff maintains that the Georgia custody determinations, the applicable jurisdictional requirements, and the conduct of officials and courts exercising authority over her minor child are materially relevant to her federal constitutional claims, including the Fourteenth Amendment's Due Process Clause and the Supremacy Clause of Article VI, Clause 2. Plaintiff raises these issues as part of her challenge to the jurisdictional analysis underlying ECF Nos. 113 and 114 and the premature dismissal of her claims against the Judicial Defendants. Plaintiff requests that the Court consider the applicable statutory requirements and the identified jurisdictional record in evaluating the legal sufficiency of that dismissal, without treating Plaintiff's jurisdictional objections as abandoned, conceded, or resolved adversely merely because the Court ruled before her opposition to ECF No. 110 was due.

39. Plaintiff's position, asserted in the Superior Court of Bartow County, Georgia, is that Georgia entered controlling custody and support determinations in 2014 and 2018, including the September 25, 2014 and March 15, 2018 orders. Under O.C.G.A. § 19-9-62(a), a Georgia court that made a custody determination consistent with O.C.G.A. § 19-9-61 or § 19-9-63 retains exclusive, continuing jurisdiction, subject to the statutory temporary-emergency-jurisdiction exception, until one of the determinations specified in § 19-9-62(a)(1) or (a)(2) is made. Subsection (a)(1) requires a Georgia court's determination concerning the absence of significant connections and substantial evidence; subsection (a)(2) permits a Georgia court or another state's court to determine that neither the child, a parent, nor a person acting as a parent presently resides in Georgia. The PKPA independently establishes federal obligations concerning interstate custody determinations. Under 28 U.S.C. § 1738A(a), appropriate state authorities shall enforce qualifying custody determinations

according to their terms and shall not modify them except as the statute permits. Section 1738A(d) governs continuing jurisdiction; subsection (e) requires reasonable notice and an opportunity to be heard before a custody determination; subsection (f) restricts modification of another state's custody determination; and subsection (g) prohibits the exercise of jurisdiction over a custody proceeding commenced while a qualifying proceeding remains pending in another state. Plaintiff contends that these requirements must be examined against the Georgia orders, the subsequent Pennsylvania proceedings, and the relevant interstate jurisdictional record before the asserted jurisdictional authority may be treated as established for purposes of the challenged federal dismissal.

40. Plaintiff further contends that Pennsylvania's exercise of custody and placement authority must be examined under the applicable interstate-jurisdiction statutes, including the provisions governing temporary emergency jurisdiction and mandatory communication between courts. Under 23 Pa.C.S. § 5424(d), when a Pennsylvania court is asked to make a temporary emergency custody determination and is informed that a custody proceeding has commenced, or a custody determination has been made, in another state possessing jurisdiction under the applicable UCCJEA provisions, the Pennsylvania court **shall immediately communicate** with the other court. Georgia law contains corresponding mandatory communication provisions under O.C.G.A. § 19-9-64(d). Plaintiff maintains that the existence and legal effect of the Georgia custody determinations, the jurisdictional basis asserted in Pennsylvania, the courts' knowledge of the interstate proceedings, and whether the required judicial communications occurred are material questions that her opposition to ECF No. 110 would have placed before the Court. These matters bear on the statutory authority underlying the challenged conduct, Plaintiff's Fourteenth Amendment due-process claims, the federal obligations imposed by the PKPA, and the

completeness of the jurisdictional analysis supporting ECF Nos. 113 and 114. Plaintiff requests that the Court address the relevance of these unresolved jurisdictional questions under the controlling constitutional and statutory framework before maintaining a dismissal with prejudice, and preserve her opportunity to present the underlying orders, communications, and additional record evidence through the appropriate procedural means.

## IV. ANALYSIS

### A. QUESTION ONE: THE RESPONSE PERIOD WAS CUT SHORT, BECAUSE THE COURT DECIDED ECF NO. 110 BEFORE THE PERIOD LOCAL RULE 7.1(c) RESERVED HAD RUN AND WITHOUT ANY ORDER SHORTENING IT

#### 1. The Challenged Ruling.

41. ECF No. 113, signed September 25, 2026, stated that "the Court will grant the Judicial Defendants' Motion to Dismiss (ECF No. 110)." ECF No. 113 at 2. ECF No. 114, dated September 25 and entered September 28, 2026, granted ECF No. 110, dismissed all claims against Judges McCabe and Kristiansson with prejudice, and denied ECF No. 108 as moot. ECF No. 114 at 1. The complete entry chronology and dispositive language are identified at 21–23. Plaintiff challenges both the premature dismissal and the disposition of ECF No. 108, which preceded ECF No. 110 and raised independent procedural matters.

#### 2. The Specific Error.

42. The error is one of sequence, and it is specific. Local Civil Rule 7.1(c) reserves to the non-movant a period to respond unless the Court directs otherwise. The Court did not direct otherwise,

and it nonetheless decided the motion before that period ran. Both orders were therefore entered on a record that, by operation of the Court's own rule, was not yet complete.

43. Nothing presently identified on the docket shortened Plaintiff's response period for ECF No. 110. The Court nevertheless signed ECF No. 113 four days after ECF No. 110 was filed and entered ECF Nos. 113 and 114 before Plaintiff's opposition was due.

44. Plaintiff does not contend that Local Rule 7.1(c) prevents a court from managing its docket or deciding a motion after the authorized briefing period. Her point is narrower: where the Rule itself gives the non-movant a response period unless the Court directs otherwise, adjudication before that period expires — and without notice of a shortened schedule — **deprives the non-movant of the ordinary opportunity the Rule expressly provides**.

**3. The Governing Authority.**

45. Local Civil Rule 7.1(c) states that, unless the Court directs otherwise, any party opposing a motion shall serve a brief in opposition and any appropriate response within fourteen days after service of the motion and supporting brief. ECF No. 110's certificate states first-class-mail service. Rule 6(d) therefore added three days after the ordinary period.

46. **The local rule implements a principle older than the rule itself**. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Due Process Clause of the Fourteenth Amendment protects the right to meaningful notice and an opportunity to be heard before the deprivation of a protected liberty or property interest. Here, Local Civil Rule 7.1(c) afforded Plaintiff a prescribed period to oppose ECF No. 110, and Federal Rule of Civil Procedure 6(d) added three days for service by mail. The

Court nevertheless entered ECF Nos. 113 and 114 dismissing Plaintiff's claims against both Judicial Defendants with prejudice before that response period expired and without an order shortening it. Plaintiff submits that a meaningful opportunity to be heard cannot be reconciled with a dispositive ruling entered before the time expressly afforded for her opposition had run. The premature disposition therefore warrants reconsideration to restore the adversarial process guaranteed by the governing procedural rules and protected by constitutional due-process principles.

47. Third Circuit authority concerning unopposed motions underscores the importance of merits-based adversarial consideration, particularly for *pro se* Rule 12(b)(6) dismissals. See *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991). Plaintiff's position is stronger procedurally than a late or absent response: she was not in default of the local response period at all when the Court ruled.

48. *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990), supplies the principal precedent on which Stackhouse relied. Anchorage held, in the summary-judgment context, that a local rule deeming a motion conceded because no response was filed did not eliminate the federal rule's requirement that dispositive relief be substantively appropriate. Stackhouse carried that principle into Rule 12(b)(6) practice and treated dismissal based solely on noncompliance with a local response rule as a sanction rather than as a substitute for deciding whether the complaint actually failed to state a claim. Together, Anchorage and Stackhouse establish a Third Circuit procedural baseline: local motion rules facilitate adjudication; they do not replace the substantive standards governing dispositive relief.

49. The Third Circuit recently applied Stackhouse to this Court's own Local Civil Rule 7.1(c) in *Regaolo v. Target Corp*., No. 25-2514, slip op. at 2-4 (3d Cir. Feb. 3, 2026) (nonprecedential). There, the E.D. Pa. district court treated a *pro se* plaintiff's failure to oppose a Rule 12(b)(6) motion as sufficient to dismiss the complaint as uncontested. The Court of Appeals vacated and remanded, explaining that a Rule 12(b)(6) motion may not be granted solely under a local rule without analysis of whether the pleading fails to state a claim. Regaolo further explained that when dismissal functions as a sanction for failure to comply with a local response rule, the appropriate sanction safeguards ordinarily apply. Regaolo is nonprecedential, but it is highly persuasive here because it is a 2026 Third Circuit application of Stackhouse to E.D. Pa. Local Civil Rule 7.1(c) and to a *pro se* litigant.

50. Regaolo also confirms why the sanction framework does not weaken Plaintiff's stronger timing argument. Because dismissal there functioned as a sanction for failure to comply with Local Rule 7.1(c), the Third Circuit stated that a district court ordinarily must consider the Poulis factors before taking the drastic step of dismissal, citing *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), and *In re Asbestos Products Liability Litigation* (No. VI), 718 F.3d 236, 246 (3d Cir. 2013). Plaintiff does not ask this Court to transform the present motion into a separate Poulis dispute because **she had not defaulted** under Local Rule 7.1(c) **at all**. The point is narrower and stronger: no sanction analysis, waiver doctrine, or local-rule default could properly substitute for a response period that had not yet expired.

51. Regaolo further identifies the exceptions recognized in Stackhouse: circumstances in which a counseled party truly does not oppose a motion, a party disregards a specific judicial directive to respond, or a party's conduct makes adjudication impossible. None describes the record presented here. Plaintiff was *pro se*; she had expressly preserved opposition in ECF No. 108; she was actively

preparing the ECF No. 110 opposition; her Local Rule 7.1(c) period remained open; and no separate order presently identified on the docket directed an earlier response or warned that failure to respond before the ordinary deadline would result in dismissal.

52. Plaintiff also addresses the limiting authority rather than overstating Stackhouse. *Hammond v. Acerno*, No. 25-2022, slip op. at 3-4 (3d Cir. June 18, 2026) (nonprecedential), arose from this Court before Honorable Judge Kenney and therefore is especially pertinent to the present procedural issue. The Third Circuit rejected the Stackhouse argument there because the district court actually reached the merits; Stackhouse does not itself forbid a merits ruling merely because no opposition was filed. Hammond also treats Stackhouse as not addressing forfeiture, and it declined to consider an argument first raised in a reply brief. Plaintiff acknowledges those holdings and does not rest on a forfeiture theory. Hammond does not resolve the different defect here. Plaintiff had not failed to respond, forfeited opposition, or allowed the Local Rule period to expire. Her opposition period remained open; she had a substantive opposition in active preparation; ECF No. 108 had expressly preserved later merits briefing; and ECF No. 113 was signed only four days after ECF No. 110 was filed. Unlike Hammond, the present challenge is to a with-prejudice merits adjudication entered before the ordinary adversarial briefing period closed and before the Court received the opposition Plaintiff had prepared.

**4. The Record Support.**

53. The record establishes each fact on which this ground depends: service of ECF No. 110 by first-class mail on September 21, 2026, ECF No. 110 at 12 and Decl. ¶4; Plaintiff's active preparation of her opposition, Decl. ¶5; her discovery of the rulings while filing ECF No. 117, Decl. ¶6-7 and Ex. A; her prior preservation of merits briefing in ECF No. 108; and her advance religious-observance notice in ECF Nos. 73 and 100. The following subsections set out that record.

**(a) ECF No. 108 Expressly Preserved Later Merits Briefing and Could Not Have Served as an Opposition to a Motion That Did Not Yet Exist.**

54. ECF No. 108 was filed September 15, 2026, six days before ECF No. 110. It responded to ECF No. 96 and sought alternative Rule 4(m) relief concerning service. It could not, chronologically or substantively, have been Plaintiff's opposition to ECF No. 110.

55. ECF No. 108 expressly stated that the merits defenses announced in ECF No. 96 were 'announced, not briefed,' that Plaintiff 'expressly preserves all opposition to those defenses,' and that the two Judicial Defendants should not be treated as factually interchangeable. It further requested that the Court decline to adjudicate those defenses unless and until they were properly raised and fully briefed.

56. That preservation language matters. Before ECF No. 110 existed, Plaintiff told both the Court and counsel that she intended to brief the merits when counsel actually raised them. Six days later counsel did so. Four days after that, the Court decided them before Plaintiff's opposition period expired.

57. ECF No. 114 also denied ECF No. 108 as moot. But ECF No. 108 contained independent requests concerning service, Rule 4(m), the August 26 Rule 55 record, and the complete notice chronology. ECF No. 113 contains no separate explanation why those issues became moot. Plaintiff therefore requests reinstatement of ECF No. 108 for separate disposition on the issues actually presented there.

**(b) Plaintiff Was Actively Preparing the ECF No. 110 Opposition, Filed ECF No. 117 First for a Specific Scheduling Purpose, and Discovered the Dismissal Only While Completing That Filing.**

58. Plaintiff's declaration establishes the practical filing sequence. She was actively preparing her ECF No. 110 opposition and intended to file it immediately after ECF No. 117.

59. ECF No. 117 was deliberately filed first because it addressed a broader, threshold scheduling problem: ECF Nos. 110 and 111 had arrived during the previously noticed religious-observance period, ECF No. 105 did not expressly cover them, and **Plaintiff sought one clear November 2 deadline rather than serial emergency extension motions**.

60. Filing ECF No. 117 first demonstrated Plaintiff's diligence in preserving her response rights, not abandonment of her opposition to ECF Nos. 110 and 111 and stated that later substantive filings were generating separate response obligations.

61. During the CM/ECF related-event selection process for ECF No. 117, Plaintiff could not select ECF No. 110 from the displayed list and then saw that ECF Nos. 113 through 116 had been entered. After filing ECF No. 117, she reviewed the dispositions and learned that the Court had dismissed McCabe and Kristiansson with prejudice. Her opposition, intended to follow ECF No. 117 immediately, had been overtaken by the ruling.

62. These facts defeat any inference that Plaintiff chose not to oppose ECF No. 110. **They also supply the concrete prejudice necessary for reconsideration**: an opposition was in active preparation, but the Court ruled before it could be filed within the still-open response period.

**(c) The Premature Ruling Occurred During a Religious-Observance Period That Plaintiff Had Noticed in Advance and That the Court Had Already Partially Accommodated.**

63. ECF No. 73 itself — not merely later summaries — gave the Court and counsel advance notice on August 20 that Plaintiff's availability for sustained litigation work during September and early

October would be substantially and intermittently limited; that she would not have continuous or predictable availability for substantial discovery review, legal research, and preparation of filings; and that she had no substitute legal or litigation staff and had to perform all work personally.

64. ECF No. 73 expressly warned that reduced litigation activity during the observance period must not be mistaken for abandonment, lack of diligence, or diminished urgency. That advance notice directly contradicts any inference of acquiescence from the absence of an opposition only four days after ECF No. 110 was filed.

65. ECF No. 100 then supplied the precise 2026 observance dates and expressly sought a unified November 2 deadline so Plaintiff would not be forced to choose between religious observance and preservation of her federal claims. It specifically warned against dismissal, waiver, abandonment, treatment of filings as unanswered, or other procedural forfeiture; separately identified accumulated workload as an independent ground for additional time; and requested that no adverse inference arise from reduced or intermittent activity during the noticed period.

66. In ECF No. 101, counsel for the Defender Association and Cornetta expressly consented to Plaintiff's requested November 2 extension under Rule 6(b)(1)(A) and identified no prejudice from that accommodation. Although their consent did not bind the Judicial Defendants, it supports the reasonableness of Plaintiff's advance scheduling request.

67. ECF Nos. 110 and 111 — separate dispositive motions by the Judicial Defendants and by NJ DCF, respectively — were both filed September 21, 2026, the final day of Yom Kippur identified in ECF No. 100. ECF No. 113 was signed September 25, 2026, and ECF Nos. 113 and 114 were entered September 28, 2026, within the Sukkot festival period Plaintiff had identified in ECF No. 100. ECF No. 117, filed that same day, sought to extend the existing scheduling protection to later

filings expressly including ECF No. 110. That Plaintiff was able to prepare and file ECF No. 117 on September 28 does not establish that she had continuous availability during the noticed period, and it did not waive or shorten the response period to ECF No. 110 that remained open.

68. The prejudice must be considered against the notice and accommodation already before the Court. ECF No. 100 identified Plaintiff's religious observances, invoked the First Amendment's Free Exercise Clause and RFRA, and requested protection against overlapping litigation deadlines during that period. ECF No. 101 recorded defense counsel's consent, and ECF No. 105 granted partial scheduling relief. Nevertheless, ECF No. 110 was filed on September 21, 2026, during Yom Kippur; ECF No. 113 was signed on September 25, during Sukkot; and ECF Nos. 113 and 114 were entered September 28, dismissing Plaintiff's claims against the Judicial Defendants with prejudice before her response period expired. The Court's earlier accommodation did not expressly include ECF No. 110, which had not yet been filed when ECF No. 105 was entered. That omission did not shorten Plaintiff's independently prescribed response period under Local Civil Rule 7.1(c) and Rule 6(d). The resulting deprivation of her opportunity to oppose a dispositive motion is the procedural and constitutional injury for which Plaintiff seeks reconsideration.

69. Plaintiff therefore invokes the First Amendment, RFRA, and the procedural protections of Local Civil Rule 7.1(c) and Rule 6(d), as previously asserted in ECF Nos. 100 and 117, and requests reconsideration to restore the meaningful opportunity to be heard that the premature dismissal foreclosed.

**5. The Material Prejudice.**

70. The prejudice was concrete. ECF No. 110 sought dismissal with prejudice and without leave to amend on three separate grounds. Plaintiff was actively preparing an opposition addressing

those grounds within her prescribed response period. The Court nevertheless dismissed both Judicial Defendants with prejudice before receiving that opposition, depriving Plaintiff of the opportunity to contest the asserted defenses and present the record, authorities, and proposed amendments addressed in Parts IV.B and IV.C.

71. Reconsideration should restore the adversarial process required by the governing rules: a full response period, Plaintiff's opposition to ECF No. 110, any authorized reply, and adjudication on the resulting record.

72. ECF No. 113 decided judicial immunity on the merits rather than granting ECF No. 110 solely as unopposed. Accordingly, *Stackhouse*, *Anchorage*, and *Regaolo* reinforce the requirement that dispositive relief satisfy the governing substantive standards, while Plaintiff's independent premature-adjudication challenge rests on Local Civil Rule 7.1(c), Rule 6(d), the September 21, 2026 mail-service certification, and the September 25 and 28 rulings entered before her opposition deadline. Parts IV.B and IV.C establish why that error was materially prejudicial: the Court dismissed both Judicial Defendants with prejudice without receiving Plaintiff's arguments concerning the operative pleading, individualized judicial conduct, immunity, available remedies, and amendment.

**6. Plaintiff's Absence of a Pre-Ruling Opposition Should Not Be Treated as Forfeiture Under Rule 46.**

73. Federal Rule of Civil Procedure 46 provides that "[a] formal exception to a ruling or order is unnecessary," that a party need only state the requested action and its grounds "[w]hen the ruling or order is requested or made," and that "[f]ailing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made." Fed. R. Civ. P. 46. Plaintiff's unexpired

response period, standing alone, supports but does not by itself establish that she had no such opportunity; the specific facts are these. Defendants filed ECF No. 110 on September 21, 2026. Plaintiff's ordinary response period under Local Civil Rule 7.1(c) had not expired, Part IV.A.2 above, and Plaintiff was actively preparing her opposition during that period, Decl. ¶5. The Court signed its Memorandum, ECF No. 113, on September 25 and entered the dismissal Order, ECF No. 114, on September 28 — before that period expired. Plaintiff first learned of both rulings while electronically filing and linking ECF No. 117 on September 28, Decl. ¶6-7. She did not knowingly decline to respond, abandon her opposition, or waive any objection to ECF No. 110; she had not yet reached the point in the briefing schedule at which Rule 46 would have required her to state one.

74. Plaintiff does not rest on a blanket assertion that this sequence "preserves the issues." The specific objections Rule 46 protects from forfeiture here are the objections this Memorandum itself states and grounds: that the Court decided ECF No. 110 before the opposition period Local Civil Rule 7.1(c) reserved had run, Part IV.A.2 above; that the disposition rested on the disputed characterization of ECF No. 21 as the operative pleading addressed in the non-waiver statement above and in Part IV.B below; that McCabe's and Kristiansson's alleged acts were not analyzed act-by-act for function, jurisdiction, and available relief, Part IV.C.2A below; and that dismissal with prejudice did not address the concrete amendment Plaintiff identifies, Part IV.C.8 below. Rule 46 answers the narrow procedural question of whether Plaintiff's silence before September 28 may be treated as a forfeiture of these objections; it does not independently establish that any of them is meritorious, and it does not extend a notice-of-appeal deadline or substitute for this timely motion. Because the Court ruled before Plaintiff had an opportunity to state these objections, Rule

46 provides that her silence before that date may not be held against her now that she has stated them.

**7. The Requested Correction.**

75. The correction that follows from this ground is to vacate ECF Nos. 113 and 114 to the extent they granted ECF No. 110, dismissed the Judicial Defendants with prejudice, and denied ECF No. 108 as moot; to restore ECF No. 110 to the briefing posture it occupied on September 25, 2026; to permit Plaintiff's opposition within a period the Court sets; and to reinstate ECF No. 108 for separate disposition. Part V, paragraphs A through F.

## B. THE GOVERNING PLEADING MUST BE IDENTIFIED BEFORE ANY ACT OR REMEDY CAN BE ASSESSED: ECF NO. 21 IS NOT THE OPERATIVE PLEADING, AND ECF NO. 44 DOES NOT HOLD OTHERWISE

**1. The Challenged Ruling.**

76. ECF No. 113 identifies ECF No. 21 as the pleading under review. It quotes ECF No. 21 for the statutory basis of the action, "ECF No. 21 at 3"; describes ECF No. 110 as the "Motion to Dismiss Plaintiff's Amended Complaint"; states that "[t]he Amended Complaint (ECF No. 21) only mentions Judge Kristiansson by identifying her among other state actor defendants"; and concludes that "judicial immunity bars the claims against the Judicial Defendants in the Plaintiff's Amended Complaint." ECF No. 113 at 1-2.

**2. The Specific Error.**

77. ECF No. 113 treated ECF No. 21 as the governing pleading without resolving Plaintiff's preserved objection to that characterization, and then measured both Judicial Defendants' conduct against ECF No. 21 alone. Because the immunity inquiry is act-specific, the identity of the

governing pleading determines which acts are before the Court. Deciding immunity before deciding which pleading governs reversed the necessary order of analysis.

**3. The Governing Authority.**

78. This Court's own orders identify ECF No. 8 as the "Amended Complaint." ECF No. 9 at 1 (Jan. 30, 2026); ECF No. 13 at 4 n.2 (Feb. 13, 2026). ECF No. 8 was therefore already identified by this Court as the amended pleading. Whether ECF No. 21 validly superseded it must be determined under Rule 15(a)(1) and (a)(2), the actual pleading and service history, and the absence of any identified order granting leave or written consent authorizing a further amendment. Plaintiff maintains that ECF No. 21 did not validly supersede ECF No. 8. No motion for leave, order granting leave, or written consent authorized ECF No. 21 as an amendment. Neither ECF No. 13 nor ECF No. 15 directed or authorized a further amended pleading: ECF No. 13 denied Plaintiff's in forma pauperis applications without prejudice and directed her either to submit a new application or to pay the filing fee within thirty days, ECF No. 13 at 1–3, and ECF No. 15 extended to March 27, 2026, Plaintiff's time to file a renewed motion for a temporary restraining order and preliminary injunction and an in forma pauperis application, ECF No. 15 at 1.

**4. The Record Support, Including ECF No. 44's Contrary Wording.**

79. Plaintiff does not ignore her own contrary wording. ECF No. 44, a Rule 60(a) motion to correct docket labels, stated that 'ECF Nos. 21 and 22 were filed together on May 1, 2026 as companion documents constituting Plaintiff's operative pleading.' ECF No. 44 at 5.

80. That sentence does not establish the superseding effect Plaintiff disputes, for four independent reasons. First, it is Plaintiff's own prior characterization made in her own motion, not a judicial finding adjudicating ECF No. 21's status; a party's description of her own filing does not convert

that description into a court ruling. Second, the Court denied ECF No. 44 in full and held that 'the clerical errors raised by Plaintiff are not material to any of the issues in this case and do not impact any of the Court's rulings.' ECF No. 49 (July 1, 2026). The Court accordingly never adopted, relied upon, or ruled on the 'operative pleading' phrase in ECF No. 44; it resolved only the separate docket-label dispute ECF No. 44 raised, and expressly declined to treat that dispute as affecting any ruling in the case. Third, an isolated characterization in a since-denied motion addressed solely to a docket-label correction is not a judicial adjudication, a Rule 15 amendment order, or a binding admission that forecloses Plaintiff's present position, particularly where Plaintiff now expressly disclaims and does not adopt that characterization.

81. Fourth, read as a whole, ECF No. 44 is itself inconsistent with any reading of that phrase as a concession that ECF No. 21 amended the pleadings. The same motion states, as to ECF No. 21, that "Plaintiff did not file a motion for leave to amend under Federal Rule of Civil Procedure 15. No court order authorized amendment. No written consent from any defendant existed." ECF No. 44 at 4. It asked that the "AMENDED COMPLAINT" label be removed from ECF No. 21 for exactly that reason. Id. at 4, 7. A motion whose object was to deny that ECF No. 21 was an amendment cannot fairly be read as conceding that ECF No. 21 superseded ECF No. 8.

82. ECF No. 44 also stated that ECF No. 21 was submitted "in direct compliance with this Court's directives in ECF Nos. 13 and 15." ECF No. 44 at 4. Those orders concerned the filing fee or a renewed in forma pauperis application and the deadline for a renewed motion for a temporary restraining order; neither directed or authorized an amended pleading. Part IV.B.3 above. Compliance with those directives therefore says nothing about whether ECF No. 21 amended the pleadings. ECF No. 44 separately asked that the docket label on ECF No. 8 be revised; ECF No.

49 denied that request together with the others, and this Court's own characterization of ECF No. 8 as the Amended Complaint in ECF Nos. 9 and 13 is the characterization on which Plaintiff relies.

83. Plaintiff's reservation of rights, standing alone, does not resolve this question; it is the foregoing explanation, not the reservation by itself, on which Plaintiff relies for her position that ECF No. 21 is not the operative pleading.

84. Defendants' own motion acknowledged that "[a]lthough Doc. 21 is not titled 'Second Amended Complaint,'" they so labeled it because, in their view, "Plaintiff has filed two amended complaints." ECF No. 110 at 4 n.1. That label was counsel's characterization, not an adjudication, and ECF No. 113 adopted it without resolving the dispute. Plaintiff's objection to it was already of record. Part II, paragraphs 15 through 17.

85. Plaintiff raises a material record-accuracy and due-process problem, not a cosmetic caption complaint. Multiple orders have described Plaintiff's filings under rules she did not invoke, and Defendants and the Court have repeatedly treated ECF No. 21 as an operative 'Amended' or 'Second Amended Complaint' despite Plaintiff's express objection and ECF No. 49's statement that the underlying clerical errors were immaterial and did not affect any ruling. Different procedural rules and different pleading labels carry different standards, deadlines, amendment consequences, and appellate effects. When an acknowledged clerical label later becomes the premise for excluding prior verified pleadings and narrowing a with-prejudice merits analysis, the error is no longer immaterial.

86. Plaintiff contends that the ECF No. 21 mischaracterization propagated through case management and defense briefing. ECF No. 96 called ECF No. 21 the operative 'Second Amended Complaint'; ECF No. 110 moved to dismiss that supposed pleading and used its narrower contents

to argue that Kristiansson had no factual allegations and McCabe had only one; ECF No. 113 then cited ECF No. 21 as the operative 'Amended Complaint' and dismissed both judges with prejudice. That sequence is exactly why Plaintiff sought correction in ECF No. 44 and preserved the issue again in ECF Nos. 64-3, 107, and 108. Plaintiff contends that allowing the acknowledged clerical label to control substantive dismissal was clear error, denial of due process, and an abuse of discretion.

87. The same label appears in a scheduling order addressed to a different Defendant, which directed the Township of Edison to respond to "Plaintiff's Amended Complaint (ECF No. 21)." ECF No. 86 (Aug. 27, 2026). Plaintiff acknowledges that order candidly. An order resolving another Defendant's extension request did not adjudicate which pleading governs, and ECF No. 49 had already stated that the docket-label disputes "do not impact any of the Court's rulings." ECF No. 49 at 1 n.1.

**5. The Material Prejudice.**

88. The prejudice from this premise was concrete. Measured against ECF No. 21 alone, Judge Kristiansson became a defendant mentioned only "among other state actor defendants," and Judge McCabe became the author of a single custody placement. ECF No. 113 at 1-2. Measured against the pleading history Plaintiff preserved, including ECF No. 8, ECF No. 28-1 at 18-19, ECF No. 17 at 11 and 20, and the Kristiansson-specific PFA allegations Plaintiff had already placed on the docket in ECF No. 108, the record contains specific acts attributed to each judge that ECF No. 113 never identified or classified. Part IV.C.1 through IV.C.2A below. The pleading premise therefore did not merely label the record; it determined which acts were before the Court when immunity was decided with prejudice.

**6. The Sequence the Court Should Follow Before Any Dismissal With Prejudice.**

89. Before dismissing all claims against both Judicial Defendants with prejudice, the Court was required to identify the governing pleading, examine the specific allegations and challenged acts attributed to each Defendant, and apply the controlling functional, jurisdictional, capacity-specific, and remedy-specific standards. Where dismissal rests on insufficient factual allegations, the Court must separately consider whether amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). ECF Nos. 113 and 114 did not undertake those distinct inquiries before dismissing every claim with prejudice.

90. Insufficient factual pleading and absolute judicial immunity present different legal questions. A deficiency in factual specificity requires an assessment of amendment and futility; an immunity determination requires identification and classification of the challenged conduct under the governing functional and jurisdictional tests. Treating unidentified acts as categorically immune while simultaneously relying on insufficient allegations to dismiss with prejudice conflates those inquiries and warrants reconsideration

**7. The Requested Correction.**

91. The Court should identify ECF No. 8 as the governing pleading, or at minimum expressly resolve which pleading governs before deciding immunity, and then assess the specific acts and remedies alleged against each Judicial Defendant in the operative pleading, together with the preserved record relevant to Plaintiff's procedural objections and proposed amendment. Part V, paragraphs B, C, and H.

## C. QUESTION TWO: THE SHORTENED RESPONSE PERIOD AFFECTED THE SCOPE OF THE DISMISSAL, BECAUSE A TIMELY OPPOSITION WOULD HAVE CHANGED WHAT THE COURT DECIDED ON THE MERITS OF IMMUNITY

92. ECF No. 113 did not dismiss for failure to respond. It decided judicial immunity on the merits. ECF No. 113 at 1–2. The timing defect therefore cannot be answered merely by observing that a court may decide an unopposed motion on its merits. *Hammond v. Acerno*, No. 25-2022, slip op. at 3–4 (3d Cir. June 18, 2026) (nonprecedential).

**The question here is different: what would a timely opposition have changed in the merits analysis ECF No. 113 actually performed?**

The answer is the scope of the disposition. ECF No. 113 identified one act of Judge McCabe, a temporary custody placement, and no specific act of Judge Kristiansson; cited 42 Pa.C.S. § 6321 as the jurisdictional basis; described immunity as shielding the judges "from suit and damages for their judicial actions" without separately analyzing declaratory relief, capacity, or the statutory exceptions governing injunctive relief; and, through ECF No. 114, dismissed every claim with prejudice without addressing amendment. ECF No. 113 at 1–2; ECF No. 114 at 1.

Plaintiff's opposition would have challenged each omission with specific legal authorities and record support. **The outstanding dependency and PFA transcripts, petitions, service records, and related evidence are additionally material to reconstructing the sequence of the Judicial Defendants' alleged misconduct, identifying each challenged act and its function, examining its jurisdictional basis, and determining whether the dismissal with prejudice was legally supportable.** Plaintiff repeatedly sought those materials, as documented in Part IV.E.3, ¶¶163–166. The Court's premature disposition prevented consideration of Plaintiff's opposition and the

significance of those outstanding records before terminating her claims against both Judicial Defendants with prejudice.

93. Judicial immunity requires an individualized examination of each challenged act, its function, jurisdictional basis, and the relief sought. ECF Nos. 113 and 114 dismissed every claim against both Judicial Defendants with prejudice without identifying and analyzing the full course of conduct attributed to each judge or separately addressing the remedies requested. Plaintiff's timely opposition would have presented the challenged acts, their constitutional and statutory implications, and the material evidence necessary to reconstruct the sequence of alleged misconduct. The outstanding dependency and PFA transcripts and records remain essential to completing that examination. Plaintiff expressly preserves her damages claims, individual- and official-capacity claims, claims against private participants, criminal-referral rights, and all legally available remedies under 42 U.S.C. §§ 1983, 1985(3), and 1986, the Constitution, and applicable state law.

94. The timing defect is not academic because the opposition Plaintiff was preparing would have made a specific, identifiable presentation that the Court did not have before it when it granted ECF No. 110. That presentation had four components: (1) the disputed pleading history described in Part IV.B above, under which ECF No. 21 is not the operative pleading and ECF No. 110's treatment of it as such rested on an unresolved and disputed premise; (2) Judge Kristiansson's PFA-related allegations, including the unnoticed May 1, 2025 amendment and the Clerk's uncorrected mischaracterization of the Guardian ad Litem as Plaintiff's "counsel," which ECF No. 110 addressed only by asserting immunity for unidentified "judicial actions" without identifying the acts themselves; (3) Judge McCabe's additional alleged conduct beyond the custody order ECF No. 110 isolated, including the ICPC-noncompliant placement, the contempt threat, and the

courtroom exclusion detailed in subsection 1 below, none of which ECF No. 110 addressed act-by-act; and (4) the concrete proposed amendment identified in subsection 8 below, which Plaintiff could and would have proposed had she been heard before the Court entered a with-prejudice disposition.

95. Defendants may argue that additional briefing could not alter judicial immunity. But that defense requires identification of each challenged act, its function, and its jurisdictional basis — questions ECF Nos. 110 and 113 did not address individually. Plaintiff's opposition would have supplied that analysis, as developed in subsections 1–4 below, together with the concrete proposed amendment in subsection 8.

96. ECF No. 110 sought dismissal with prejudice and without leave to amend on judicial-immunity, *Rooker–Feldman*, and Rule 12(b)(6) grounds. The Court ruled before receiving Plaintiff's opposition addressing those distinct defenses, available remedies, and amendment, notwithstanding her express preservation of merits briefing in ECF No. 108.

97. The Rule 12(b)(6) posture independently confirms why Plaintiff's unexpired opposition mattered. In *Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233-34 (3d Cir. 2008), the Third Circuit reiterated that a court deciding a Rule 12(b)(6) motion must accept well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor. Phillips also held that dismissal without a curative opportunity is ordinarily premature unless amendment would be inequitable or futile. Id. at 245-46. Thus, the pleading stage tests legal sufficiency; it does not authorize a court to convert disputed factual characterizations into established facts or bypass the ordinary amendment inquiry in a civil-rights action.

98. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), adds a related binding limitation: an affirmative defense may support dismissal under Rule 12(b)(6) only when the bar is apparent on the face of the complaint and materials properly considered with it. The court ordinarily considers the complaint, exhibits attached to it, matters of public record, and documents integral to or explicitly relied upon in the complaint. Id. Plaintiff does not contend that judicial immunity can never be resolved at the pleading stage. She contends that a with-prejudice immunity ruling cannot precede the required act-specific, function-specific, capacity-specific, and remedy-specific analysis where the pleaded and preserved record does not establish a categorical defense on its face. Plaintiff recognizes that separately filed exhibits, subsequent motions, and declarations do not automatically become allegations in the operative complaint merely because they appear on the docket. She invokes the separately identified materials to demonstrate the objections and facts she preserved, the disputed procedural history, and the concrete amendment she was prepared to present. Plaintiff does not concede that ECF No. 21 superseded ECF No. 8; the governing pleading must be identified under Rule 15 before the permissible scope of the Rule 12(b)(6) record and the amendment inquiry can be resolved.

99. Under *Phillips* and *Schmidt*, identifying the operative pleading, properly considering its allegations, determining whether immunity is apparent, and evaluating amendment are material inquiries. By ruling before Plaintiff's opposition was due, the Court deprived itself of her adversarial presentation on those issues.

100. *Regaolo* also declined simply to affirm on alternative Rule 12(b)(6) grounds where the district court had denied the *pro se* plaintiff an opportunity to amend. It relied on *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007), for the civil-rights rule that a district court ordinarily must offer amendment when dismissing for failure to state a claim unless

amendment would be inequitable or futile. That point is independently material to ECF No. 114's with-prejudice disposition, particularly where ECF No. 113 itself states that ECF No. 21 "only mentions Judge Kristiansson by identifying her among other state actor defendants." ECF No. 113 at 1-2. If the perceived defect was insufficient factual specificity, the amendment inquiry could not be bypassed merely by labeling unspecified conduct 'judicial.'

101. *Hammond* does not resolve the premature-adjudication defect presented here. Although ECF No. 113 reached the merits, it did so without Plaintiff's timely opposition addressing Kristiansson's specific acts, capacity and remedy distinctions, *Rooker–Feldman*, and amendment. Those omissions establish why the shortened briefing period was materially prejudicial.

102. The interest at stake heightens, rather than diminishes, the importance of that examination. The liberty interest of parents "in the care, custody, and control of their children" "is perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion). That interest "does not evaporate simply because [parents] have not been model parents or have lost temporary custody of their child to the State," and "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). It is an interest the Fourteenth Amendment protects against the State, not a privilege the State dispenses.

103. *Troxel* and *Santosky* establish the fundamental constitutional interests underlying Plaintiff's claims. Dismissing those claims with prejudice before her opposition period expired denied Plaintiff the opportunity to present the legal and factual grounds for protecting those interests through the remedies available under federal law.

**1. The Court Should Not Have Dismissed Judge McCabe With Prejudice Because ECF No. 113 Narrowed the Conduct Attributed to Her Without Adversarial Testing.**

104. The act-specific analysis Plaintiff requests is not abstract. As to Judge McCabe, Plaintiff's federal record, including ECF No. 28-1 at 18-19 described in Part II above, does not allege merely that Judge McCabe entered a custody order. Plaintiff's allegations and testimony are that Judge McCabe knew of the February 22, 2025 sexual assault of Plaintiff's child while the child was in state custody and took no protective action; that Plaintiff personally raised the assault in the dependency proceeding after court-appointed counsel William Rice declined to do so; that Plaintiff was threatened with contempt when she attempted to raise it (ECF No. 17 at 20); that Judge McCabe removed Plaintiff from the courtroom during proceedings affecting her fundamental parental rights, including the May 21, 2025 hearing at which temporary legal custody was granted to Alla Izrailova (ECF No. 28-1 at 18); that Judge McCabe permitted and gave effect to restrictions barring Plaintiff from speaking Russian with her child and denied a Russian-language interpreter to Plaintiff's mother; that Judge McCabe restricted Plaintiff's access to the child's Jewish school and religious community; that Judge McCabe ordered access to Plaintiff's private medical and therapy records over counsel's objection and without a proper subpoena; and that Judge McCabe presided over the May 21, 2025 termination hearing reflected in the sealed order as proceeding with 'No exhibits presented' while granting temporary legal custody to Alla Izrailova without ICPC approval (ECF No. 28-1 at 19; Order for Termination of Court Supervision, Docket No. CP-51-DP-0000923-2024, FID 51-FN-001368-2024 (Phila. Ct. Com. Pl., Fam. Div., May 21, 2025); see also ECF No. 12-3 (Plaintiff's correspondence to the ICPC administrators)). Plaintiff identifies this paragraph as her allegations and testimony, consistent with the record at ECF No. 28-1, not as a court finding. Plaintiff contends that reducing this record to 'Judge McCabe entered a custody

order,' as ECF No. 110 and ECF No. 113 did, materially mischaracterized the allegations actually before the Court and prevented the required act-by-act functional analysis described above.

**2. The Court Could Not Dismiss Judge Kristiansson With Prejudice for "Judicial Actions" It Never Identified.**

105. ECF No. 113 did not identify which act or acts of Judge Kristiansson it treated as judicial, and it did not explain how an unidentified act satisfies the function test that Stump, Mireles, Forrester, and Gallas require. ECF No. 113 at 1-2. The sequence set out in Part IV.B.6 above explains why that omission matters: if no act was adequately pleaded, the question was amendment; if acts were pleaded, they had to be identified and classified before immunity could attach to any of them.

106. As to Judge Kristiansson specifically — Plaintiff's previously filed materials, including ECF Nos. 17 and 108, identified specific conduct and procedural events concerning Judge Viktoria Kristiansson and the PFA proceedings before this Court. First, on May 1, 2025, the Final PFA Order was amended to remove the phrase "child of Plaintiff" following an April 30, 2025 petition filed by Guardian ad Litem Theo Ciccarelli Cornetta, whose standing and statutory authority to seek that modification Plaintiff disputes. Plaintiff alleges that the amendment occurred without advance notice to her, service of the modification petition, or an opportunity to be heard. ECF No. 108 at 12; Decl. ¶18. Second, Plaintiff repeatedly sought correction of the Clerk's erroneous designation of Cornetta as Plaintiff's "counsel," a designation Plaintiff contends materially misrepresented Cornetta's role and compromised the accuracy of the PFA record. ECF No. 17 at 11. Third, on April 9, 2026, courthouse personnel refused to accept Plaintiff's attempted recusal filing concerning Judge Kristiansson; Plaintiff identifies the refusal by courthouse personnel as a distinct obstruction of access to the judicial process and preserves the question of Judge

Kristiansson's knowledge, participation, direction, or responsibility pending examination of the underlying records. ECF No. 108 at 3; Decl. ¶8. These are distinct acts and procedural events requiring separate examination of their sources, the responsible actors, the applicable statutory authority, their constitutional significance, and the specific relief sought. **ECF No. 113 identified none of Judge Kristiansson's challenged acts before characterizing her conduct as unspecified "judicial actions" and dismissing every claim against her with prejudice.** Plaintiff submits that this undifferentiated disposition, entered before her opposition period expired, failed to apply the act-specific functional and jurisdictional analysis required by *Stump v. Sparkman*, *Mireles v. Waco*, *Forrester v. White*, and *Gallas v. Supreme Court of Pennsylvania*, and warrants reconsideration.

107. The May 1, 2025 amendment requires separate consideration. Plaintiff states from personal knowledge that she received no advance notice of the proposed amendment, did not petition for it, and did not authorize or consent to it. The May 1 order recites that Theo Ciccarelli Cornetta filed an intervention petition on April 30 and that, following review of the pleadings, the court removed the phrase "child of Plaintiff" from the March 31 final PFA order and cancelled the May 12 hearing. Plaintiff therefore disputes the notice and procedure supporting the amendment, not the existence of the petition recited in the order. (Commonwealth of Pennsylvania Protection From Abuse Order, Docket No. 2503-V-7369 (Phila. Ct. Com. Pl. Fam. Div. May 1, 2025), at 1; Declaration of Galina M. Novakhova in Support of Motion for Reconsideration and Reargument of ECF Nos. 113 and 114 ("Decl.") 18.)

108. The amended form retains the statement "AFTER A HEARING / DEFENDANT DID NOT APPEAR," which also appears in the original March 31 order. That repeated language does not, standing alone, establish that Plaintiff received notice or an opportunity to oppose the amendment.

Likewise, the May 1 notation that copies were sent does not establish advance notice of the requested modification. Protection From Abuse Final Order, Docket No. 2503-V-7369 Mar. 31, 2025, at 2 of 6; May 1, 2025, at 2 of 6; May 1, 2025, at 1.

109. The Court must separately examine Judge Kristiansson's challenged conduct, the governing statutory and constitutional requirements, the applicable judicial-immunity standards, and the availability of amendment before maintaining dismissal with prejudice. Plaintiff preserves her due-process claims, jurisdictional objections, and all legally available remedies arising from the challenged proceedings.

110. Plaintiff's allegations include Judge McCabe's knowledge of her child's February 22, 2025 sexual assault in state custody, Plaintiff's efforts to raise that assault in court, the absence of effective protective action, and subsequent obstruction of the investigation. ECF No. 28-1 at 18–21. The August 21, 2025 recorded detective statement arose during the later missing-child investigation; Plaintiff relies on its connection to the earlier assault and subsequent obstruction as an inference from the broader chronology, not as an express admission by the detective. Plaintiff also identifies statements by her minor child and mother concerning coordinated interference with reunification, supported by Plaintiff's testimony and her account of recordings in Decl. ¶17. Plaintiff preserves these statements and identified evidence in support of her §§ 1983, 1985(3), and 1986 claims, without representing disputed facts or inferences as judicial findings.

111. Plaintiff pursued Judge McCabe and Judge Kristiansson through separate procedural filings, including her Rule 55(a) requests at ECF Nos. 80 and 81, respectively. Those filings preserve defendant-specific procedural positions, while the allegations identified in ECF Nos. 17, 28-1, and 108 establish the distinct conduct Plaintiff attributes to each Judicial Defendant. The dismissal of

both judges with prejudice required individualized consideration of their alleged conduct, applicable immunity, capacities, and requested remedies rather than an undifferentiated characterization of their liability.

**2A. Each Challenged Act Requires Its Own Act-by-Act Analysis of Source, Allegation, Function, Jurisdiction, and Relief.**

112. Plaintiff sets out below, act by act, the six elements ECF Nos. 110 and 113 failed to analyze separately for either Judicial Defendant: (1) the specific challenged act; (2) its source in the record; (3) the allegation or established fact concerning it; (4) the function actually performed; (5) the jurisdictional authority and limitations implicated; and (6) the relief the act may legally support. Each challenged act must be examined independently under the functional and jurisdictional standards established by *Stump*, *Mireles*, *Forrester*, and *Gallas*, considering its specific circumstances, responsible actor, constitutional and statutory implications, and requested relief. Plaintiff maintains that neither judicial title nor a generalized characterization of conduct as "judicial actions" substitutes for the individualized examination required before dismissing every claim against both Judicial Defendants with prejudice, particularly where the Court ruled before Plaintiff's opposition period expired.

**113. As to Judge McCabe:**

**(a) Act** — granting temporary legal custody to Alla Izrailova at the May 21, 2025 hearing. **Source** — ECF No. 28-1 at 18-19; Order for Termination of Court Supervision, Docket No. CP-51-DP-0000923-2024 (Phila. Ct. Com. Pl., Fam. Div., May 21, 2025); King's Bench Application, No. 55-EM-2026, at 4. **Allegation** — the placement did not comply with 62 P.S. § 761 (Interstate Compact on the Placement of Children, Art. III). **Function** — entry of a custody disposition is ordinarily a

judicial function; Plaintiff's allegation concerns the statutory authority for its content, not whether a custody ruling was being made. **Jurisdiction** — whether 42 Pa. Cons. Stat. § 931(a) and the ICPC together supplied authority for this specific placement is a question Plaintiff contends ECF No. 113 did not separately analyze. **Relief** — Plaintiff preserves the alleged violation of interstate-placement requirements and the resulting constitutional injuries, seeking such damages or declaratory relief as the governing jurisdictional, immunity, causation, and remedial standards permit, distinct from any request to overturn the underlying custody determination itself.

**(b) Act** — threatening Plaintiff with contempt when she personally raised her daughter's February 22, 2025 sexual assault in the dependency proceeding. **Source** — ECF No. 17 at 20; Decl. ¶15. **Allegation** — a party allegation, not yet tested adversarially. **Function** — courtroom management during a pending proceeding is characteristically judicial. **Jurisdiction** — not independently disputed as to this act alone. **Relief** — Plaintiff preserves the alleged contempt threat as part of her constitutional claims and the documented sequence of alleged misconduct, together with all legally available remedies subject to the applicable immunity standards.

**(c) Act** — removing Plaintiff from the courtroom during the May 21, 2025 hearing. **Source** — ECF No. 28-1 at 18, item (4)(a). **Allegation** — a party allegation. **Function** — courtroom control during proceedings is characteristically a judicial function. **Jurisdiction** — not independently disputed as to this act alone. **Relief** — Plaintiff preserves the alleged courtroom exclusion, its effect on her opportunity to be heard, and all legally available remedies for any independently actionable constitutional injury.

**(d) Act** — discharging William Rice as Plaintiff's counsel after Plaintiff told the court she did not want him to represent her; Judge McCabe did not allow Plaintiff to speak or explain her position

and immediately assigned Patricia Cochran as replacement counsel without asking Plaintiff whether she wanted a different attorney or wanted to proceed *pro se*, and without Plaintiff's consent. **Source** — Decl. ¶15, 19; Order for Termination of Court Supervision, Docket No. CP-51-DP-0000923-2024, FID 51-FN-001368-2024 (Phila. Ct. Com. Pl., Fam. Div., May 21, 2025) (reflecting Patricia A. Cochran as attorney of record for Plaintiff). **Allegation** — a party allegation as to the manner of substitution; the order Plaintiff identifies as granting Rice's withdrawal and appointing Cochran has not yet been independently verified in this record. The underlying hearing transcripts that would show what occurred at the hearing where Rice was discharged and Cochran assigned have not been produced to Plaintiff despite her repeated requests, Decl. ¶11-14, 21. **Function** — a ruling on counsel substitution is ordinarily judicial. **Jurisdiction** — not independently disputed as to this act alone. **Relief** — Plaintiff preserves the alleged denial of a meaningful opportunity to address counsel substitution, its relationship to her procedural due-process claims, and all legally available remedies. The outstanding hearing transcripts identified in Part V(G) remain material to establishing the complete circumstances of this event.

**<u>114. As to Judge Kristiansson:</u>**

**<u>(a) Act</u>** — the May 1, 2025 amendment removing the phrase "child of Plaintiff" from the March 31, 2025 Final PFA Order. **Source** — Commonwealth of Pennsylvania Protection From Abuse Order, Docket No. 2503-V-7369 (May 1, 2025); Decl. ¶18. **Allegation** — entered without notice to Plaintiff and without a hearing, on a petition filed by Guardian ad Litem Theo Ciccarelli Cornetta, whose standing and authority to seek that relief Plaintiff disputes. Plaintiff's account is that she received no advance notice of the petition, was not afforded a hearing on the proposed amendment, and was not notified that a scheduled hearing had been canceled (Decl. ¶18). The

order's recital "AFTER A HEARING / DEFENDANT DID NOT APPEAR" is addressed in ¶108 above. Plaintiff states her account as sworn testimony, not as a judicial finding.

The governing framework is as follows:

23 Pa.C.S. § 6117(a) permits either party to seek modification of a protection order during its pendency and provides for a petition, service, and hearing unless otherwise authorized by statute; 23 Pa.C.S. § 6108(d) permits amendment "upon subsequent petition filed by either party"; and Pa.R.C.P. 1901.8(c) governs disposition of a petition to modify a final order.

In *Stamus v. Dutcavich*, 938 A.2d 1098 (Pa. Super. 2007), the Superior Court construed §§ 6108(d) and 6117(a) together and held that a PFA order could not be amended or dismissed sua sponte without the required petition. The court vacated the orders under review. Plaintiff relies on *Stamus* for the statutory petition requirement and the necessity of compliance with the applicable modification procedures, while separately challenging Cornetta's standing, service of the petition, and the absence of a hearing. The existence of Cornetta's April 30 petition is acknowledged; its legal sufficiency and procedural compliance remain disputed.

*Manning v. Manning*, No. 1164 MDA 2022 (Pa. Super. Ct. Feb. 15, 2023) (nonprecedential), acknowledged *Stamus* and expressly left unresolved questions concerning the interaction of the PFA modification statutes and procedural rules. Plaintiff maintains that neither decision resolves the particular question of Cornetta's authority to seek modification.

**Function** — entry of an order modifying a PFA order is ordinarily adjudicative; the precise circumstances and any separately challenged conduct remain subject to the functional analysis required by *Forrester*, *Gallas*, and *Mireles*. **Jurisdiction** — the Court of Common Pleas possesses general statutory authority over PFA proceedings; Plaintiff challenges the authority and procedures

supporting this particular amendment, including the petitioner's standing, service, notice, and opportunity to be heard, while preserving jurisdictional objections supported by the complete record. **Relief** — declaratory relief concerning the alleged due-process deficiency and all other legally available relief for independently actionable constitutional injuries, subject to the applicable immunity and remedial standards.

**(b) Act** — repeated refusal to correct the Clerk's designation of Guardian ad Litem Theo Ciccarelli Cornetta as Plaintiff's "counsel." **Source** — ECF No. 17 at 11. **Allegation** — the designation originated with the Clerk, and Plaintiff repeatedly petitioned Judge Kristiansson to correct it because Cornetta was not Plaintiff's attorney. **Function** — the Clerk's original designation and Judge Kristiansson's response to correction requests are distinct acts requiring separate functional examination under *Forrester*, *Gallas*, and *Allen v. DeBello*. **Jurisdiction** — the statutory and functional authority implicated by each distinct act must be evaluated under the applicable law. **Relief** — declaratory or corrective relief concerning the allegedly erroneous designation and any independently actionable constitutional injury, subject to the governing remedial standards.

**(c) Act** — continuing to act in the PFA proceeding on April 9, 2026, including signing a Rule on Defendant's Petition to Modify, on the same day courthouse personnel refused to accept Plaintiff's attempted recusal filing concerning Judge Kristiansson. **Source** — King's Bench Application, No. 55 EM 2026, at 6, 11; Decl. ¶8; ECF No. 108 at 3. **Allegation** — Plaintiff attempted to submit a recusal motion, courthouse personnel refused to accept it, and Judge Kristiansson continued acting in the proceeding. The record presently identifies the refusal as conduct of courthouse personnel; whether Judge Kristiansson directed or participated in that refusal requires further evidence. **Function** — signing a rule to show cause is ordinarily adjudicative; the filing-window refusal must be evaluated separately according to the responsible actor and function. **Jurisdiction** —

Plaintiff preserves objections supported by the underlying records and applicable law. **Relief** — Plaintiff preserves the incident as part of the alleged interference with court access and due process and seeks any relief legally supported by the responsible actor's conduct and the complete record.

**(d) Act** — declining Plaintiff's request to remove Theo Ciccarelli Cornetta from the designation or role in which she was listed as Plaintiff's counsel on PFA filings, and declining Plaintiff's separate request to hold **Defendant Anjelique J. Bonilla** in contempt. **Source** — Decl. ¶20. **Allegation** — Plaintiff states that Cornetta did not represent her, did not advocate the relief Plaintiff requested, and, based on Plaintiff's observations, acted in the interests of DHS and the opposing party. Plaintiff maintains that the inaccurate counsel designation and the disposition of her separate contempt request affected notice, representation, access to relief, and the fairness of the proceedings. **Function** — the respective decisions and any associated administrative conduct require identification and analysis under the governing functional standards. **Jurisdiction** — the statutory basis and scope of authority implicated by the challenged conduct must be assessed without treating every procedural or jurisdictional objection as previously resolved. **Relief** — Plaintiff preserves her constitutional and statutory claims, including her conspiracy allegations and damages claims, and seeks individualized consideration of the legally available remedies under the applicable pleading and judicial-immunity standards.

**(e) Act** — repeatedly rescheduling PFA hearing dates affecting Plaintiff in a manner Plaintiff states accommodated the opposing party's scheduling needs while disregarding her own. **Source** — Decl. ¶21. **Allegation** — Plaintiff describes multiple rescheduling events and has repeatedly sought the underlying transcripts and records needed to establish their sequence, the reasons given, and their procedural consequences. **Function** — scheduling decisions ordinarily involve judicial case management, but the complete sequence, responsible actors, and circumstances must be examined

under the controlling functional standards. **Jurisdiction** — Plaintiff preserves all applicable objections supported by the record and governing law. **Relief** — Plaintiff preserves the challenged conduct, its relationship to the alleged pattern of constitutional violations, and all legally available remedies; the outstanding transcripts identified in Part V(G) remain material to evaluating these events.

**3. Judicial Immunity Turns on Function, Not Title.**

115. Plaintiff does not contend that procedural error, ex parte procedure, unfairness, malice, or a conspiracy allegation, standing alone, defeats a judge's damages immunity. The controlling authorities are more exact. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), and *Stump v. Sparkman,* 435 U.S. 349, 356-62 (1978), recognize two principal exceptions to absolute judicial immunity from damages: nonjudicial acts and judicial acts taken in the clear absence of all jurisdiction. The Third Circuit applies the same functional framework in *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768-69 (3d Cir. 2000), and *Forrester v. White*, 484 U.S. 219, 227-29 (1988), which require examination of the nature and function of the challenged act rather than the actor's title alone. Gallas also makes clear that grave procedural error, informal or ex parte procedure, unfairness, controversy, or improper motive does not by itself transform a judicial act into a nonjudicial one. Recent persuasive appellate authority illustrates the same functional principle in the family-court context. In *Gibson v. Goldston*, 85 F.4th 218, 223-27 (4th Cir. 2023), a published decision, the Fourth Circuit held that a family-court judge was not entitled to judicial immunity for personally participating in a litigant's home search and seizure because those were executive, not judicial, functions. Gibson emphasized that judicial immunity protects judicial acts, not everything done by a person who holds judicial office, and that the dispositive inquiry remains the function actually performed. Plaintiff cites Gibson only as persuasive authority consistent with

Stump, Mireles, and Forrester, not as binding Third Circuit precedent and not for the proposition that every erroneous family-court act is nonjudicial. Plaintiff relies on these authorities precisely because they require the act to be identified and classified before immunity can be applied.

116. *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 866 (1824), establishes that judicial discretion is "a mere legal discretion," exercised to discern and follow the course prescribed by law. Courts are instruments of law, and judicial authority must be exercised within its governing legal limits. Plaintiff invokes *Osborn* to reinforce the constitutional principle that judicial office does not place official conduct beyond legal examination. The challenged acts must be evaluated according to their actual nature, function, and jurisdictional basis under the controlling standards established in *Stump*, *Mireles*, *Forrester*, and *Gallas*.

**4. The Constitutional and Textual Framework Supports, but Does Not Replace, the Controlling Immunity Test.**

117. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170, 177-80 (1803), supplies the controlling constitutional architecture for this inquiry without substituting for it. It is "emphatically the province and duty of the judicial department to say what the law is," id. at 177-78, and the inquiry into official conduct — there, whether mandamus could run against an executive officer — turns on "the nature of the thing to be done," not "the office of the person," id. at 170; that is the same function-over-title principle Forrester and Gallas apply in the judicial-immunity context and that governs here. Marbury further holds that the Constitution is the "superior, paramount law" courts must apply over any conflicting ordinary enactment, id. at 177-80, a duty tied to Article III's extension of the federal judicial power to cases properly arising under the Constitution. Plaintiff invokes *Marbury* for its constitutional-supremacy, judicial-review, and nature-of-the-act principles, which reinforce the requirement that the Judicial Defendants' challenged conduct be

examined under the controlling functional and jurisdictional standards rather than presumed immune solely because of judicial office.

118. Article VI reinforces the same controlling rule of decision. The Supremacy Clause declares the Constitution and laws made pursuant to it the supreme law of the land and expressly commands that "Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. *Howlett v. Rose*, 496 U.S. 356, 367-75 (1990), holds that state courts may not dissociate themselves from federal law because of its federal source when the parties and controversy are properly before them, and the Pennsylvania Supreme Court holds the same. *Council 13, AFSCME ex rel. Fillman v. Rendell,* 986 A.2d 63, 77 (Pa. 2009). *Armstrong v. Exceptional Child Center*, Inc., 575 U.S. 320, 324-27 (2015), holds that the Supremacy Clause is not the source of any federal rights and does not create a cause of action. The Supremacy Clause binds state judges to controlling federal constitutional law; Plaintiff's causes of action arise under 42 U.S.C. §§ 1983, 1985(3), and 1986, and other applicable substantive law, rather than from the Supremacy Clause standing alone.

119. That obligation is reinforced by the controlling, majority rule of vertical stare decisis. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989), holds that a court bound by directly applicable Supreme Court precedent must follow it, leaving to the Supreme Court alone the prerogative of overruling its own decisions — a hierarchical principle that governs state courts with equal force under Article VI, *Howlett,* and *Council 13. Ramos v. Louisiana*, 590 U.S. 83 (2020), states in Part I of the majority opinion that incorporated Bill of Rights provisions "bear the same content when asserted against States as they do when asserted against the federal government," so the state-court setting does not itself dilute the federal constitutional protections pleaded in this action. See also *Ramos*, 590 U.S. at 124 n.5 (Kavanaugh, J., concurring in part) (citing *Rodriguez de Quijas*, 490 U.S. at 484).

120. *United States v. Peters*, 9 U.S. (5 Cranch) 115, 136 (1809), supplies a historically rooted federal-supremacy principle arising from Pennsylvania itself: a State cannot annul a federal judgment or determine the jurisdiction of the courts of the United States, lest, Chief Justice Marshall warned, the Constitution become a "solemn mockery." Id. at 136. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 377-78, 413-14 (1821), supplies the related, narrow principle that a State is not the final arbiter of the extent of its own powers under the Constitution. Plaintiff invokes *Cohens* for that narrow proposition alone, and not for any suggestion that this Court sits as an appellate tribunal over Pennsylvania family-court judgments; that separate question is governed by the Rooker-Feldman doctrine addressed elsewhere in this memorandum.

121. The constitutional duty to apply controlling federal law also reaches proceedings that terminate fundamental parental rights. *In re N.G.*, 2018 IL 121939 (Ill. 2018), reviewed the termination of a father's parental rights to his daughter. The termination rested in part on a 2008 aggravated unlawful use of a weapon conviction under 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d), a provision held facially unconstitutional in *People v. Aguilar*, 2013 IL 112116. The Illinois Supreme Court held that the conviction could not support the depravity finding, affirmed the appellate court's judgment reversing the unfitness and best-interest determinations, and reversed the circuit court. Id. 88-90; see also id. 84. In reaching that result, the court explained that when a court "is confronted with a law repugnant to the constitution, what it must do 'is simply to ignore it,'" id. 40 (quoting *Reynoldsville Casket Co. v. Hyde* (Scalia, J., concurring)), and that "[s]tate courts are under a mandatory obligation to adhere to this federal constitutional command," id. 41. In its block quotation of Council 13, *AFSCME ex rel. Fillman v. Rendell*, 986 A.2d 63, 77 (Pa. 2009), the court stated that "by virtue of the Supremacy Clause, the State courts are bound by the decisions" of the United States Supreme Court, and that they "must adhere to extant Supreme Court

jurisprudence." Id. 41. The court's discussion of parental interests cites *Santosky v. Kramer*, 455 U.S. 745 (1982), id. 24, and *Troxel v. Granville*, 530 U.S. 57 (2000), id. 25. Plaintiff cites *In re N.G.* as a decision of the Illinois Supreme Court, persuasive rather than controlling here. It does not hold that every procedural error in a family-court proceeding voids the resulting order, it does not address judicial immunity, and it does not establish an exception to that immunity. Its relevance is the combination of a parental-rights termination with a predicate conviction that lacked constitutional validity.

122. In re N.G. also confirms the need to distinguish different constitutional defects rather than collapse them into a single 'voidness' theory. Its void-judgment result rested on the narrow line of Supreme Court authority concerning a conviction founded on a facially unconstitutional penal statute, including *Ex parte Siebold*, 100 U.S. 371, 376-77 (1879), and *Montgomery v. Louisiana,* 577 U.S. 190 (2016). Plaintiff does not extend that doctrine to ordinary procedural error, adverse judicial rulings, or every asserted constitutional violation. For the Judicial Defendants here, the relevant inquiries remain the Forrester/Gallas functional test, the Stump/Mireles/Figueroa jurisdictional test, the current text of Section 1983 for prospective relief, and the pleading standards applicable to ECF No. 110.

123. The secondary authority traced during this review leads to the same caution. In re N.G. cites 16A Am. Jur. 2d Constitutional Law Section 195 for the historically recognized consequences of a facially unconstitutional statute. *Todman v. Mayor & City Council of Baltimore*, No. GLR-19-3296, ECF No. 44, at 17-18 (D. Md. Sept. 23, 2020), likewise cites that section, but in a private-party setting: it addresses a private landlord's reliance on a statute later held invalid, not a judge's acts. Todman quotes *Flemming v. South Carolina Electric & Gas Co*., 239 F.2d 277, 279 (4th Cir. 1956), for the general rule that reliance on a later-unconstitutional statute does not by itself protect

against liability; it recognizes a Maryland exception, quoting *Perkins v. Eskridge*, 366 A.2d 21, 29 (Md. 1976); and it states that reliance is not an absolute defense and that liability may attach to acts done unreasonably or in bad faith. Todman is persuasive only and is not a judicial-immunity decision. *Todman* is persuasive district-court authority concerning the consequences of reliance on an unconstitutional statute in a private-party context. Plaintiff invokes it for the limited constitutional-law principles it discusses, while relying on *Stump*, *Mireles*, *Forrester*, *Gallas*, and *Figueroa* for the controlling judicial-immunity analysis applicable to the Judicial Defendants.

124. This distinction also corrects overbroad formulations found in nonauthoritative constitutional-law compilations. The controlling authorities do not support the propositions that any due-process error automatically destroys subject-matter jurisdiction, that any constitutional violation automatically eliminates judicial immunity, or that the Supremacy Clause independently supplies a Section 1983 cause of action. Plaintiff relies instead on the Constitution's text and the primary authorities identified in this Memorandum.

125. Taken together, this authority establishes a constitutional and textual framework that supports, but does not replace, the controlling immunity test: Marbury's function-over-title principle, Article VI's binding command on state courts enforced through Howlett, Council 13, and Armstrong, the vertical-stare-decisis and incorporation principles of Rodriguez de Quijas and Ramos, the federal-supremacy holdings of Peters and Cohens, and In re N.G.'s and Siebold's limited application of that command to a state court's own orders. None of this authority displaces the function-and-jurisdiction test Gallas, Forrester, Stump, and Mireles supply; it confirms that the Judicial Defendants' asserted immunity must be tested against what they actually did, under federal constitutional law this Court is bound to apply, consistent with the act-by-act analysis in subsection 2A above.

**5. The Court Should Correct the Jurisdictional Premise Because ECF No. 113 Relied on a Statute That Does Not Confer the Jurisdiction It Cited.**

126. The jurisdictional branch of the immunity inquiry is likewise narrower than ordinary jurisdictional error. *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000), explains that a judge is not deprived of immunity merely because an act was erroneous, malicious, or in excess of authority; liability arises only where the judge acted in the clear absence of all jurisdiction, and some subject-matter jurisdiction is ordinarily sufficient for immunity purposes. Plaintiff therefore does not argue that every UCCJEA, PKPA, due-process, or state-law error automatically defeats immunity. She argues that ECF No. 113 reached the immunity conclusion before receiving her opposition and rested its jurisdiction statement on '42 Ps.C.S. § 6321.' Section 6321 concerns commencement of Juvenile Act proceedings; it is not, by its text, the general statute conferring unlimited original jurisdiction on courts of common pleas. The general original-jurisdiction provision is 42 Pa.C.S. § 931(a). The citation mismatch does not itself establish clear absence of jurisdiction, but it demonstrates why the jurisdictional premise required accurate authority and adversarial briefing before a with-prejudice immunity ruling. That distinction reinforces the separate nature of the two immunity inquiries: whether the challenged conduct was judicial in function, and, if so, whether it was taken merely in excess of jurisdiction or instead in the clear absence of all jurisdiction. See *Figueroa*, 208 F.3d at 443-44. The existence of some subject-matter jurisdiction cannot substitute for the antecedent functional inquiry required by Stump, Mireles, Forrester, and Gallas.

127. ECF No. 113 itself cited *Mikhail v. Kahn*, 572 F. App'x 68, 71 (3d Cir. 2014), a nonprecedential Third Circuit disposition, for the general standard of judicial immunity. The Third Circuit's opinion in that case, No. 14-1144 (3d Cir. July 9, 2014), states that judges are absolutely

immunized from a civil rights suit for money damages arising from their judicial acts; the passage Plaintiff has reviewed does not separately state a jurisdiction element, so that citation does not by itself establish the jurisdiction prong. That general statement does not resolve the distinct functional and jurisdictional inquiries presented by the specific acts attributed to Judges McCabe and Kristiansson. That citation does not resolve this case's distinct statutory-authority and functional-classification disputes; it states the general standard without applying it to the specific acts, orders, and statutory provisions at issue here. Separately, and as distinct persuasive authority on the same functional-immunity standard, *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 659-60 (E.D. Pa. 2014) (a related district-court decision, not the case ECF No. 113 cited), held that a judge is absolutely immune from damages where (1) the act was taken in the judge's judicial capacity and (2) the judge had at least some jurisdiction over it, and found that requirement satisfied there because the Pennsylvania courts of common pleas have 'unlimited original jurisdiction' under 42 Pa. Cons. Stat. Ann. § 931(a), applied alongside the specific PFA, custody, and divorce statutes at issue in that case. Id. at 660.

128. Mikhail's treatment of relief beyond damages is adverse to the plaintiff there, and Plaintiff states it accurately rather than selectively. The court held that Mr. Mikhail could not obtain true declaratory relief against the defendant judges because, where judges act as adjudicators, they are not the proper defendants in a § 1983 suit challenging a statute's constitutionality. *Mikhail*, 991 F. Supp. 2d at 620 (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198-200 (3d Cir. 2000)). The court separately held his claim for injunctive relief independently barred: the 1996 amendment to 42 U.S.C. § 1983 forecloses injunctive relief against a judicial officer for an act taken in a judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable, neither of which Mr. Mikhail had shown, and, even apart from the 1996 amendment,

*Pulliam v. Allen*, 466 U.S. 522, 542-43 (1984), required a showing of no adequate remedy at law — a showing defeated there because appellate review was itself an adequate remedy Mr. Mikhail had used. *Mikhail*, 991 F. Supp. 2d at 661-62. Plaintiff distinguishes *Mikhail* on its particular claims, challenged functions, and available remedies. Plaintiff expressly preserves her requests for declaratory and prospective injunctive relief and maintains that each must be examined under the governing role-specific standards, including the express statutory exceptions in 42 U.S.C. § 1983, rather than foreclosed categorically by the adverse result in *Mikhail*.

129. The correction of ECF No. 113's statutory citation, and the accurate statement of what Mikhail actually held, do not change the immunity analysis Plaintiff asks this Court to apply, because Plaintiff relies on Mikhail for a narrower proposition than any relief-availability holding: that the jurisdiction prong and the function prong of the immunity test are separate inquiries, each requiring its own analysis against the specific statute and the specific act at issue, rather than a title-based assumption that a judge's acts are automatically both within jurisdiction and judicial in function. That proposition is unaffected by, and is not undermined by, Mikhail's separate and adverse treatment of declaratory and injunctive relief; it is the same function-and-jurisdiction methodology Gallas and Forrester supply and that subsection 2A above applies act by act. Neither the authority ECF No. 113 actually cited nor this related district-court authority supports a title-based immunity shortcut; both demonstrate why function and jurisdiction must be analyzed separately, act by act, before all claims are dismissed with prejudice.

130. The Pennsylvania Supreme Court's decision in *In the Interest of G.G.B.*, No. 35 WAP 2024 (Pa. Mar. 26, 2026), construes Section 6321 together with 42 Pa.C.S. § 931(a) and Pennsylvania Constitution article V, section 5(b). The majority held that the trial court had subject-matter jurisdiction under § 931(a) and article V, section 5(b), and that the child's out-of-state birth did not

defeat that jurisdiction, although the out-of-state issue raised unpreserved questions of power and personal jurisdiction. Slip op. at 16-17 & n.12. The majority separately held that venue under § 6321(b), which permits commencement 'in the county where the child resides or is present,' was improper in the county where that proceeding was brought, and it vacated and remanded. Id. at 25-26, 28; see also id. at 26 n.14 (noting West Virginia's temporary emergency jurisdiction). ECF No. 113 cited Section 6321 without identifying subsection (b). G.G.B. confirms that the Section 6321 commencement-and-venue provision is distinct from the general original-jurisdiction provision, 42 Pa.C.S. § 931(a), on which the subject-matter analysis rests. Id. at 16-17. G.G.B. predates ECF No. 113 (decided March 26, 2026, versus ECF No. 113's September 28, 2026 entry) and is cited as preexisting statutory authority the Court did not address, not as an intervening decision. *G.G.B.* distinguished the existence of general subject-matter jurisdiction from compliance with the statutory requirements governing the particular proceeding. Plaintiff invokes that distinction to preserve her challenges to the statutory authority exercised in this case, not to concede the lawfulness of the challenged custody and placement decisions. The distinction recognized in *G.G.B.* between general subject-matter jurisdiction and statutory requirements governing particular proceedings reinforces Plaintiff's request for an accurate, act-specific jurisdictional analysis under the controlling federal judicial-immunity standards.

**6. Damages, Declaratory Relief, Injunctive Relief, and Capacity Are Not the Same Question and Each Requires Separate Analysis.**

131. The remedial question was joined but never decided. ECF No. 110 asserted that judicial immunity "extends to declaratory and injunctive relief." ECF No. 110 at 6. ECF No. 113, by contrast, described the immunity it applied as shielding the Judicial Defendants "from suit and damages for their judicial actions," ECF No. 113 at 1, and did not separately address declaratory

relief, the statutory exceptions to the bar on injunctive relief, or capacity before ECF No. 114 dismissed all claims with prejudice. ECF No. 114 at 1. Plaintiff's opposition would have joined that issue with the authorities set out in this subsection.

132. Prospective relief requires a separate statutory and role-specific analysis. Congress amended 42 U.S.C. § 1983 in 1996 to provide that injunctive relief shall not be granted against a judicial officer for an act or omission taken in a judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable. See *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000). Brandon E. recognizes that the amendment implicitly preserves declaratory relief in some circumstances and limits injunctions where declaratory relief remains available. *Allen v. DeBello*, 861 F.3d 433, 440-41 (3d Cir. 2017), further distinguishes a judge acting as a neutral adjudicator from a judge acting in an enforcement or administrative role for purposes of prospective § 1983 relief. Id. Allen's limitation is substantial: "a judge who acts as a neutral and impartial arbiter of a statute is not a proper defendant to a Section 1983 suit," while a judge who acts as an enforcer or administrator may be sued. Id. Accordingly, Plaintiff's opposition would have required separate analysis of each Defendant's challenged function, capacity, continuing injury, and requested remedy, including whether the alleged conduct involved adjudicative, administrative, or enforcement functions. She requests identification of the specific challenged role, the continuing injury, the proposed form of relief, and whether the record supports a non-adjudicative function. This distinction is separate from the immunity analysis applicable to damages. ECF No. 110 did address the statutory injunction bar and asserted that McCabe did not violate a declaratory decree, but Plaintiff's opposition would have addressed the statute's separate 'declaratory relief was unavailable' alternative, the availability and propriety of declaratory relief, and whether each challenged role

was purely adjudicative or instead administrative or enforcement-related. ECF No. 113 did not separately analyze those remedial questions before dismissing all claims with prejudice. Capacity also matters independently of the relief inquiry. *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991), distinguishes personal-capacity § 1983 claims from official-capacity claims; the existence of official-capacity limitations does not by itself collapse or resolve properly pleaded personal-capacity theories. Plaintiff does not invoke Hafer to defeat absolute judicial immunity for a genuinely judicial act; she invokes it to preserve the requirement that capacity, function, and remedy be analyzed separately rather than merged into a single categorical dismissal.

133. ECF No. 110 also relied on *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980), in responding to conspiracy allegations. Dennis confirms that a judge does not lose damages immunity merely because a judicial act is alleged to have resulted from a corrupt conspiracy. But Dennis simultaneously holds that judicial immunity does not extend derivative immunity to private persons who are alleged to be willful participants in joint action with the judge; the judge's immunity does not change the character of the private participants' conduct for § 1983 purposes. Plaintiff's opposition would therefore have accepted the first proposition without allowing ECF No. 110's immunity argument to erase separately pleaded claims against nonjudicial participants or to substitute a generalized conspiracy label for the required act-specific analysis of the Judicial Defendants themselves.

134. The prospective-relief sought in this action requires separate analysis from the damages and immunity rulings addressed above, and ECF Nos. 113 and 114 did not separately analyze it. *Daker v. Keaton,* No. 20-10798, slip op. at 5-7 (11th Cir. Aug. 12, 2021) (per curiam) (unpublished), is persuasive on this remedial sequencing problem. The Eleventh Circuit vacated and remanded where the district court concluded that all judicial defendants were immune without separately

evaluating the plaintiff's declaratory and injunctive claims, requiring separate consideration of whether declaratory relief was available and whether the statutory prerequisites for injunctive relief were satisfied. Daker did not hold that the plaintiff was ultimately entitled to prospective relief; it held that the blanket immunity analysis was incomplete. *Supreme Court of Virginia v. Consumers Union of the United States,* Inc., 446 U.S. 719, 736-37 (1980), independently confirms the functional distinction among adjudicative, legislative, and enforcement roles: the Supreme Court held that although the Virginia Supreme Court and its members possessed legislative immunity when promulgating attorney-discipline rules, they remained proper defendants for declaratory and injunctive relief to the extent they possessed and exercised enforcement authority. Consumers Union predates the 1996 amendment to 42 U.S.C. § 1983 discussed above in this Part and does not displace the current statutory limitation on injunctions against judicial acts; its continuing relevance here is the Supreme Court's function-specific treatment of the different roles judicial officers perform.

135. The 1996 amendment to § 1983 limits the prospective-relief principles of *Pulliam v. Allen,* 466 U.S. 522 (1984), and *DiRuggiero v. Rodgers*, 743 F.2d 1009 (3d Cir. 1984). See Azubuko, 443 F.3d at 303–04. Likewise, *Thompson v. Thompson*, 484 U.S. 174, 187 (1988), forecloses reliance on the PKPA as an implied federal cause of action to determine the validity of competing state custody decrees. Neither development eliminates the requirement to separately assess otherwise available constitutional claims and remedies.

**7. Rooker-Feldman Does Not Bar Claims Based on Independent Injury.**

136. ECF No. 113 did not reach ECF No. 110's Rooker-Feldman ground or its separate Rule 12(b)(6) ground because it dismissed on immunity. Plaintiff's opposition in active preparation would have addressed *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159,

166-69 (3d Cir. 2010), which requires the Court to identify the source of the alleged injury and whether the federal plaintiff is asking the district court to review and reject a state judgment. Great Western recognizes that injuries attributed to defendants' independent conduct are analytically distinct from injuries caused by the state-court judgment itself. That distinction is reinforced by binding Third Circuit child-welfare and domestic-relations authority. *In B.S. v. Somerset County*, 704 F.3d 250, 259-61 (3d Cir. 2013), the Court of Appeals held that Rooker-Feldman did not bar a mother's federal claims where the alleged injury was traceable to defendants' conduct rather than to the state custody order itself. *Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 491-92 (3d Cir. 1997), likewise permitted an independent constitutional challenge to child-welfare conduct without treating the claim as an appeal from the dependency judgment. *Allen v. DeBello,* 861 F.3d 433, 438-39 (3d Cir. 2017), again emphasized Rooker-Feldman's narrow scope and distinguished challenges to underlying policies or conduct from prohibited review of particular custody judgments. Plaintiff's opposition would have applied those authorities claim by claim rather than treating every claim arising in a family-court context as a forbidden appeal from a state judgment.

137. Persuasive circuit authority further illustrates the same source-of-injury distinction. *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995), explained that a § 1983 plaintiff may seek damages for an independently unlawful conspiracy affecting the state judicial process without necessarily asking the federal court to overturn the state judgment itself. *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008), is especially relevant factually because it distinguished a parent's claim seeking redress for loss of custody from a request for relief from the underlying domestic-relations judgment. These authorities are persuasive only, but they reinforce the controlling Third Circuit

rule that the source of the injury—not the mere existence of a family-court order—governs the Rooker-Feldman inquiry.

138. Recent persuasive appellate authority provides a closely analogous application. In *Bellinsky v. Galan*, Nos. 24-1351 & 24-1352 (10th Cir. July 22, 2025) (unpublished), the Tenth Circuit reversed the judgments in two federal civil-rights actions arising from domestic-relations, protection-order, and related proceedings and remanded both cases. On Rooker-Feldman, the court relied on the distinction reflected in Nesses and Riehm and rejected the doctrine where the plaintiff sought damages for alleged independent wrongdoing rather than modification or vacatur of the state judgment. The Tenth Circuit separately held, under Sprint Communications, *Inc. v. Jacobs,* 571 U.S. 69 (2013), that Younger abstention in a domestic-relations case requires a threshold determination that the proceeding falls within a Sprint category. Bellinsky is nonprecedential and is cited only for persuasive value; the controlling framework here remains Great Western, B.S., Ernst, and Allen. Its relevance is that another federal court of appeals recently reversed dismissals where domestic-relations context had been allowed to substitute for the required doctrine-specific analysis.

139. A second recent appellate decision reinforces the remedial point. In *Edwards v. Randolph County Sheriff*, No. 25-10843 (11th Cir. Sept. 28, 2026), a published Eleventh Circuit opinion, the court reversed the district court's dismissal of claims resolved on mootness grounds, vacated the dismissal order in part, and remanded for further proceedings while expressly taking no position on the ultimate merits of the revived claims. Although Edwards concerned mootness rather than judicial immunity or Rooker-Feldman, its procedural significance is that an appellate court may reverse an erroneous threshold dismissal and remand the affected constitutional claims without

adjudicating their ultimate merits. Plaintiff invokes that limited principle in support of vacatur and further proceedings under the correct legal standards.

**8. Leave to Amend and Futility Are Not Resolved by a Bare Assertion of Futility.**

140. Under Rule 15(a)(2) and the governing civil-rights pleading authorities, leave to amend should ordinarily be allowed when justice requires unless amendment would be inequitable or futile. Futility must be evaluated against the proposed amended allegations and the substantive legal barriers to the relief they seek. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002); *Phillips v. County of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008); *Peeples v. Citta*, 501 F. *App'x 109*, 111 (3d Cir. 2012) (not precedential). Plaintiff did not have the opportunity to respond to the futility argument raised in ECF No. 110 before the Court ruled with prejudice.

141. The amendment issue is also reinforced by Regaolo and Fletcher-Harlee. Regaolo did not permit an appellate court to cure a procedurally defective dismissal simply by adopting an alternative Rule 12(b)(6) rationale where the *pro se* plaintiff had not received the ordinary opportunity to amend. Fletcher-Harlee recognizes the special civil-rights practice of allowing amendment when a complaint is found to fail to state a claim unless amendment would be inequitable or futile. Here, ECF No. 114 dismissed Judge Kristiansson with prejudice even though ECF No. 113 simultaneously stated that the pleading "only mentions Judge Kristiansson by identifying her among other state actor defendants." ECF No. 113 at 1-2. If that characterization was correct, the question whether a more definite act-specific pleading could cure the asserted defect had to be confronted before a with-prejudice disposition could properly rest on futility.

142. If the Court does not reopen briefing on ECF No. 110, Plaintiff identifies the concrete amendment she would make, rather than resting on a general request for leave to amend. Leave to amend is stronger, and this Court can assess it directly, when it is tied to specific, sourced allegations rather than an unspecified assurance that a cure exists. Plaintiff would add the following paragraphs, each naming the defendant it concerns, its source, and the relief it could support, drawing on the act-by-act analysis in subsection 2A above: (1) against Judge McCabe, an allegation that the May 21, 2025 custody placement to Alla Izrailova did not comply with the Interstate Compact on the Placement of Children, 62 P.S. § 761 (Interstate Compact on the Placement of Children, Art. III), sourced to ECF No. 28-1 at 18-19 and the King's Bench Application at 4, supporting Plaintiff's challenge to the placement process and the asserted constitutional injury, subject to individualized analysis of judicial function, causation, immunity, and available relief; (2) against Judge Kristiansson, an allegation that the May 1, 2025 PFA amendment was entered without notice to Plaintiff or a hearing, on a petition from a Guardian ad Litem whose standing to seek that relief Plaintiff disputes, sourced to the May 1, 2025 PFA docket orders and Decl. ¶18, supporting Plaintiff's procedural-due-process challenge concerning the absence of notice and hearing, independently of any request to invalidate the PFA order; and (3) against Judge Kristiansson, an allegation that she repeatedly declined to correct the Clerk's designation of the Guardian ad Litem as Plaintiff's "counsel" despite Plaintiff's repeated requests to correct it, sourced to ECF No. 17 at 11, supporting declaratory or corrective relief as to that designation. Each of these three proposed allegations targets an injury Plaintiff contends is independent of the merits of the underlying state-court order, consistent with the Rooker-Feldman analysis in subsection 7 above, and none requires this Court to reverse or modify any state-court judgment. Plaintiff does not contend that more detailed allegations alone overcome judicial

immunity. Rather, these proposed amendments identify distinct acts, their record sources, asserted constitutional injuries, and potential remedies requiring individualized analysis. The Court should determine whether each alleged defect is legally curable under the applicable jurisdictional, functional-immunity, and remedial standards before concluding that amendment is futile.

**9. Persuasive Authority Confirms That Judicial Immunity Requires Act-Specific Analysis, Not Categorical Dismissal Based on Judicial Status.**

143. Persuasive authority confirms that judicial immunity turns on the challenged conduct, not judicial status alone. In *Lucarell v. McNair*, 453 F.2d 836 (6th Cir. 1972), the Sixth Circuit reversed dismissal of a § 1983 action against a juvenile-court referee where the complaint alleged incarceration beyond his statutory authority. In *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980), the Seventh Circuit reversed summary judgment, distinguishing the judge's protected adjudicative acts from his unprotected prosecutorial conduct arising from the same events. In *Palowsky v. Campbell*, 285 So. 3d 466 (La. 2019), the Louisiana Supreme Court reversed the dismissal of claims against judges, holding that allegations concerning their supervision and investigation of a law clerk implicated administrative rather than adjudicative functions. In *Harper v. Merckle*, 638 F.2d 848 (5th Cir. Unit B 1981), the Fifth Circuit held that a judge's personally motivated detention of an individual outside an invoked judicial proceeding was not protected by absolute judicial immunity; following trial, it reversed and remanded for a new trial because the jury's special interrogatories contained reversible error. Although factually distinct and persuasive rather than controlling, these decisions demonstrate that immunity must be determined by examining the particular function performed, rather than presuming that every act undertaken by a judicial officer is judicial.

144. These authorities demonstrate the materiality of Plaintiff's unfinished opposition. *Stump*, *Mireles*, *Forrester*, *Gallas*, and *Figueroa* require functional and jurisdictional analysis; § 1983, *Azubuko*, *Brandon E.*, and *Allen* govern prospective relief; *Dennis* distinguishes judicial immunity from private participants' liability; *Great Western* and controlling Third Circuit authority require identification of the actual source of injury; and *Foman*, *Grayson*, and *Phillips* govern amendment and futility. The constitutional-text authorities appear separately at paras 117–125. Plaintiff was entitled to present these materially distinct arguments before the Court imposed dismissal with prejudice, rather than have judicial immunity treated as dispositive without the required individualized analysis.

145. Plaintiff seeks reconsideration of the premature dismissal with prejudice — not automatic success on the underlying claims. She requests vacatur of ECF No. 114, acceptance of the opposition she was actively preparing during the authorized response period, any procedurally authorized reply, and adjudication of immunity, jurisdiction, pleading sufficiency, prospective relief, and Rooker-Feldman under the governing claim-, defendant-, act-, capacity-, and remedy-specific standards.

**10. The Requested Correction.**

146. Plaintiff requests vacatur of the premature dismissal with prejudice and restoration of adversarial briefing on ECF No. 110. Alternatively, if dismissal is maintained, Plaintiff requests findings identifying the challenged acts, governing immunity or pleading grounds, affected capacities and remedies, and whether the specific amendments identified in ¶142 would be futile. See Part V(B)–(D), (H).

## D. THE PREMATURE FEDERAL DISMISSAL COMPOUNDED A DOCUMENTED COURSE OF OBSTRUCTION, DISCRIMINATORY TREATMENT, DENIAL OF DUE PROCESS, AND INTERFERENCE ACROSS MULTIPLE FORUMS

147. Plaintiff DOES contend that the cumulative record reflects coordinated and discriminatory conduct by state and private actors that repeatedly obstructed her access to courts, evidence, notice, hearings, reunification, religious exercise, and investigation of her child's abuse. She does not ask this Court, on this reconsideration motion alone, to enter a final conspiracy finding against every actor or forum. She does insist that her pleaded theory be stated accurately: Plaintiff has alleged coordinated conduct, obstruction of justice and due process, religious discrimination, retaliation, stonewalling, concealment of material information, interference with parental rights, and procedural manipulation across Family Court, PFA proceedings, the Pennsylvania Supreme Court process, law-enforcement interactions, and this federal litigation.

148. ECF No. 108 already placed portions of this chronology on the federal docket. It states that on April 9, 2026, Plaintiff appeared at Family Court prepared to present a motion for immediate recusal and reassignment concerning Judge Kristiansson; the filing record states that a court officer refused to accept the motion and responded, 'I don't think so,' when Plaintiff stated that service on the judge was required.

149. ECF No. 108 further states that on June 18, after Plaintiff appeared at 1501 Arch Street and found the courthouse closed for a court holiday, she transmitted a 47-page facsimile to Judge Kristiansson's chambers and a 21-page facsimile to Administrative Judge Walter J. Olszewski's chambers; the fax cover requested confirmation, and Plaintiff received no acknowledgment.

150. ECF No. 108 states that on June 24 Plaintiff appeared to file a Petition for Contempt, Petition to Modify, and Motion for Recusal; staff at the Domestic Violence Unit filing window initially refused the documents; Plaintiff displayed the federal summons, referenced the June 18 facsimiles and federal action, and stated that she would seek King's Bench relief; after approximately fifteen minutes, staff accepted the documents. The filing bears a June 25 stamp, while Plaintiff preserved a June 24 parking receipt and the date discrepancy exactly as reflected in her state-court record.

151. ECF No. 108 also states that Plaintiff filed her King's Bench Application in the Supreme Court of Pennsylvania, Eastern District, No. 55 EM 2026, on June 25; the filed packet contained the federal summons identifying Judges McCabe and Kristiansson among the federal defendants; and the proof of service identified Michael Daley, Esq. as a recipient. Plaintiff later directly emailed Daley the federal summons, amended summons, federal pleadings, and service materials on July 22.

152. Plaintiff further states under penalty of perjury that on July 20 she mailed correspondence to the Pennsylvania Supreme Court's Office of the Prothonotary concerning newly obtained California body-worn-camera material and asking the proper procedure to supplement No. 55 EM 2026; postal records reflected delivery on July 23 before the Court's denial later that day; the Prothonotary subsequently acknowledged receipt and stated that no further action would be taken with respect to the letter; and the underlying letter did not appear on the public docket. Plaintiff does not contend that correspondence automatically constituted a properly filed supplemental application. She relies on the event as part of her repeated efforts to obtain a procedure for presenting material evidence.

153. Plaintiff further states that in September 2026 she attempted through PACFile to submit two applications in No. 55 EM 2026—one concerning discovery and one concerning enforcement of the PFA—and that both were returned or rejected as not being a recognized filing type. Plaintiff thereafter transmitted correspondence to the Deputy Prothonotary seeking procedural guidance.

154. This documented chronology bears directly on the prejudice caused by ECF Nos. 113 and 114. After repeated procedural barriers involving filing, notice, evidence, investigations, religious observance, and parental contact, Plaintiff provided advance notice of her religious-observance limitations, preserved her right to full merits briefing in ECF No. 108, and actively prepared her opposition to ECF No. 110. The Court nevertheless dismissed the Judicial Defendants with prejudice before expiration of the applicable response period, depriving Plaintiff of the opportunity to present her controlling authorities, record evidence, jurisdictional objections, individualized immunity arguments, and proposed amendments. ECF No. 117 further documented Plaintiff's efforts to prevent the procedural forfeiture she had expressly warned against. The resulting prejudice is concrete: the Court adjudicated dismissal with prejudice without considering the opposition Plaintiff was actively preparing.

155. The events described in ¶¶147–154 are presented as Plaintiff's allegations, testimony, and identified record materials, not as findings already made by this Court. Plaintiff relies on them to preserve claims of discriminatory treatment, obstruction, denial of due process, interference with court access, retaliation, and coordinated conduct, and the broader civil-rights context in which the premature ruling occurred, not to demand an immediate finding of conspiracy against every actor. The Court need not resolve every underlying merits allegation to correct ECF Nos. 113 and 114, but it should not erase those allegations by characterizing the case as a single custody-order dispute or by restricting the relevant record to ECF No. 21. The immediate requested relief remains

reconsideration of ECF Nos. 113 and 114, restoration of briefing on ECF No. 110, reinstatement of ECF No. 108, and decision of the Judicial Defendants' defenses on the complete record. Plaintiff identifies the foregoing as her own allegations and testimony, offered to preserve the record and for the Court's consideration on full briefing, not as facts already found or adjudicated by this Court. Where a document referenced above has not been independently authenticated in this proceeding, Plaintiff so notes and relies on it for preservation rather than as conceded fact.

## E. QUESTION THREE: THE COURT HAS AUTHORITY TO GRANT THE RELIEF REQUESTED, AND EACH ITEM OF RELIEF IS TIED TO A SPECIFIC ERROR

### 1. The Procedural Vehicle.

156. Rule 54(b) and Local Civil Rule 7.1(g) supply the primary vehicle because ECF No. 114 adjudicates fewer than all claims and parties and contains no Rule 54(b) determination. Part III above. Because prior orders have characterized Plaintiff's motions under rules she did not invoke, Plaintiff states the vehicle precisely.

157. ECF No. 107 expressly moved under Local Civil Rule 7.1(g) and Rule 54(b) for reconsideration of the Torrance interlocutory disposition. ECF No. 116 nevertheless described ECF No. 107 as a Rule 59(e) motion and applied the familiar reconsideration formulation while denying it.

158. ECF No. 100 and ECF No. 117 both expressly invoked Rule 6(b)(1)(A) for pre-deadline scheduling relief. ECF No. 101 confirms that defense counsel likewise understood ECF No. 100 to seek relief under Rule 6(b)(1)(A). ECF Nos. 105 and 118 nevertheless described the respective scheduling motions as brought under Rule 60(b). Plaintiff preserves the distinction because the scheduling motions were in fact Rule 6(b)(1)(A) motions. But that docketing or characterization

discrepancy does not make Rule 60(b) adverse to Plaintiff or unavailable in the present reconsideration posture.

159. Plaintiff does not seek to disturb the favorable extensions granted in ECF Nos. 105 and 118. Her primary procedural position remains that ECF Nos. 113 and 114 are interlocutory and revisable under Rule 54(b) and Local Civil Rule 7.1(g). Rule 60(b)(1), however, is preserved as an affirmative alternative source of relief if the Court treats the dismissal as final. The fact that ECF Nos. 105 and 118 used Rule 60(b) terminology does not convert the earlier scheduling motions into Rule 60 motions, but it also underscores why the present motion should carefully distinguish Rule 6 scheduling relief from Rule 60 post-judgment relief.

**2. Alternatively, If the Court Treats ECF Nos. 113 and 114 as Final for Rule 60 Purposes, the Same Record Supports Relief Under Rule 60(b)(1).**

160. The Rule 60(b)(1) analysis that follows is expressly conditional. Plaintiff maintains that Rule 54(b) and Local Civil Rule 7.1(g) govern reconsideration of the interlocutory disposition, as explained in Part III and  156–159. She invokes Rule 60(b)(1) only in the alternative if the Court treats the disposition as final for purposes of Rule 60.

161. In Kemp v. United States, 596 U.S. 528 (2022), the Supreme Court held that 'mistake' under Rule 60(b)(1) includes a judge's errors of law. The premature adjudication before expiration of the opposition period, any mistaken assumption that ECF No. 108 supplied the later opposition, and any legal error resulting from application of an incorrect procedural framework are therefore cognizable under Rule 60(b)(1) if Rule 60 applies. Plaintiff also preserves 'surprise' under Rule 60(b)(1), but NOT on a false assertion of nonreceipt. Plaintiff corrects the record: she did receive the mailed ECF No. 110 papers. The surprise and prejudice arose because the Court signed ECF

No. 113 only four days after ECF No. 110 was filed and entered the dismissal while the opposition period remained open, while Plaintiff had a substantive opposition in active preparation and was actively filing ECF No. 117 to protect the same response right. Plaintiff therefore relies on the premature adjudication and the unexpected termination of the briefing process—not nonreceipt—as the relevant Rule 60(b)(1) surprise and mistake.

162. Plaintiff does not rely on Rule 60(b)(4) as a primary ground. A judgment is not void merely because it contains legal error, and Rule 60(b)(4) is narrow. Plaintiff therefore preserves any due-process argument without overstating that every premature order is automatically void.

**3. Records Access: The Transcripts and Records the Act-by-Act Analysis Requires.**

163. Plaintiff has sought the transcripts and records of the dependency and PFA proceedings since 2025, and she asked this Court to compel their production in the filing she submitted on May 1, 2026. ECF No. 21 at 1. The record of those efforts is specific. On June 18, 2025, she requested transcripts of the dependency proceedings at Docket No. CP-51-DP-0000923-2024 from the First Judicial District's transcripts office; on June 20, 2025, the office responded that it "would need the exact dates of the hearings," which Plaintiff did not have because she did not possess a complete copy of her own Family Court record. Ex. B; Decl. ¶11. Plaintiff's June 28, 2026 follow-up to that office, asking whether the hearing dates could be identified from her name and case number, appears in the same exhibit, and the thread reflects no response to it. Ex. B; Decl. ¶11. On June 17, 2026, she requested complete dependency and PFA records, docket histories, and transcripts; the message to one of the three addresses she used, the domestic-relations public-access address, was returned as undeliverable. Ex. C; Decl. ¶12.

164. On June 18, 2026, the Department of Public Access responded, as to the dependency records only, that the request "cannot be fulfilled without leave of court as dependency cases are presumed confidential and closed"; that, as a party, Plaintiff could review the record in person at 1501 Arch Street, but that "[n]o recordings, photographs or copies are permitted"; and that obtaining a copy required a motion accompanied by a $42.68 filing fee or an in forma pauperis petition. Ex. C. Plaintiff wrote again on June 28, 2026, identifying the federal and state proceedings for which the records were needed. Id. Plaintiff states these responses precisely: the 2025 response asked for hearing dates rather than refusing the request, and the 2026 response offered in-person inspection without copies and described a motion-and-fee procedure for copies, rather than refusing all access. No response addressing the PFA records appears in that correspondence. Plaintiff's September 2026 PACFile submissions in No. 55 EM 2026 were returned as not a recognized filing type. Decl. ¶14.

165. Those records matter to this Memorandum for a reason Plaintiff can state precisely. Plaintiff can and does describe from personal knowledge the acts she experienced. Decl. ¶15, 18-21. The transcripts and records are needed for what she could not observe or does not possess: the stated basis for assigning substitute counsel, Patricia Cochran, after Plaintiff discharged her then-counsel, William Rice, and without asking whether Plaintiff wanted a different attorney or wanted to proceed *pro se* (Judge McCabe, act (d); Decl. ¶19); the record of the proceeding at which she states she was threatened with contempt (act (b)) and of the May 21, 2025 hearing (acts (a) and (c)); the April 30, 2025 petition, its service record, and the process preceding the May 1, 2025 amendment (Judge Kristiansson, act (a)); the docket and service-list history showing how the Guardian ad Litem came to be designated and listed as Plaintiff's "counsel" (acts (b) and (d)); and the notices,

continuance or cancellation entries, and requests underlying the rescheduling Plaintiff describes (act (e)). Part IV.C.2A above.

166. Plaintiff acknowledges the procedural constraints on this request rather than ignoring them. Discovery is stayed "until the Court decides the pending motions to dismiss in this case." ECF No. 115 at 1. Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except as the Rules, a stipulation, or a court order permits. Fed. R. Civ. P. 26(d)(1). Plaintiff does not ask this Court, within this reconsideration motion, to modify ECF No. 115 or to authorize a Rule 45 subpoena to the dependency- and PFA-record custodians; that relief, if sought, belongs in a separate, properly noticed motion directed to ECF No. 115 itself, where the record custodians' confidentiality interests and the stay's own purpose can be addressed on their own terms. Plaintiff raises the records only to identify what the act-by-act analysis in Part IV.C presently lacks and why, and she asks instead for leave to supplement her opposition to ECF No. 110 within thirty days after she obtains those records, by whatever lawful means, including a future motion she expressly reserves the right to file. Plaintiff does not ask this Court to direct any state court to change any ruling, and she does not seek the records to relitigate any state-court judgment. She identifies them to show what the premature ruling prevented the record from including, not to convert this reconsideration motion into a discovery proceeding.

**4. Leave to Amend in the Alternative.**

167. If the Court adheres to dismissal as to any claim or Defendant, Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and Plaintiff has identified the specific amendment she would make, its sources, and the relief each proposed

allegation could support. Part IV.C.8 above. A with-prejudice disposition should not stand as to that amendment absent an express, claim-specific futility determination addressed to it.

**5. Appellate Preservation.**

168. Plaintiff also preserves the appellate significance of the immunity ruling. *Dotzel v. Ashbridge,* 438 F.3d 320, 324-25 (3d Cir. 2006), confirms that immunity determinations presenting legal questions are reviewed de novo when appellate jurisdiction is proper. Plaintiff preserves Dotzel only for the standard of review and for any later appeal from a properly reviewable judgment or certified order.

169. Two distinct standards of review are implicated, and Plaintiff identifies both to avoid any ambiguity. This Court's ruling on the Motion for Reconsideration is generally reviewed for abuse of discretion, while underlying legal determinations remain subject to the applicable independent standard of review. *See Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) (district court's denial of reconsideration reviewed for abuse of discretion); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (same deferential standard for denial of relief under Rule 60(b)). That deferential standard does not lower the standard applicable to legal questions embedded within ECF Nos. 113 and 114 that this Memorandum asks the Court to reconsider—including the scope of absolute judicial immunity, the finality or non-finality of a disposition as to fewer than all claims or parties, and the construction of governing statutes and rules—each of which, when properly before an appellate court, is reviewed de novo. See *Dotzel*, 438 F.3d at 324–25.

170. Plaintiff also preserves, without asking this Court to depart from binding precedent, her position that absolute judicial immunity from damages is a non-statutory, judicially created doctrine that conflicts with the text, history, and remedial purpose of 42 U.S.C. § 1983, whose text

contains no immunity from damages for judicial officers. Plaintiff recognizes that this Court is bound by Stump and Mireles, see *Rodriguez de Quijas*, 490 U.S. at 484, and she presents the argument only to preserve it for review by a court with authority to reconsider that precedent. The constitutional framework in Part IV.C.4 above is presented on the same basis: it supports, and does not displace, the controlling immunity test. The specific objections preserved under Rule 46 are identified in Part IV.A.6 above.

**6. Effect on Appellate Deadlines and the Pending Third Circuit Appeal.**

171. This Memorandum does not affect, toll, or substitute for any deadline in Plaintiff's separate, already-pending appeal, No. 26-2463 (3d Cir.), which concerns different orders than ECF Nos. 113 and 114 and proceeds independently of this Memorandum.

172. Plaintiff's primary position is that ECF Nos. 113 and 114 are interlocutory because they adjudicate fewer than all claims and parties without the certification required by Rule 54(b). Accordingly, Plaintiff does not presently treat them as final judgments triggering the ordinary time to appeal under Federal Rule of Appellate Procedure 4(a). If a final appealable judgment is properly entered and a Rule 60 motion seeking relief from that judgment is filed within the time allowed for a motion under Rule 59, Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) governs the resulting appellate deadline. Rule 59(e) provides a twenty-eight-day period for a motion to alter or amend a judgment. A qualifying timely Rule 60 motion causes the appeal period to run from entry of the order disposing of the last remaining motion covered by Rule 4(a)(4)(A). Plaintiff does not concede that ECF Nos. 113 and 114 are final or that appellate jurisdiction presently exists. The Court's description of an otherwise interlocutory order does not itself create appellate finality.

173. If this Memorandum is denied, Plaintiff's next procedural step depends on the legal effect and appealability of the Court's ruling. If ECF Nos. 113 and 114 remain interlocutory, Plaintiff may consider seeking certification for interlocutory appeal under 28 U.S.C. § 1292(b), if the statutory requirements are satisfied, or preserve the issues for ordinary appellate review following entry of a final, appealable judgment. Plaintiff also preserves any other appellate review mechanism legally available under the governing jurisdictional requirements. If a final and appealable judgment is entered, Plaintiff may seek review through a timely notice of appeal under Fed. R. App. P. 4(a)(1)(A), subject to the applicable triggering events and computation rules. Plaintiff does not seek § 1292(b) certification in this Memorandum and identifies these alternatives to preserve the procedural distinction between interlocutory reconsideration, discretionary interlocutory review, and appeal from a final judgment.

## V. CONCLUSION AND RELIEF REQUESTED

Consistent with the non-waiver statement set out at the outset of this Memorandum, nothing in this Conclusion or the relief requested below waives any claim, right, or remedy preserved there.

Plaintiff requests the following relief without waiving, and expressly preserving, any right, claim, or argument not granted by this Memorandum:

A. **GRANT** reconsideration and reargument of ECF Nos. 113 and 114 under Local Civil Rule 7.1(g) and Rule 54(b); this request is necessary because ECF Nos. 113 and 114 are interlocutory orders this Court retains authority to revise, as established in Part III above, and is timely pursuant to the extension expressly granted in ECF No. 126, extending the filing deadline to October 14, 2026, at 11:59 p.m., as addressed in Part III, ¶32.

B. **VACATE** ECF Nos. 113 and 114 to the extent they granted ECF No. 110, dismissed Judges McCabe and Kristiansson with prejudice, and denied ECF No. 108 as moot; This request is necessary because both orders were entered before Plaintiff's opposition period on ECF No. 110 expired, Part IV.A above, because they rested on an unresolved pleading premise, Part IV.B above, and because the dismissal rested on an undifferentiated treatment of each Judicial Defendant's acts that Part IV.C's act-by-act analysis shows was not performed.

C. **RESTORE** Judges McCabe and Kristiansson to the active case posture pending full briefing and decision on ECF No. 110; This request is available as the direct consequence of vacatur in paragraph B above, and necessary so that the function-, jurisdiction-, and capacity-specific analysis Part IV.C identifies as missing can actually occur before either Judicial Defendant is dismissed with prejudice.

D. **RESTORE** ECF No. 110 to the active motion docket and permit Plaintiff to file her opposition within seven (7) days after entry of the Court's order, with the opposition deemed timely; This request is necessary because Plaintiff's opposition period had not expired when the Court ruled, Part IV.A above, and available because Rule 54(b) and Local Civil Rule 7.1(g) authorize reopening an interlocutory motion to the briefing stage it never properly left.

E. **PERMIT** Defendants to file any reply consistent with Judge Kenney's current Policies and Procedures and any further order of the Court, and decide ECF No. 110 only after adversarial briefing is complete; This request is necessary to restore the ordinary adversarial sequence Local Civil Rule 7.1(c) reserves to both sides, and available as part of the same briefing reopened in paragraph D above.

F. **REINSTATE** ECF No. 108 for disposition of its independent service, Rule 4(m), Rule 55, preservation, and notice issues rather than treating the entire filing as moot; This request is necessary and available separately from paragraphs B through E because ECF No. 108 addressed issues distinct from ECF No. 110; it was filed six days before ECF No. 110 existed and could not have been an opposition to it, Part IV.A.4(a) above, so restoring ECF No. 110 to active briefing does not, by itself, restore ECF No. 108's own independent issues; those require their own disposition on their own record.

G. **GRANT** Plaintiff leave to supplement her opposition to ECF No. 110 within thirty (30) days after she obtains, by whatever lawful means including a separate motion she expressly reserves the right to file, the specific dependency-proceeding and PFA-proceeding transcripts, audio, docket histories, and service records identified in Part IV.E.3 above, which Plaintiff has sought through her June 18, 2025 transcript request to the First Judicial District, Docket No. CP-51-DP-0000923-2024, her June 17, 2026 request for complete dependency and PFA records, docket histories, and transcripts, her June 28, 2026 follow-up, and her September 2026 PACFile submissions in No. 55 EM 2026, and which remain unfulfilled to date; this item does not seek, and should not be construed to seek, any modification of ECF No. 115 or any order directed to the record custodians, each of which Plaintiff reserves for a separate, properly noticed motion if she pursues them; This request is necessary because the act-by-act, function-, and jurisdiction-specific analysis Part IV.C requires, and any concrete amendment under Part IV.C.8, cannot be fully supported without the underlying hearing transcripts and case records that would show what notice was given, what findings were made, and what opportunity to be heard Plaintiff actually received at each challenged proceeding; this request is confined to leave to supplement because modifying the existing discovery stay, ECF No. 115, or compelling nonparty custodians under Rule 45 raises

confidentiality and comity questions distinct from the error this Memorandum asks the Court to correct, and is better addressed, if at all, on a record and briefing schedule of its own, Part IV.E.3 above, Decl. ¶11-14.

H. **ALTERNATIVELY**, if the Court adheres to dismissal of any claim against either Judicial Defendant, MODIFY the disposition to permit amendment as to the concrete allegations identified in Part IV.C.8, to the extent amendment is legally available, or expressly identify why each proposed amendment would be inequitable or futile under Rule 15(a)(2) and the applicable substantive law. Plaintiff requests assessment of the specific allegations, challenged acts, capacities, and remedies, including applicable judicial-immunity and prospective-relief limitations. Plaintiff does not contend that additional allegations alone defeat absolute judicial immunity or that amendment is necessarily viable. See Foman v. Davis, 371 U.S. 178, 182 (1962); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002); Phillips v. County of Allegheny, 515 F.3d 224, 245–46 (3d Cir. 2008).

I. **CLARIFY** that this Memorandum is analyzed under Rule 54(b) and Local Civil Rule 7.1(g), with Rule 60(b)(1) invoked only in the alternative if the Court determines the challenged disposition is final for Rule 60 purposes; and This request is necessary because which rule governs depends on the finality and docket-status determination Part III above makes, consistent with the Introduction's statement of that dependency in Part I above.

J. **GRANT** such other and further relief as justice requires, while preserving all appellate and substantive rights not expressly adjudicated.

ECF No. 110 was decided before Plaintiff's opposition period expired, notwithstanding Plaintiff's prior express preservation of later merits briefing, her advance religious-observance

notice, and the fact that her substantive opposition was in active preparation, to be filed immediately after ECF No. 117. Plaintiff intentionally filed ECF No. 117 first to address the broader extension issue affecting ECF Nos. 110 and 111 and intended to file the ECF No. 110 opposition immediately afterward. During that filing process, when ECF No. 110 was unavailable in the CM/ECF related-event selection list, she discovered that the Court had already granted ECF No. 110 and dismissed both Judicial Defendants with prejudice. The resulting prejudice is concrete and readily curable. Plaintiff respectfully asks the Court to restore the briefing sequence, receive the opposition in active preparation displaced by the premature ruling, and then adjudicate ECF No. 110 on a complete adversarial record.

The relief requested here asks the Court to perform the judicial function Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177-78 (1803), describes: to determine the governing law on a complete record, rather than allowing a procedural truncation to substitute for that determination.

Plaintiff submits this Memorandum without waiving her claims for compensatory and punitive damages, her individual-capacity and official-capacity claims against every Defendant, her claims against private co-conspirators, her right to pursue criminal referrals through the appropriate authorities, or any remedy under 42 U.S.C. §§ 1983, 1985(3), and 1986, the Constitution, or applicable state law.

For all of these reasons, Plaintiff respectfully requests that the Court grant reconsideration and reargument and enter the relief requested above. ALL RIGHTS RESERVED WITHOUT PREJUDICE.

Respectfully submitted,

/s/ Galina M. Novakhova

Plaintiff, *Pro se*
P.O. Box 17635
Philadelphia, PA 19135
GalinaMN@gmail.com

All Rights Reserved Without Prejudice

Date: October 14, 2026