**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GALINA M. NOVAKHOVA,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ANJELIQUE J. BONILLA, et al.,**<br>***Defendants*** | **CASE NO. 2:26-CV-0585-CFK** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TOWNSHIP OF EDISON'S MOTION TO DISMISS (ECF NO. 93)**

**GALINA M. NOVAKHOVA**

**Plaintiff, *Pro Se***

**P.O. BOX 17635**

**PHILADELPHIA, PA 19135**

**GalinaMN@gmail.com**

**November 20, 2026**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... **1**

**STATEMENT OF FACTS** .......... **4**

*A. The Removal, the Sexual Assault, and Why the PFA Was Sought.* .......... *6*

*B. April 22, 2025: Edison Officers Refuse to Enforce the PFA, Before the Later May 21 Custody Disposition.* .......... *7*

*C. July 2025: Edison Refuses the Complaint; Plaintiff Reports California-Location Confirmation.* .......... *15*

*D. Notice to Edison Before Mr. Holmgren's Appearance.* .......... *17*

*E. Actual Injuries and Economic Consequences Attributable to Edison's Conduct* .......... *18*

**ARGUMENT** .......... **19**

I. PLAINTIFF PRESERVES PRIMARY SERVICE AND ECF NO. 78 POSITIONS; RULE 4(M) RELIEF IS ALTERNATIVE. .......... 19

*A. ECF No. 20 and the Constructive-Filing Qualification Under McDowell.* .......... *20*

*B. Plaintiff's Service Chronology and the Alternative Rule 4(m) Extension.* .......... *22*

*C. Edison's Reliance on a Court-Filing Stamp Does Not Establish Its Claimed May 26, 2026 Service-Receipt Date.* .......... *25*

*D. Edison's Prior Extension Request Must Be Accurately Distinguished from Jurisdictional Waiver.* .......... *26*

*E. Edison's Separate Rule 4(j) Manner-of-Service Argument Must Be Read Together with Its Conditions.* .......... *27*

II. EDISON'S OWN PENNSYLVANIA CONTACTS AND THE SUIT-RELATED COMMUNICATIONS REQUIRE DEFENDANT-SPECIFIC ANALYSIS. .......... 31

*A. The Full Long-Arm Statute Reaches the Constitutional Limit and Requires Defendant-Created Contacts.* .......... *31*

*B. The Enumerated Long-Arm Provisions Remain Subject to Constitutional Minimum Contacts* .......... *32*

*C. Edison Misquotes the Case Name of Its Own Controlling Authority* .......... *34*

*D. Edison Cannot Borrow Torrance's California-Specific Jurisdictional Defenses by Incorporation.* .......... *35*

*E. Edison's Pennsylvania-Directed Communications Require a Claim-Specific Jurisdictional Determination.* .......... *36*

*F. The Child's Protective Status, Pennsylvania Agency Communications, and Threshold Questions Requiring Particularized Discovery.* ... *43*

III. PLAINTIFF HAS PLED A VIABLE § 1983 MONELL CLAIM AGAINST EDISON, AND THE RECORDS REQUESTED IN ECF NO. 94 GO DIRECTLY TO PLAINTIFF'S § 1983 CLAIM. ... 46

*A. This Is Not a Castle Rock Non-Enforcement Claim.* ... *46*

NEW JERSEY'S CONSTITUTIONAL AND STATUTORY PROTECTIONS FOR CRIME VICTIMS AND WITNESSES ... 58

*B. Edison's Township Code Identifies the Municipal Police Policymaking Authority Relevant to Monell Liability.* ... *64*

*C. The Targeted Requests in ECF No. 94 and the Later Stay.* ... *71*

*D. Edison's Own Footnote Cites a Case That Does Not Hold What Edison Says It Holds.* *72*

IV. PLAINTIFF'S §§ 1985 AND 1986 CLAIMS ARE NOT DEFEATED BY EDISON'S MOTION. ... 74

*A. Edison Acknowledges Protected-Class Membership but Disputes Discriminatory Purpose.* ... *74*

*B. Knowledge, Participation, and Agreement Are Different Showings, and Edison's Conduct Satisfies More Than Mere Knowledge.* ... *74*

V. YOUNGER ABSTENTION DOES NOT APPLY. ... 83

VI. THE PROPOSED ORDER (ECF NO. 93-2) IMPROPERLY SEEKS ONE DISPOSITION FOR FOUR DIFFERENT GROUNDS. ... 85

VII. PLAINTIFF'S PRO SE STATUS REQUIRES LIBERAL CONSTRUCTION OF HER FILINGS — IT DOES NOT EXCUSE EDISON'S COUNSEL FROM ACCURATE ONES... 85

VIII. EDISON'S DOCUMENTED RECORD-CITATION ERRORS MUST BE EVALUATED AGAINST THE COURT'S ACTUAL DOCKET AND SERVICE EVIDENCE. 86

IX. PLAINTIFF'S STATED INJURIES, CAUSATION, AND LEGALLY AVAILABLE REMEDIES UNDER FEDERAL RULES OF CIVIL PROCEDURE 8(A)(3) AND 54(C). ... 87

**CONCLUSION ... 91**

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998) .......... 52, 75
*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) .......... 85
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 86
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 86
*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298 (3d Cir. 2004) .......... 83
*Bolden v. Southeastern Pennsylvania Transportation Authority*, 21 F.3d 29 (3d Cir. 1994) .......... 90
*Boley v. Kaymark*, 123 F.3d 756 (3d Cir. 1997) .......... 23
*Borowski v. Kean University*, 68 F.4th 844 (3d Cir. 2023) .......... 83, 84
*Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006) .......... 19, 47, 50, 53, 55, 57, 61
*Burella v. City of Philadelphia*, 501 F.3d 134 (3d Cir. 2007) .......... 19, 46, 51, 53, 54, 55, 61, 75
*Calder v. Jones*, 465 U.S. 783 (1984) .......... 38
*Carey v. Piphus*, 435 U.S. 247 (1978) .......... 89
*Citibank, N.A. v. Russo*, 334 N.J. Super. 346 (App. Div. 2000) .......... 29
*City of Canton v. Harris*, 489 U.S. 378 (1989) .......... 67, 70
*Clark v. Clabaugh*, 20 F.3d 1290 (3d Cir. 1994) .......... 74, 77, 82
*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) .......... 48
*Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) .......... 5
*Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123 (3d Cir. 1997) .......... 62
*Cruz v. City of Newark*, No. 2:25-cv-04554 (D.N.J. Apr. 20, 2026) .......... 28
*Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124 (3d Cir. 2020) .......... 45, 93
*Davis v. Samuels*, 962 F.3d 105 (3d Cir. 2020) .......... 23
*Deakins v. Monaghan*, 484 U.S. 193 (1988) .......... 85
*Dennis v. Sparks*, 449 U.S. 24 (1980) .......... 75
*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 3, 85
*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) .......... 68, 69
*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147 (3d Cir. 2010) .......... 43
*Farber v. City of Paterson*, 440 F.3d 131 (3d Cir. 2006) .......... 74, 76, 77, 81
*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) .......... 33, 36, 38
*Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019) .......... 68, 69

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) .................... 63
*Glover v. FDIC*, 698 F.3d 139 (3d Cir. 2012) .................... 79, 83
*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) .................... 94
*Gonzaga University v. Doe*, 536 U.S. 273 (2002) .................... 60
*Grayson v. Mayview State Hospital*, 293 F.3d 103 (3d Cir. 2002) .................... 5, 93
*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ...... 76
*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .................... 74, 76, 77, 81
*Haines v. Kerner*, 404 U.S. 519 (1972) .................... 3, 85
*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017) .................... 83
*Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024) .................... 38, 39
*Heffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999) .................... 81
*Hightower v. City of Philadelphia*, 130 F.4th 352 (3d Cir. 2025) .................... 69
*Horton v. Flenory*, 889 F.2d 454 (3d Cir. 1989) .................... 51
*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) .................... 37
*In re Texas Eastern Transmission Corp.*, 15 F.3d 1230 (3d Cir. 1994) .................... 26
*Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) .................... 53
*Kirby v. Borough of Woodcliff Lake*, No. 2:20-cv-01670, Doc. 75 (D.N.J. Dec. 14, 2021) ......... 59
*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) .................... 50, 52
*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010) .................... 80, 83
*L.R. v. School District of Philadelphia*, 836 F.3d 235 (3d Cir. 2016) .................... 52
*Lazaridis v. Wehmer*, 591 F.3d 666 (3d Cir. 2010) .................... 83
*Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239 (3d Cir. 2013) .................... 3, 86
*Malhan v. Secretary United States Department of State*, 938 F.3d 453 (3d Cir. 2019) .............. 84
*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) .................... 64
*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) .................... 34, 35, 39
*McCurdy v. American Board of Plastic Surgery*, 157 F.3d 191 (3d Cir. 1998) .................... 24
*McDaniels v. New Jersey Division of Youth & Family Services*, 144 F. App'x 213 (3d Cir. 2005) .................... 83
*McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir. 1996) .................... 2, 20, 78
*Medina v. Planned Parenthood South Atlantic*, No. 23-1275 (U.S. June 26, 2025) .................... 60
*Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217 (3d Cir. 1992) .................... 39, 40
*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) .................... 42
*Miller v. City of Philadelphia*, 162 F.4th 88 (3d Cir. 2025) .................... 70

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ...................................... 65, 67, 90
*Moore v. Sims*, 442 U.S. 415 (1979)................................................................................. 83
*Moore v. Walton*, 96 F.4th 616 (3d Cir. 2024) ............................................................. 21, 80, 83
*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) (en banc)........................................................ 60
*National Shooting Sports Foundation v. Attorney General of New Jersey*, No. 25-2546 (3d Cir. Sept. 8, 2026)................................................................................................................ 84
*Nicini v. Morra*, 212 F.3d 798 (3d Cir. 2000) (en banc)............................................................. 63
*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) ............................ 31, 34, 37, 39
*Okin v. Village of Cornwall-on-Hudson Police Department*, 577 F.3d 415 (2d Cir. 2009)......... 53
*Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876 (3d Cir. 1991)......................... 64
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).................................................................. 65
*Petrucelli v. Bohringer & Ratzinger, GmbH*, 46 F.3d 1298 (3d Cir. 1995) ... 20, 21, 22, 26, 30, 92
*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).................................. 52, 53, 61, 62
*Poluhovich v. Pellerano*, 373 N.J. Super. 319 (App. Div. 2004) ................................................ 72
*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ..................................................................... 37
*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) ................................................................................ 79
*Rush v. Savchuk*, 444 U.S. 320 (1980).................................................................................. 35, 36
*Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010) ................................................ 66
*Santosky v. Kramer*, 455 U.S. 745 (1982) ................................................................................... 62
*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) ................................................. 42
*Smith v. Wade*, 461 U.S. 30 (1983)............................................................................................. 90
*Spence v. Board of Education of Christina School District*, 806 F.2d 1198 (3d Cir. 1986)......... 90
*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)................................................. 83, 84
*State v. Lavrik*, 472 N.J. Super. 192 (App. Div. 2022)........................................................... 58, 59
*Touray v. Middlesex County*, 139 F. App'x 428 (3d Cir. 2005).................................................. 29
*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)..................................................... 46, 54, 75
*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)................. 38, 40, 41, 42, 45, 92
*U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505 (E.D. Pa. 2010) ................................ 25
*Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451 (3d Cir. 1996)......................................... 22
*Walden v. Fiore*, 571 U.S. 277 (2014)............................................... 32, 33, 34, 35, 36, 38, 39, 45
*Walter v. Pike County*, 544 F.3d 182 (3d Cir. 2008) ................................................................... 60
*Ye v. United States*, 484 F.3d 634 (3d Cir. 2007) ........................................................................ 60
*Younger v. Harris*, 401 U.S. 37 (1971)............................................................................ 83, 85, 91

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........ 81

## CONSTITUTIONAL PROVISIONS

N.J. Const. art. I, paragraph 22 (Victims' Rights Amendment) ........ 58
U.S. Const. amend. I (Free Exercise Clause) ........ 63, 74
U.S. Const. amend. IV ........ 89
U.S. Const. amend. XIV (Due Process Clause) ........ 32, 39, 45, 46, 60, 62, 64
U.S. Const. art. IV, § 1 (Full Faith and Credit Clause) ........ 57
U.S. Const. art. VI, cl. 2 (Supremacy Clause) ........ 57

## FEDERAL AND STATE STATUTES

18 U.S.C. § 2265(a), (b), (d)(2) ........ 1, 13, 33, 47, 50, 55, 57, 58, 60, 61, 72, 73, 77
28 U.S.C. § 1331 ........ 93
28 U.S.C. § 1391(b)(2) ........ 93
28 U.S.C. § 1406(a) ........ 93
28 U.S.C. § 1631 ........ 93
42 Pa. Cons. Stat. § 5301 ........ 31
42 Pa. Cons. Stat. § 5322(a)–(c) ........ 2, 31, 32, 45
42 U.S.C. § 1983 ........ 3, 46, 48, 57, 59, 60, 64, 75, 89, 95
42 U.S.C. § 1985(3) ........ 3, 59, 64, 74, 75, 76, 77, 81, 95
42 U.S.C. § 1986 ........ 3, 59, 74, 77, 78, 79, 82, 93, 95
N.J. Stat. Ann. § 40A:14-118 ........ 65, 66
N.J. Stat. Ann. § 52:17B-97 et seq. ........ 54
N.J. Stat. Ann. § 52:4B-36(r) ........ 59
N.J. Stat. Ann. § 52:4B-44 ........ 54
N.J. Stat. Ann. §§ 52:4B-35 to -36 ........ 58
N.J.S.A. § 2A:34-85 ........ 72
N.J.S.A. § 2C:25-31 ........ 73

## FEDERAL AND STATE PROCEDURAL RULES

Fed. R. Civ. P. 10 ........ 5, 79
Fed. R. Civ. P. 11 ........ 86
Fed. R. Civ. P. 12 ........ 4, 26, 29, 64, 72, 77, 85, 87, 92

Fed. R. Civ. P. 15 .......... 4, 5, 22, 68, 77, 78, 83, 93
Fed. R. Civ. P. 21 .......... 93
Fed. R. Civ. P. 26 .......... 42, 71
Fed. R. Civ. P. 34 .......... 71
Fed. R. Civ. P. 4 .......... 2, 21, 22, 26, 27, 28, 29, 30, 31, 85, 91
Fed. R. Civ. P. 54 .......... 42, 87
Fed. R. Civ. P. 55 .......... 91
Fed. R. Civ. P. 6 .......... 22
Fed. R. Civ. P. 7 .......... 42
Fed. R. Civ. P. 8 .......... 87
N.J. Ct. R. 4:4-1 .......... 27
N.J. Ct. R. 4:4-4(a)(8), (c) .......... 26, 27, 28, 29
Pa. R.C.P. No. 1930.4 .......... 61

**OTHER AUTHORITIES**

Edison Township Code § 2-27.1 (Ord. No. O.1865-2014) .......... 65, 66
Edison Township Code § 2-28.4 (Ord. No. O.1865-2014) .......... 66
Edison Township Code § 2-28.5 (Ord. No. O.1865-2014) .......... 66
N.J. Attorney General, Guidelines for Enforcement of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases, § II.A (1996; rev. 2000) .......... 14, 55, 56, 57, 69
**N.J. Attorney General, Standards to Ensure the Rights of Crime Victims, pt. I, § III.A (Apr. 1993)** .......... 54, 56, 69
N.J. Courts, Domestic Violence Procedures Manual (2022) .......... 60, 67, 69, 77

## PRELIMINARY STATEMENT

On April 22, 2025, during an active emergency involving her minor daughter, a child who had fled a Pennsylvania placement after being sexually assaulted there and whom Plaintiff had sheltered with family in New Jersey, Plaintiff informed responding Edison Township police officers at Alla Izrailova's Edison residence of her Pennsylvania Final Protection From Abuse Order, and, after the officers directed her away, physically presented that order to Supervisor Esposito at the Edison police station that same evening. The order was enforceable in New Jersey under 18 U.S.C. § 2265 and by the notice printed on its own first page. The officers did not merely decline to make an arrest. Plaintiff states that the officers communicated with Anjelique Bonilla, the very person the order restrained, treated Bonilla's representations about the child as authoritative over the mother's objections, directed Plaintiff away from the residence, and told her the Pennsylvania order was not valid in New Jersey, a statement contradicted by the face of the order, by New Jersey's own Attorney General Guidelines, and by federal law. None of the orders in this record (the PFA, the Pennsylvania custody then in effect, or the later May 21, 2025 disposition) conferred any custodial or legal authority over A.N. on Bonilla; she was the one participant those orders excluded. Siding with her was an affirmative exercise of governmental authority that increased an identified danger, not a discretionary non-enforcement decision, and the Third Circuit treats the two differently. *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996); *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006); *cf. Burella v. City of Philadelphia*, 501 F.3d 134 (3d Cir. 2007). Edison's motion depends on recasting that encounter as a custody retrieval under an order that did not yet exist, on a service computation that ignores this Court's own April 22, 2026 Order, and on a jurisdictional argument borrowed from a California defendant. Each ground fails for the reasons set out below.

Plaintiff Galina M. Novakhova, proceeding pro se, opposes the Motion to Dismiss (ECF No. 93) and Memorandum of Law (ECF No. 93-1) filed by Defendant Township of Edison (Edison), which ECF No. 93-2 describes as incorrectly identified as the Edison Township Police Department, and requests that the motion be denied. Edison seeks dismissal with prejudice on a service-timeliness calculation that does not address ECF No. 20 at 3 n.4 or the constructive-filing doctrine recognized in *McDowell*; a jurisdictional argument that must confront the full constitutional reach and limits of 42 Pa. C.S. § 5322(b); a disputed characterization of Plaintiff's contacts with Edison; and an imprecise account of the Township's own docket activity. The specific record discrepancies are identified below and their legal significance is assessed individually.

At ECF No. 93-1 at 15, Edison calculates the Rule 4(m) service period from January 28, 2026 without discussing ECF No. 20 at 3 n.4, in which this Court stated that Plaintiff's complaint had not yet been filed because the fee remained unpaid. Plaintiff relies on *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996), and contends that ECF No. 20 does not foreclose constructive filing. At ECF No. 93-1 at 16, counsel states that the Township had filed no prior motion, but that same discussion acknowledges its request for more time: ECF No. 85 was filed August 27, 2026, and granted by ECF No. 86. The extension request did not, by itself, waive a personal-jurisdiction defense. Separately, ECF No. 93-1 at 15 cites ECF No. 1 as the original complaint, although ECF No. 13 at 1 identifies it as the IFP application. Finally, ECF No. 93-1 at 5 describes the absence of relevant Edison contacts while pages 9–10 acknowledge Plaintiff's request for Edison police assistance. Plaintiff requests that the Court evaluate these propositions against the actual docket and the legal significance of each filing.

Plaintiff's August 26, 2026 correspondence invoked professional obligations concerning discovery and treatment of opposing parties. ECF No. 94-2 at page 4 records Plaintiff's description of Mr. Holmgren's publicly available writing; it does not independently establish the contents or authorship of the publication. Plaintiff requests accurate treatment of her filings and the Court's orders, and professional treatment of a self-represented litigant. Her specific objections are the documentary discrepancies identified below, whose legal significance must be assessed individually. The phrase 'no relevant contact' must be read in the context of Edison's jurisdictional argument; acknowledgment of a police encounter in New Jersey is not an admission of constitutionally sufficient Pennsylvania contacts.

Plaintiff is proceeding without counsel. Her pleadings are entitled to liberal construction under *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and that principle applies with equal force to this opposition. Liberal construction does not excuse a represented municipal defendant from accurately describing this Court's own orders, its own prior filings, or the complaint it is moving to dismiss. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (pro se litigants must still comply with procedural rules). That limit runs against Plaintiff's own filings, not against her account of what Edison did. Nothing in this opposition waives, and Plaintiff expressly preserves, her claims for compensatory damages and for punitive damages against defendants and in capacities for which the law permits them; her individual-capacity and official-capacity claims against all Defendants; her claims against private co-conspirators; her ability to submit supported information to appropriate criminal authorities; and every remedy available under 42 U.S.C. §§ 1983, 1985, and 1986 and state law.

## STATEMENT OF FACTS

The following account distinguishes Plaintiff's pleaded allegations, sworn statements, documentary materials, and additional firsthand accounts identified in this memorandum. A statement's appearance on the docket establishes what Plaintiff submitted, not an independent finding that the event occurred. References to ECF No. 93-1 use CM/ECF page numbers unless a printed brief page is expressly identified. Plaintiff disputes Edison's characterization of her account and identifies the sources and unresolved factual questions below.

A note on citation: this opposition cites ECF No. 21 by docket number only. The document's own title page reads ***"Verified Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction."*** The CM/ECF docket text instead labels this entry "Amended Complaint," a characterization Plaintiff disputed in ECF No. 44. Rule 15(a)(1) can permit amendment as a matter of course without a motion, consent, or advance order, so the absence of those steps alone does not establish that the characterization was unauthorized. Plaintiff raised this discrepancy in ECF No. 44; the Court denied that motion at ECF No. 49, stating only that "the clerical errors raised by Plaintiff are not material to any of the issues in this case and do not impact any of the Court's rulings" — the Court did not hold that the docket label is accurate, only that correcting it would not change any ruling. Plaintiff preserves her title-and-characterization objection, but the present motion must be addressed consistently with the Court's operative-pleading directions and the actual contents of ECF No. 21; a title dispute alone does not defeat Edison's motion.

A second note on citation: this opposition cites records beyond ECF No. 21 itself — principally ECF Nos. 17, 40, 64-2, 78, and 94 — for two independent and permissible purposes. First, as to personal jurisdiction, a Rule 12(b)(2) motion is not confined to the four corners of the

pleading; the Court may consider affidavits and other record evidence in resolving jurisdictional facts, and an executed declaration or authenticated exhibit may supply such evidence; an unsworn brief or discovery request does not become competent jurisdictional evidence merely because it is docketed. Second, these filings are part of this Court's own docket in this action, of which the Court may take judicial notice for the fact and content of what was filed and when, independent of whether their factual assertions have been formally incorporated into ECF No. 21 under Rule 10(c). This opposition does not contend that citing these filings amends the operative pleading; it identifies each source according to its actual character and does not characterize every cited filing as sworn testimony — and distinguishes record fact from pleaded allegation throughout.

Plaintiff preserves her previously stated objection to the characterization of ECF No. 21 as an amended complaint, including the concerns presented in ECF No. 44. Plaintiff acknowledges that this Court's August 27, 2026 Order, ECF No. 86, expressly directed Edison to respond to the document identified by the Court as Plaintiff's Amended Complaint (ECF No. 21). Plaintiff's preservation of that procedural objection does not require the Court to disregard its own existing order. The verified complaint and petition filed January 29, 2026, as ECF No. 8, and the later ECF No. 21 must be evaluated according to their actual filed contents, the Court's procedural orders, and the applicable requirements of Rule 15. Plaintiff relies on additional filings to establish their actual docket status and, where legally permissible, competent jurisdictional evidence—not as a substitute for allegations required in the operative pleading. Plaintiff does not concede any pleading deficiency; to the extent the Court identifies one, she requests an opportunity to seek amendment pursuant to Rule 15(a)(2). See *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108, 111 (3d Cir. 2002).

## A. The Removal, the Sexual Assault, and Why the PFA Was Sought.

On October 18, 2024, Philadelphia DHS, CUA3/El Concilio, and police removed Plaintiff's daughter, A.N., from Plaintiff's custody without a warrant and without a pre-deprivation hearing. ECF No. 17, page 2. Two responding Philadelphia police officers found no danger before DHS supervisor Charles Furman ordered the removal by telephone based on allegations by Anjelique J. Bonilla that DHS itself classified “unfounded” on November 14, 2024. ECF No. 17, pages 2, 12, 24. A.N. was not returned.

ECF No. 17-1 at page 1 records ChildLine's receipt of Referral No. 20370021 on February 22, 2025, at 2:32:48 a.m. ECF No. 17 refers to a 6:10 a.m. receipt time for Referral No. 20370042, but the exhibit independently establishing the latter referral's date has not been identified in the presently available materials. ECF No. 17-2 at page 1 is ChildLine's July 7, 2025 production letter, not the second referral. Plaintiff therefore distinguishes the documented receipt of Referral No. 20370021, the separately reported time for Referral No. 20370042, and her subsequent receipt of the records. She does not represent that the precise interval between the assault and both referrals is independently established by those exhibits.

For these reasons, among others, Plaintiff obtained Pennsylvania Final Protection From Abuse Order No. 2503-V-7369 against Anjelique Bonilla, A.N.'s adult half-sister. PFA No. 2503-V-7369, Final Order, printed pages 1–3 (Mar. 31, 2025). Bonilla is the person whom Plaintiff's minor child later identified, together with Jose A. Tripp, as having been on the telephone with DHS supervisor Charles Furman during the October 18, 2024 removal, as Plaintiff stated in her previously filed sworn account. ECF No. 17 at 13, 24. Plaintiff sought the PFA in connection with Bonilla’s role in the removal, her continuing concerns about danger to A.N. and her custodial rights, Bonilla’s endangerment and enticement of the child and threats, and her reported prior

physical abuse of Plaintiff. Plaintiff's March 25, 2025 petition states that Bonilla threatened, by message, that when she "comes to New Jersey she will f#$k everybody up," prompting Plaintiff to file Philadelphia Police report DC No. 25-15-024454 from the 15th District, and separately states that Bonilla had previously hit Plaintiff, punched Plaintiff, and pulled Plaintiff's hair. The March 31, 2025 Final Protection From Abuse Order is a protective order against Anjelique Bonilla, not an adjudication transferring or determining custody of A.N. Its express terms state: "TEMPORARY CUSTODY WAS NOT ADDRESSED IN THIS ORDER." PFA No. 2503-V-7369, Final Order, printed page 3. Edison cannot properly recast that protective order as a custody determination. Its factual-background disclaimer expressly states that it does not concede the truth of Plaintiff's allegations. ECF No. 93-1 at page 4 n.2. That reservation does not change the legal character or express terms of the PFA order.

The orders in this record establish that on April 22, 2025, none of them conferred custodial, guardianship, or other legal authority over A.N. on Anjelique Bonilla. The PFA restrained her; the temporary custody then in effect ran to Philadelphia DHS, not to her; and the later May 21, 2025 disposition placed temporary legal custody with Alla Izrailova, not with Bonilla. Whatever the responding officers believed about Plaintiff's own custodial status, the person whose instructions A.N. was attempting to follow, and whose representations the officers allegedly credited, was the one participant those orders excluded.

**B. April 22, 2025: Edison Officers Refuse to Enforce the PFA, Before the Later May 21 Custody Disposition.**

Edison characterizes Plaintiff's claim as concerning a failure "to assist her in retrieving her child" from someone to whom a Pennsylvania judge had awarded custody. ECF No. 93-1 at page 3. That characterization does not accurately describe the April 22, 2025 encounter. The May 21,

2025 temporary-custody disposition identified in ECF No. 17 at 26 occurred twenty-nine days later. Edison's memorandum does not distinguish Plaintiff's earlier request for enforcement of an existing Protection From Abuse Order from events arising after that custody disposition. Plaintiff challenges the effort to portray this earlier PFA-enforcement encounter as enforcement of a not-yet-entered May 21 order. Plaintiff was at her mother Alla Izrailova's Edison, New Jersey residence addressing an active, developing situation involving A.N.'s attempt to leave the residence — **a child who had been sexually assaulted two months earlier, on February 22, 2025, while in the state's own custody, and who had left that state-arranged placement because she feared continued abuse there, and whom Plaintiff had placed in temporary shelter with family in New Jersey, as described below** — while Bonilla maintained prohibited contact with A.N., a person identified as protected under the March 31, 2025 PFA, and communicated with Izrailova concerning A.N.'s attempted departure. PFA No. 2503-V-7369 (Final Order), at 3–4.

Plaintiff has also described A.N.'s status during the April 22, 2025 emergency as "AWOL" from Pennsylvania state-arranged placement. Plaintiff attributes the child's departure to her fear of continued abuse following the February 22, 2025 sexual assault and to reported actions by state actors to place her in another foster home. That description concerns A.N.'s physical absence from the state-arranged placement; it does not establish that legal custody had passed to Bonilla or that the later May 21, 2025 custody disposition was already in effect. Plaintiff separately states that she arranged temporary shelter for A.N. with family in New Jersey and that Alla Izrailova subsequently brought A.N. to her Edison residence. Those events must remain distinct when evaluating the April 22 police response, the child's immediate safety, and the legal authority of the persons involved.

The April 22, 2025 encounter must be distinguished from both A.N.'s earlier departure from Pennsylvania state-arranged placement and her subsequent transportation to California. Plaintiff states that, following the February 22, 2025 sexual assault while in DHS/CUA-arranged custody, A.N. fled the placement because she feared being harmed again. To protect her daughter from further exposure to the danger she had reported while awaiting court proceedings, Plaintiff arranged for A.N. to stay temporarily with Plaintiff's cousin in New Jersey. This was Plaintiff's own protective arrangement, not a placement directed or arranged by Pennsylvania DHS/CUA or authorized by the later May 21 custody disposition.

While Plaintiff was out of state for Passover, her cousin contacted Plaintiff and her mother, Alla Izrailova, and requested that Izrailova come for A.N. because of conduct that Anjelique Bonilla and the court-appointed Guardian ad Litem, who had visited the cousin's home, were encouraging A.N. to undertake, as Plaintiff's cousin stated directly to Plaintiff. Izrailova subsequently brought A.N. to her Edison, New Jersey residence, where the April 22 emergency developed. Plaintiff was attempting to keep her daughter away from the placement in which she feared further harm while preventing Bonilla's continuing interference. A.N.'s physical presence in New Jersey preceded the May 21, 2025 temporary-custody disposition, and her May 28, 2025 transportation to California occurred still later. Edison therefore cannot accurately characterize the April encounter as an attempt to enforce the later custody disposition without addressing the existing PFA, A.N.'s reported danger, and the distinct circumstances of her temporary presence in New Jersey. See ECF No. 93-1 at 1, 4.

Before arriving at her mother's Edison residence, Plaintiff initially appeared at the Edison Police Department while maintaining telephone contact with Alla Izrailova, who was at the residence with A.N. Plaintiff states that A.N. was attempting to leave the residence under

instructions attributed to Anjelique Bonilla, the individual restrained by Pennsylvania PFA No. 2503-V-7369. Izrailova urgently requested police intervention and repeatedly urged that officers be sent to the residence without delay. Plaintiff subsequently proceeded to the residence after Edison officers had been dispatched or arrived. Plaintiff states that Supervisor Esposito and Officer Shammy were aware that she had proceeded to the residence.

At Alla Izrailova's residence, Plaintiff personally encountered responding Edison police officers who were communicating with Anjelique Bonilla, although Bonilla was not physically present. Plaintiff states that Bonilla had continued communicating with A.N. and Izrailova, and that A.N. was attempting to leave the residence under instructions attributed to Bonilla. Plaintiff expressly informed the officers of the existing Pennsylvania PFA, its restrictions on direct and indirect contact, and the danger associated with Bonilla's continued involvement. Plaintiff further explained that A.N. had been sexually assaulted while in state-arranged placement, had fled because she feared further harm, and was temporarily staying in New Jersey under the protective arrangement Plaintiff had made pending court proceedings. Plaintiff objected to the officers' communications with Bonilla and identified her as the person restrained by the order. One female and one male officer responded to the residence; Plaintiff does not presently recall their names and does not identify them as Supervisor Esposito or Officer Shammy. Plaintiff cannot state from personal knowledge whether their body-worn cameras were activated; she assumes they were, and discovery is needed to establish that.

Notwithstanding those warnings, Plaintiff alleges that the responding officers accepted or acted upon Bonilla's disputed representations as though she possessed parental authority over A.N., treated Plaintiff as the wrongdoer, and directed Plaintiff to stay away from the residence and seek assistance at the Edison police station, where she had already requested intervention. Plaintiff

personally heard a voice she recognized as Bonilla's over Edison police radio communications during the encounter outside the residence and over the phone at the Izrailova residence. Plaintiff does not purport to know the complete contents of those communications. Her allegation is that the officers' affirmative treatment of Bonilla's representations and their directions to Plaintiff interfered with Plaintiff's immediate efforts to prevent further contact and protect her minor daughter during an active emergency.

These allegations identify specific affirmative interactions by responding officers with the restrained individual, distinct from the separate allegation that officers refused to recognize the Pennsylvania PFA. The April 22 station and residence encounters and the corresponding communications are among the records identified in Plaintiff's discovery requests. ECF No. 94 at 5, 12–15. Plaintiff previously described Edison's refusal to recognize the order in ECF No. 28-1 at 21. The additional observations stated here are Plaintiff's firsthand factual allegations, not representations that the contents of the requested recordings have already been established.

Plaintiff informed the officers at the residence of the Pennsylvania PFA and, as they had directed, returned to the Edison police station that same evening and presented the order. Edison officers told Plaintiff that an out-of-state protection order was not valid in New Jersey. Plaintiff subsequently recorded the alleged statement in her July 16, 2025 formal written complaint to Edison Police that she hand delivered to Esposito, approximately twelve weeks after April 22: "I showed the PFA order; Edison officers refused to enforce it, stating falsely that out-of-state PFAs were not valid in New Jersey." That statement was false as a matter of law. See Section III below. Plaintiff also recorded her account in a separately maintained July 21, 2025 personal chronology, not presently filed as an exhibit: "April 22, 2025: Anjelique Bonilla overheard on Edison PD radio. PFA enforcement denied" — a Pennsylvania-restrained person audible on Edison's own radio or

dispatch communications while Edison officers were declining to enforce the Pennsylvania order against her. This April 22 encounter concerned enforcement of the PFA, not enforcement of the later May 21 temporary-custody order. There was a protection order, a sexually assaulted minor child who had fled a state-arranged placement, and a restrained person in contact with or audible to the officers Edison sent to respond. Plaintiff went directly to the Philadelphia Police Department's 15th District that same evening, on April 22 into April 23, 2025, where Detective Boyle recorded Plaintiff's statement reporting the violations, and Plaintiff sought enforcement of the PFA.

The consequences of Edison's conduct were immediate and personal. Plaintiff states that she presented an active Pennsylvania Protection From Abuse Order and sought police intervention in circumstances involving her minor daughter, who had recently suffered sexual assault while in state-arranged placement. Rather than receive the requested protective assistance, Plaintiff states that Edison officers informed her that her Pennsylvania protection order could not be enforced in New Jersey. Plaintiff was therefore compelled to seek assistance from another police department that same evening. This required additional travel, time, and effort while her concerns for her daughter's safety remained unresolved. Plaintiff states that Edison's response interfered with her efforts to obtain protection at a critical moment and compounded the distress associated with her inability to safeguard her daughter.

On April 22, 2025, Plaintiff presented the Pennsylvania Protection From Abuse Order at a police station and asked for enforcement. Plaintiff states that Supervisor Esposito told her the order was not valid in New Jersey. Plaintiff told him the order is a court-signed order. Plaintiff states that he pointed to struck-through preprinted wording on the first page of the PFA and said that, for all he knew, Plaintiff could have crossed it out herself. Plaintiff explained that the court had struck

the child's name after the order was printed in order to protect the minor's identity, that the designation "child of Plaintiff" remained, and that the following page expressly identified "child of Plaintiff" among the protected persons; she directed him to those operative provisions. Plaintiff also read 18 U.S.C. § 2265 aloud, explaining that a qualifying Pennsylvania protection order is enforceable in New Jersey, and told him that he could confirm the order with the Philadelphia Police Department. Supervisor Esposito stated that he was going to call the Philadelphia Police Department and asked Plaintiff for the telephone number of the Department's 15th District. He then spent a long time on the telephone; Plaintiff cannot state with precision how long. Plaintiff states that he then said nothing could be done. Plaintiff seeks the body-worn-camera, station, telephone, and related records identified in ECF No. 94 to determine what portions of that exchange were recorded, retained, or otherwise documented. Plaintiff further reports that the Guardian ad Litem subsequently participated in obtaining or causing an amendment to the PFA right after this incident; the signed amendment, its date, terms, and the responsible judicial actor control its legal effect. Plaintiff reported both the Edison and Philadelphia police responses to a court officer the following day. According to Plaintiff, that officer informed her that the protection order was to be enforced notwithstanding the crossed-out wording and discussed the issuance of a warrant. This paragraph states Plaintiff's firsthand account of the conversation, not a finding by a court that an arrest warrant was required or issued.

Edison's false statement is not a matter of opinion. The PFA order itself, on its first page, prints the following notice for the benefit of exactly the officers who responded on April 22, 2025: *"This order is enforceable in all fifty (50) States, the District of Columbia, Tribal Lands, U.S. Territories, and the Commonwealth of Puerto Rico under the Violence Against Women Act, 18 U.S.C. §2265."* PFA No. 2503-V-7369 (Final Order), page 1. Edison officers were not merely

wrong about a background legal principle; they contradicted language printed on the face of the very document Plaintiff handed them.

Edison's own State has told its own officers exactly how to handle an out-of-state order they find unfamiliar or irregular. The New Jersey Attorney General's *Guidelines for the Enforcement of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases* (issued April 1996, revised September 2000) instruct that such an order "should be presumed valid when presented to an officer," that **the officer's primary responsibility is the victim's safety** and only secondarily verifying the order. Guidelines § II.A, at 2. The Guidelines identify three considerations for facial validity: whether the order names the correct parties, remains unexpired, and whether the restrained party appeared at the hearing or had notice of it. The March 31 Final PFA and the Los Angeles County Sheriff's March 26, 2025 affidavit establish documentary support for the order's validity and Bonilla's notice; whether Plaintiff communicated that notice to the officer is a separate factual question that the documents alone do not resolve. Guidelines § II.A.2.b; PFA No. 2503-V-7369, Final Order, printed pages 1–2; Sheriff's Affidavit of Service (Mar. 26, 2025). The Guidelines also instruct officers to inquire about apparent defects rather than automatically reject an out-of-state order. *Id.* § II.A.2.d. Plaintiff states that the officer questioned the struck-through wording on the first page of the PFA. Plaintiff explained that the Final Order separately identified "child of Plaintiff" among the protected persons on its following page. Rather than treating the order's express protective provisions as controlling or resolving the apparent discrepancy, Plaintiff states that the officer continued to question the order's enforceability in New Jersey.

The full scope of Edison's April 22, 2025 conduct is not confined to that date. Plaintiff states that Supervisor Esposito and Officer Shammy told her, during the July 20–21, 2025

encounter described in Section C below, that Edison's Computer-Aided Dispatch system consolidates all department contacts concerning Plaintiff and A.N. — including the April 22, 2025 contact — under a single CAD record, CAD No. 25042401. If accurate, that record is not limited to the July encounter Edison has described to this Court; it is Edison's own institutional account of the entire chain of contacts with Plaintiff and her daughter, which is precisely why Plaintiff has demanded its complete production, including all linked event numbers, supplements, and audit history. See Section III.C below.

**C. July 2025: Edison Refuses the Complaint; Plaintiff Reports California-Location Confirmation.**

On the evening of July 20th and into the 21st, 2025, Plaintiff returned to the Edison Police Department to file a formal complaint. Plaintiff states that Supervisor Esposito and Officer Shammy refused to properly document her complaint. During the encounter, Plaintiff states that Supervisor Esposito forcibly took her personal papers directly from her hand, without her consent and despite her expressly telling him he could not have them. The papers contained legal materials Plaintiff had prepared for her own reference, including laws she was reading and explaining to the officers. Plaintiff states that Esposito took the papers when he went to telephone the Philadelphia Police Department and subsequently returned them to her. The taking of those papers is distinct from the officers' separate refusal to properly document her complaint. CAD No. 25042401 was generated. Supervisor Esposito and Officer Shammy told Plaintiff that the April 22 and July 2025 Edison contacts were consolidated under this CAD number. Plaintiff states that in July 2025, when she asked Supervisor Esposito and Officer Shammy whether their body-worn cameras were on, they told her that they were, and Supervisor Esposito answered yes. ECF No. 94, pages 5, 13–14. The discovery Plaintiff requested in ECF No. 94 — whose production remains outstanding

following the Court's denial of ECF No. 94 as premature and the subsequent discovery stay entered at ECF No. 115 — specifically sought the body-worn-camera media, dispatch and telephone audio, CAD and RMS records, and supervisory review from that encounter. ECF No. 94, pages 13–14.

Plaintiff did not return to the station unannounced. She had already put her account in writing. Her July 15–16, 2025 written complaint to the Edison Police Department, which her filed discovery request identifies and asks Edison to account for, including its receipt, routing, review, and disposition, ECF No. 94-1 at 2, 10, recorded: "I showed the PFA order; Edison officers refused to enforce it, stating falsely that out-of-state PFAs were not valid in New Jersey." When she returned on the night of July 20–21 to pursue that complaint, she was met by the same supervisor. She left without a properly documented complaint, after her papers had been taken from her hand over her objection. The harm of that night is not only the taking. It is that the Township, having received her written account, answered it with a second refusal by the officer whose conduct the complaint described.

ECF No. 17 alleges a Pennsylvania-to-New Jersey transfer on or about May 21, 2025 and a New Jersey-to-California transfer on or about May 28, 2025, to the residence associated with Anjelique Bonilla and Jose A. Tripp. ECF No. 17 at 17, 26. Plaintiff separately describes A.N.'s presence in Edison during the April 22 encounter. Those accounts cannot be reconciled by treating the May 21 custody disposition as independent proof of the child's first physical arrival in New Jersey. The May 21 Order for Termination of Court Supervision, at printed page 1, terminates supervision, discharges DHS temporary custody, grants temporary custody to Alla Izrailova. It does not record the date of physical transportation. That order and Plaintiff's travel account must be distinguished; this memorandum does not invent an intervening return trip or another transfer. Plaintiff's declaration reports that she learned of the California transportation through her own EZ-

Pass statement placing Izrailova's tag at Newark Airport NJ parking fee, questions to her mother, subsequent contact with A.N., and a requested Edison confirmation. ECF No. 17 at 26. The statement that Edison 'did confirm' is Plaintiff's sworn account, not an independent police admission or proof of what an identified officer verified. Plaintiff alleges that the reported information placed Edison on notice of concerns involving Bonilla and the Pennsylvania PFA and seeks the underlying records. The April 22 presence, the May 21 legal-custody disposition, and the asserted later interstate travel are distinct events; the presently identified order cannot independently establish each physical travel date.

**D. Notice to Edison Before Mr. Holmgren's Appearance.**

Plaintiff provided Edison and the attorney identified to her by the Township Clerk's Office as Township Counsel with written notice of this litigation before Mr. Holmgren entered his appearance. On July 20, 2026, at approximately 1:02 p.m., Plaintiff telephoned the Edison Township Clerk's Office and spoke with Jessica, who, according to Plaintiff's contemporaneous written account, confirmed receipt of the certified restricted delivery-mail package and stated that the documents had been forwarded to Township Counsel, Louis Rainone, Esquire. ECF No. 64-2 at 2. Later that same day, at 4:10 p.m., Plaintiff emailed the Clerk's Office directly, copying Mr. Rainone at his firm address, and attaching litigation and service materials. ECF No. 64-2 at 1. Mr. Holmgren did not enter his appearance until July 29, 2026 — nine days later. ECF No. 59. Edison's memorandum acknowledges that Plaintiff sent the service package by certified mail on May 14, 2026, and that the Township received it on May 26, 2026, with a signature on the return-receipt record. ECF No. 93-1 at 15–16. Edison disputes the legal sufficiency of that method but does not address Plaintiff's documented July 20 account of the Clerk's telephone confirmation and forwarding of the documents, or her same-day email copied to the attorney the Clerk's Office

identified as Township Counsel. Plaintiff does not contend that actual notice alone resolves every requirement of Rule 4. She contends that Edison's arguments concerning service must account for the documented receipt, the return-receipt signature, the Clerk's oral confirmation, and Plaintiff's written efforts to provide notice, rather than address only the method of delivery in isolation.

**E. Actual Injuries and Economic Consequences Attributable to Edison's Conduct.**

Plaintiff's claimed injuries from Edison's conduct are not limited to the refusal to enforce a protection order, additional travel expenses, or emotional distress. Plaintiff alleges that responding officers affirmatively communicated with Anjelique Bonilla, treated her disputed representations concerning A.N. as authoritative, and directed Plaintiff away from her mother's residence despite Plaintiff's objections, the existing PFA, and the immediate danger she reported. At that time, A.N. had fled Pennsylvania DHS/CUA-arranged placement because she feared further harm following her February 22, 2025 sexual assault, and Plaintiff had arranged temporary shelter with her cousin in New Jersey pending court proceedings. Plaintiff contends that those decisions undermined the temporary protective arrangement she established for A.N. in New Jersey, increased her daughter's exposure to Bonilla's continuing interference, and impaired Plaintiff's efforts to protect her. Plaintiff further alleges that the interference continued before A.N.'s subsequent transportation to California on May 28, 2025. Plaintiff does not attribute the earlier removal or sexual assault to Edison, nor does she allege that Edison officers physically transported A.N. to California. Her allegation is that Edison's affirmative conduct contributed to the continuation of an identified danger and interfered with Plaintiff's own constitutionally protected interests. Separately, during the July 20–21, 2025 encounter, Plaintiff states that Supervisor Esposito forcibly took her personal legal papers directly from her hand without consent and despite her express objection, before returning them. Plaintiff also alleges resulting distress, transportation expenses, lost time, lost

earning opportunities, and other economic consequences, subject to proof. These injuries must be assessed under the applicable constitutional, causation, and municipal-liability requirements, rather than treating expenses or distress alone as establishing a federal violation. See *Bright v. Westmoreland County*, 443 F.3d 276, 281–84 (3d Cir. 2006); *Burella v. City of Philadelphia*, 501 F.3d 134, 146–48 (3d Cir. 2007).

The record anchors these consequences. After being sent away from the residence and the station on April 22, Plaintiff drove to the Philadelphia Police Department's 15th District that same night, into April 23, where Detective Boyle recorded her statement reporting the violations. ECF No. 28-1 at 21. Plaintiff's sworn declaration describes the resulting stress, trauma, grief, weight loss, physical distress, and financial hardship, the denial of access to A.N.'s medical records and follow-up care, and A.N.'s educational and religious losses. ECF No. 17 at 25 at 9; *id.* at 27 at 13–14. Section IX sets out which of those consequences Plaintiff attributes to Edison and which she does not.

## ARGUMENT

### I. PLAINTIFF PRESERVES PRIMARY SERVICE AND ECF NO. 78 POSITIONS; RULE 4(m) RELIEF IS ALTERNATIVE.

Plaintiff's primary position is that her May 14, 2026 certified-mail mailing to the Edison Township Clerk, the documented receipt and subsequent notice to Township counsel, and the Township's litigation activity support a finding of sufficient service under the applicable rules. Plaintiff preserves her position concerning timeliness, including the effect of the Court's April 22, 2026 Order and the governing filing-date authorities. The discrepancy between ECF No. 29-2's enclosure list and Plaintiff's firsthand account of the actual contents is expressly addressed in subsection B; it is not concealed or resolved by assumption. Plaintiff separately maintains her

August 26, 2026 Rule 55(a) request at ECF No. 78, while recognizing that proper service, a legally effective response deadline, the significance of Edison's July 29 appearance and August 27 extension request, and whether Edison otherwise defended must be determined under the governing rules. Neither ECF No. 78 nor this opposition represents that a default has been entered. Plaintiff further acknowledges ECF No. 86 and Edison's subsequent filing of ECF No. 93, without abandoning her previously asserted Rule 55(a) position. Only in the alternative, and without conceding any service objection or abandoning ECF No. 78, does Plaintiff seek additional service time under Rule 4(m) and *Petrucelli*.

**A. ECF No. 20 and the Constructive-Filing Qualification Under *McDowell*.**

In evaluating the primary service position and the alternative Rule 4(m) request, the Court must consider both this Court's April 22, 2026 Order and the Third Circuit's constructive-filing doctrine. ECF No. 20 at 3 n.4 expressly stated that Plaintiff's complaint had not yet been filed because the required filing fee remained unpaid. Edison's computation asks the Court to hold Plaintiff to a filing date that the Court's own April 22, 2026 Order said had not yet occurred. Plaintiff complied with the Court's direction by paying the filing fee on May 1, 2026, ECF No. 23, after which the Clerk issued Edison's summons, ECF No. 24. Plaintiff sent a certified-mail service package to the Edison Township Clerk on May 14, 2026, documented by her contemporaneous sworn certificate, ECF No. 29-2 at 1–3, and the postal materials at ECF Nos. 31 and 31-1. Plaintiff states that the package included the summons (ECF No. 24), the emergency motion (ECF No. 3), and the Verified Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 21); the differing contemporaneous itemization is addressed below. McDowell *v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996), addresses constructive filing upon subsequent satisfaction of the fee requirement, including relation to the

date a pleading was originally received by the clerk. Plaintiff therefore does not assert that the April 22 Order necessarily forecloses every constructive-filing argument. The relevant consideration is that Plaintiff followed the specific procedural direction provided by this Court, paid the required fee, obtained the resulting summons, and promptly attempted service.

Even if the Court determines that the Rule 4(m) period must be calculated from the January 28, 2026 receipt of the complaint, dismissal does not follow automatically. Rule 4(m) establishes a distinct alternative to dismissal: the Court must extend the service period upon a showing of good cause and retains discretion to extend that period even in the absence of good cause. *Petrucelli v. Bohringer & Ratzinger, GmbH*, 46 F.3d 1298, 1305–06 (3d Cir. 1995). The majority in *Petrucelli* rejected good cause on that record and remanded for consideration of discretion under the amended rule; Judge Becker's more favorable reliance analysis was a separate concurrence and dissent, not the majority holding. Limitations consequences may inform discretion but do not compel extension. Plaintiff requests that the Court evaluate her reliance upon ECF No. 20, timely compliance with its fee directive, issuance of the summons, prompt May 14 mailing, subsequent notice to the Township, and the nature of any identified prejudice under that two-stage analysis. Plaintiff alternatively requests a specified period for any additional service the Court finds necessary, rather than dismissal with prejudice based solely on the disputed filing-date calculation.

The good-cause and discretionary branches also have different potential consequences under Rule 15(c). *Moore v. Walton*, 96 F.4th 616, 623–27 (3d Cir. 2024), holds that a mandatory extension actually granted for good cause under Rule 4(m) is incorporated into Rule 15(c)(1)(C)'s notice period. *Moore* did not decide that a purely discretionary extension without good cause necessarily has that effect. Plaintiff therefore requests a good-cause determination first and an independent discretionary determination if needed; she does not claim the Court has already found

good cause or extended the service period. This distinction matters only if the original pleading, the party-identification rules, and the actual notice record satisfy the other Rule 15(c) requirements.

**B. Plaintiff's Service Chronology and the Alternative Rule 4(m) Extension.**

If May 1, 2026 is the governing trigger, Rule 6(a) excludes that day and the ninetieth day is Thursday, July 30, 2026; no weekend or federal-holiday adjustment changes that date. This is a conditional computation, not a determination that the fee-payment date displaces constructive filing. Plaintiff mailed a certified-mail service package addressed to the Edison Township Clerk on May 14, 2026, more than two months before that date. ECF No. 29-2 at 1–3; ECF Nos. 31 and 31-1. The May 20 certificate lists ECF Nos. 22, 23 and 24; Plaintiff states from personal knowledge that the actual May 14 package also contained the summons (ECF No. 24), the emergency motion (ECF No. 3), and the Verified Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 21). The court docket identifies ECF No. 23 as the May 1 filing-fee receipt, not a second TRO motion. Accordingly, the description of ECF No. 23 in the contemporaneous certificate is inaccurate; Plaintiff preserves that original certificate and identifies the discrepancy rather than silently altering it. See also ECF No. 64-2 at 2 (Plaintiff's later service account); ECF No. 78 at 2, 5 (request and sworn declaration). Whether this mailed service complied with Rule 4(j)(2) is addressed separately below. *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451 (3d Cir. 1996), addressed notice and relation back under Rule 15(c) in the IFP-screening setting; it does not itself mandate an extension under Rule 4(m). The alternative service-time relief sought here rests principally on *Petrucelli v. Bohringer & Ratzinger, GmbH*, 46 F.3d 1298, 1305–06 (3d Cir. 1995): an extension is mandatory upon good cause and remains available in the Court's discretion even without good cause. Plaintiff requests that alternative rather than dismissal with prejudice on an unresolved service question.

ECF No. 78 is a separate request for Clerk's entry of default under Rule 55(a), not an existing default judgment and not a substitute for proof of proper service. Plaintiff's position is that Edison failed to respond within the legally applicable time following her May 14 mailing and the notice recorded in ECF Nos. 29-2, 31, 31-1, and 64-2. She filed ECF No. 78 on August 26, 2026. Edison's counsel had entered an appearance on July 29, 2026 (ECF No. 59), and the Township filed an extension request on August 27 (ECF No. 85), which the Court granted at ECF No. 86; Edison subsequently filed ECF No. 93. An appearance, an extension, and a motion to dismiss do not have identical procedural effects, and none should be inaccurately backdated. Plaintiff requests a distinct ruling on ECF No. 78 that addresses lawful service, the operative response date, and whether the Township had failed to plead or otherwise defend when the request was presented. Preservation of this default position does not concede the Rule 12 defenses, nor does it establish automatic entitlement to default.

An additional admission in Edison's own docketed correspondence supplies independent evidence of actual receipt. On August 27, 2026, counsel stated: "This office received the Complaint from the Township and filed an appearance on July 29, 2026, and has been researching Plaintiff's claims to prepare a response." ECF No. 85 at 1. The same letter acknowledged that Plaintiff had filed a request for entry of default, ECF No. 78. **This is counsel's representation that his office obtained the complaint from the Township by that time**; it is not an admission that a summons was served through an authorized person or manner, nor does it identify the Township's original date of receipt. Its proper bearing is on actual notice, diligence, potential prejudice, and the Rule 4(m) alternative, alongside the complete mailing and appearance record.

The Third Circuit's decisions in *Boley v. Kaymark*, 123 F.3d 756, 758–60 (3d Cir. 1997), and *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020), independently support Plaintiff's

alternative request under Federal Rule of Civil Procedure 4(m). *Boley* requires two separate determinations: whether good cause mandates an extension and, if not, whether the Court should exercise its discretion to extend time even without good cause. Although *Boley* accepted that good cause was absent, it vacated the dismissal because the discretionary determination rested on an erroneous assessment of prejudice. Actual notice weighs against prejudice, and the loss of a limitations defense does not, standing alone, establish the impairment of the ability to defend that prejudice requires. *Id.* at 759. *Davis* reaffirmed that two-step inquiry and vacated a service-related dismissal where the court failed to consider further service efforts and the defendants' own request for additional response time. 962 F.3d at 116.

Applied here, Plaintiff's documented May 14, 2026 mailing, her payment of the filing fee and the issuance of the summons, ECF Nos. 23, 24, Edison's actual receipt of the Complaint as reflected in ECF No. 85, counsel's July 29, 2026 appearance, and the Township's later request for additional time are circumstances that Rule 4(m) requires the Court to weigh individually. Plaintiff does not substitute actual notice for legally sufficient service under Rule 4(j)(2), and she does not assert that counsel's appearance automatically waived a preserved service objection. The Court retains discretion to deny an extension after applying the correct standards. *McCurdy v. American Board of Plastic Surgery*, 157 F.3d 191, 196–97 (3d Cir. 1998). Plaintiff submits that corrective service within a specified period is the appropriate alternative to dismissal where the record shows substantial efforts to give notice, actual receipt of the Complaint, and identifiable steps capable of curing any remaining defect. This request is independent of Plaintiff's primary service position and preserves her separate request at ECF No. 78 for determination under Rule 55(a).

The later default briefing must also be distinguished by defendant and request. ECF No. 77 sought entry of default against the Defender Association and Theo Ciccarelli Cornetta, and their

September 9 opposition, ECF No. 97, responds on the docket to ECF No. 77, not to Edison's separate ECF No. 78. Edison's September 9 letter (ECF No. 98 at 1) purports to adopt the Codefendants' opposition and identifies two theories applicable to Edison: allegedly defective service, as argued in ECF No. 93, and the existence of a pending Rule 12 motion. The rules and facts for service upon the Defender defendants do not themselves establish compliant or defective service upon Edison Township under Rule 4(j)(2). The Court must separately determine the effect of Edison counsel's July 29 appearance, the August 26 filing of ECF No. 78, the August 27 request and order (ECF Nos. 85–86), and the September 8 motion (ECF No. 93), under Rule 55(a)'s "otherwise defend" standard and the governing service requirements. Plaintiff preserves ECF No. 78 without asserting that the later appearance or motion is legally irrelevant or that default was previously entered.

### C. Edison's Reliance on a Court-Filing Stamp Does Not Establish Its Claimed May 26, 2026 Service-Receipt Date.

Edison asserts that the Township "did not receive the late service until May 26, 2026," relying in part on a notation appearing on ECF No. 21 at page 1. ECF No. 93-1 at 15 & n.5. **The notation concerning May 1, 2026 identifies the Court's receipt of Plaintiff's pleading; it does not establish when Edison Township received Plaintiff's separate service package.** Plaintiff challenges the notation's use **as support for that date and requests that Edison's representation be evaluated against the actual mailing, delivery, return-receipt, and sworn service materials identified in ECF Nos. 29-2, 31, 31-1, and 78.** The contemporaneous sworn mailing certificate appears at ECF No. 29-2 at 1–3, with supporting postal records at ECF Nos. 31 and 31-1. Edison attaches no receipt, log, or affidavit contradicting it. The party asserting the validity of service bears the burden of proving its sufficiency. *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d

505, 519 (E.D. Pa. 2010). Plaintiff submitted the May 14 mailing certificate and postal materials at ECF Nos. 29-2, 31 and 31-1 and her later sworn declaration at ECF No. 78 at 5. Even if the Court were to find service untimely under the filing date Edison prefers, Rule 4(m) and *Petrucelli v. Bohringer & Ratzinger, GmbH*, 46 F.3d 1298, 1305–06 (3d Cir. 1995), independently authorize an extension of time—either upon a finding of good cause or, in the Court's discretion, without one. The Court may also consider whether New Jersey's optional mailed-service provision, N.J. Ct. R. 4:4-4(c), supplies an authorized manner of service under Fed. R. Civ. P. 4(j)(2).

**D. Edison's Prior Extension Request Must Be Accurately Distinguished from Jurisdictional Waiver.**

Edison's memorandum states at page 16 that the Township had not filed a prior motion or otherwise acted in a manner amounting to jurisdictional participation. That discussion also expressly acknowledges counsel's prior request for additional response time. **The issue is therefore not whether Edison concealed that request or automatically waived personal jurisdiction, but whether the description of its docket activity is precise.** Counsel submitted a Request for Extension of Time to Respond to Complaint, docketed as ECF No. 85, on August 27, 2026, and this Court granted it the same day at ECF No. 86. Plaintiff does not contend that obtaining this extension constitutes consent to personal jurisdiction or waives a timely Rule 12 defense. Plaintiff asks only that the Court distinguish the existence of this earlier request from its separate legal effect on jurisdictional defenses.

Edison expressly relies on *In re Texas Eastern Transmission Corp.*, 15 F.3d 1230, 1236 (3d Cir. 1994), for the proposition that personal jurisdiction can be waived by conduct demonstrating a willingness to engage extensively in litigation on the merits. ECF No. 93-1 at 16. Plaintiff does not contend that Edison's notice of appearance or extension request, standing alone,

meets that standard. The legal question here is not automatic jurisdictional waiver; it is whether those activities demonstrate actual notice, whether Edison timely preserved its distinct Rule 12 objections, and what relief is available if original service was defective. The Court should evaluate those issues separately.

### E. Edison's Separate Rule 4(j) Manner-of-Service Argument Must Be Read Together with Its Conditions.

Edison separately argues that mailing to the Township Clerk did not satisfy Fed. R. Civ. P. 4(j)(2), because New Jersey Court Rule 4:4-4(a)(8) requires personal service on a municipality's presiding officer or clerk, and Plaintiff mailed the summons instead. ECF No. 93-1, pages 15–16. Edison's brief quotes subsection (a)(8) and stops there. **It never once mentions New Jersey Court Rule 4:4-4(c), titled "Optional Mailed Service,"** which governs exactly this situation and provides, in full: *"Where personal service is required to be made pursuant to paragraph (a) of this rule, service, in lieu of personal service, may be made by registered, certified or ordinary mail, provided, however, that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto. This prohibition against entry of default shall not apply to mailed service authorized by any other provision of these rules. If defendant does not answer or appear within 60 days following mailed service, service shall be made as is otherwise prescribed by this rule, and the time prescribed by R. 4:4-1 for issuance of the summons shall then begin to run anew."* N.J. Ct. R. 4:4-4(c) (**emphasis added**). Plaintiff quotes the subsection in its entirety rather than the single sentence favorable to her, because the rule's complete text — not a fragment of it — is what governs the analysis of Edison's argument.

Edison's challenge to the manner of service must be considered under the complete text of New Jersey Court Rule 4:4-4(c), not solely subsection (a)(8). Subsection (c) expressly permits optional mailed service where personal service would otherwise be required, subject to the conditions governing an answer or appearance and the additional service procedure when the defendant has not answered or appeared within sixty days. Plaintiff mailed the service package to the Township Clerk on May 14, 2026. ECF No. 29-2 at 1–3; ECF Nos. 31 and 31-1. Edison subsequently entered an appearance through counsel on July 29, 2026, ECF No. 59, and affirmatively sought an extension of time to respond, ECF No. 85, granted at ECF No. 86. Plaintiff acknowledges that counsel's appearance occurred after the sixty-day period specified in the New Jersey rule. She accordingly requests a determination of the legal effect of the later appearance under the rule's full text, rather than presuming that appearance automatically extinguished an earlier service defect.

Rule 4(c)(2) separately provides that service of a summons and complaint must be performed by an adult who is not a party. Plaintiff personally mailed the May 14, 2026 package, as reported in ECF No. 78. In *Cruz v. City of Newark*, No. 2:25-cv-04554, Document 36, at 8–12 (D.N.J. Apr. 20, 2026), the district court found a *pro se* plaintiff's personal service on a municipality defective, but denied the service-dismissal motion and permitted sixty days for proper service. *Cruz* is persuasive rather than binding on this Court and did not adjudicate the legal effect of the particular optional-mail facts presented here. Its disposition nevertheless demonstrates the availability of corrective-service relief. Plaintiff maintains her arguments under Rule 4(j)(2) and New Jersey Rule 4:4-4(c), while independently requesting a Rule 4(m) extension, with an opportunity to use a qualifying nonparty process server if the Court finds it necessary. Corrective service can be made by an adult nonparty who personally delivers the summons and controlling

complaint to the Township's chief executive officer under Rule 4(j)(2)(A), or personally serves the municipal presiding officer or clerk under Rule 4(j)(2)(B) and New Jersey Rule 4:4-4(a)(8), with proof under Rule 4(l). Plaintiff does not treat her May 14 mailing, the later appearance, or counsel's participation as an automatic waiver of a preserved Rule 12(b)(5) objection.

Plaintiff does not ask the Court to ignore contrary authority. *Touray v. Middlesex County*, 139 F. App'x 428, 430 (3d Cir. 2005) (nonprecedential), rejected purported federal service where a plaintiff identified himself as the server and the attempted New Jersey service did not satisfy the applicable method. *Touray* involved service on an individual through the Attorney General rather than this Township Clerk mailing and does not itself decide every issue under N.J. Ct. R. 4:4-4(c); it is addressed in the corrective-service alternative below. *Citibank, N.A. v. Russo*, 334 N.J. Super. 346, 351–52 (App. Div. 2000), distinguishes optional initial service by mail under Rule 4:4-4(c), which depends on the defendant's answer or appearance and restricts default for nonappearance, from other specifically authorized mailed-service methods that may support default after their distinct prerequisites are met. Plaintiff addresses it without conceding that it decides the federal server qualification or the legal effect of a late appearance in this action. Counting 60 days after the May 14, 2026 mailing identifies July 13, 2026, a Monday; counsel's July 29 appearance occurred after that period. Subsection (c) calls for another authorized method if the defendant has not answered or appeared within 60 days. Plaintiff preserves her contention that the Township actually received the summons and complaint materials and subsequently appeared, without treating this chronology as automatically curing the Rule 4(c)(2) objection. Alternatively, the Court should permit corrective service rather than dismiss meritorious claims for a curable service defect, for the reasons independently developed in subsections A and B.

These authorities make corrective service a potentially consequential alternative rather than an implicit concession. Plaintiff requests, if necessary, a Rule 4(m) order specifying time to accomplish service by a qualified nonparty upon an authorized municipal recipient under Rule 4(j)(2), with proof under Rule 4(l). Any such later service would prospectively address the method of service but would not by itself determine timeliness or relation back. Plaintiff requests an express good-cause finding if the facts support it and an independent discretionary extension otherwise, preserving all objections to Edison's original-service characterization.

Plaintiff separately relies on Edison's actual notice and litigation participation as relevant circumstances for the alternative relief authorized by Federal Rule of Civil Procedure 4(m), without treating actual notice as an automatic substitute for service compliant with Rule 4(j)(2). Edison participated through counsel, obtained a court-ordered extension, and submitted its motion to dismiss. The record therefore permits an assessment of actual notice, diligence, prejudice, and whether corrective service would serve the orderly adjudication of the action. *Petrucelli v. Bohringer & Ratzinger, GmbH*, 46 F.3d 1298, 1305–06 (3d Cir. 1995). Should the Court conclude that optional mailed service did not satisfy the governing rule, Plaintiff requests that the Court exercise its authority to permit proper service within a specified period. This alternative does not concede Edison's service objections; it ensures that an unresolved service question is not improperly converted into a with-prejudice adjudication of the merits.

## II. EDISON'S OWN PENNSYLVANIA CONTACTS AND THE SUIT-RELATED COMMUNICATIONS REQUIRE DEFENDANT-SPECIFIC ANALYSIS.

### A. The Full Long-Arm Statute Reaches the Constitutional Limit and Requires Defendant-Created Contacts.

Edison's own statutory discussion focuses on § 5322(a), but its incorporated Torrance memorandum reproduces subsection (b) as well. ECF No. 93-1 at pages 5–6, 19; ECF No. 35-1 at pages 8–9 n.4. Plaintiff notes that the combined presentation reproduces subsection (b). The complete statute extends jurisdiction to the constitutional limit, subject to defendant-created minimum contacts and the relationship of those contacts to the claims. A statutory omission or a case-name error cannot alone establish personal jurisdiction; the decisive inquiry is the Edison-specific conduct and evidence addressed below. Rule 4(k)(1)(A) supplies the state-court jurisdictional reach ordinarily applicable here. Section 5301 addresses general jurisdiction; no Pennsylvania incorporation, qualification, consent, or other constitutionally sufficient general-jurisdiction basis for this New Jersey Township is established by the sources cited here. Plaintiff's developed theory is specific jurisdiction under § 5322(a) and (b), subject to subsection (c)'s restriction to claims arising from the jurisdictional acts. Invoking a Pennsylvania order under subsection (a)(10) does not dispense with federal due process. The April and July incidents, and each claim dependent on them, must be assessed through Edison's own suit-related acts. 42 Pa. Cons. Stat. §§ 5301, 5322(a)–(c); Fed. R. Civ. P. 4(k)(1)(A); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 & n.3 (3d Cir. 2007).

**B. The Enumerated Long-Arm Provisions Remain Subject to Constitutional Minimum Contacts.**

Edison's footnote lists § 5322(a)(4) and (a)(10); Plaintiff notes that the footnote lists those provisions. ECF No. 93-1 at pages 5–6 n.3. Section 5322(a)(4) addresses injury in Pennsylvania caused by an out-of-state act or omission, while subsection (a)(10) addresses specified violations within Pennsylvania's jurisdiction. Subsection (b) separately extends jurisdiction to the constitutional limit. These provisions must be applied together with subsection (c)'s claim-related limitation and the Fourteenth Amendment. Plaintiff's possession of a Pennsylvania PFA and allegations of Pennsylvania injury do not, by themselves, establish Edison's purposeful contacts with Pennsylvania. ECF No. 21 at 12 alleges coordinated conduct and reliance on information from Pennsylvania governmental participants. ECF No. 94 at pages 5, 12–15 separately identifies records concerning the April 22 station and residence contacts involving enforcement or verification of PFA No. 2503-V-7369. Those allegations and requests identify the inquiry; they do not establish the contents of a call or amend the operative complaint.

Pennsylvania's long-arm statute permits jurisdiction to the constitutional limit, but it does not eliminate the independent requirement that Edison itself create constitutionally sufficient contacts with Pennsylvania. 42 Pa. Cons. Stat. § 5322(b); *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). Plaintiff therefore does not rely upon her Pennsylvania residence, the Pennsylvania origin of the PFA, or the location of consequential injury as substitutes for defendant-created forum contacts. Instead, she identifies alleged conduct by Edison personnel involving communications with Pennsylvania law enforcement in temporal proximity to Plaintiff's request for recognition of her Pennsylvania judicial order. Plaintiff states that, during the April 22, 2025 police-station encounter, after she presented her PFA, read 18 U.S.C. § 2265 aloud, and told Supervisor Esposito

that he could confirm the order with the Philadelphia Police Department, Esposito stated that he was going to call that Department, asked her for the 15th District's telephone number, and then spent considerable time on the telephone. That specific April call is Plaintiff's additional firsthand account in Statement of Facts § B, not an allegation identified in ECF No. 21. ECF No. 21 at 12 alleges more generally that Edison acted upon information received from Pennsylvania governmental participants. Those alleged communications—not the mere existence of the Pennsylvania PFA—supply the factual basis for examining whether Edison deliberately directed conduct toward Pennsylvania in connection with the asserted deprivation.

The nature of those contacts is material. If Edison personnel deliberately sought information, instructions, authorization, or coordinated action from Pennsylvania officials concerning the enforceability of PFA No. 2503-V-7369, the participants, content, purpose, and consequences of those communications bear directly on purposeful direction and the relationship between the forum contacts and Plaintiff's claims. Plaintiff does not assert that every interstate telephone call establishes jurisdiction. Plaintiff alleges deliberate coordination between Edison personnel and Pennsylvania officials; the specific communications and instructions are identified for discovery, and Plaintiff does not ask the Court to treat them as established. She asserts that the identified communications warrant evaluation under the defendant-focused standard of Walden and the separate relatedness requirement articulated in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358–60 (2021). The governing inquiry concerns Edison's own deliberate contacts with Pennsylvania and their relationship to the particular claims, rather than a generalized assertion that every injury involving a Pennsylvania court order is actionable in Pennsylvania.

ECF No. 102 addressed personal jurisdiction over the City of Torrance based on the contacts alleged against that California defendant; it did not decide jurisdiction over Edison. Plaintiff does not suggest that one telephone call of presently unconfirmed substance, the Pennsylvania origin of her PFA, or her residence automatically establishes specific jurisdiction. The alleged Edison-to-Philadelphia Police Department call occurred during the April 22, 2025 Edison encounter after Plaintiff presented her PFA; the separate July 2025 contact and ECF No. 21 at 12 supply additional allegations for examination. Whether the defendant itself purposefully directed relevant conduct toward Pennsylvania depends on the actual purpose, participants, content, and consequences of those communications. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). The narrowly described records sought in ECF No. 94 would test whether these communications were mere information-gathering incidental to New Jersey police work or coordination sufficiently connected to the claimed injury. Plaintiff accordingly requests the particularized discovery described below, rather than an inference of jurisdiction from interstate contact alone, subject to ECF No. 115.

**C. Edison Misquotes the Case Name of Its Own Controlling Authority.**

Edison's memorandum names the case '*Martin v. Godwin,' but the reported decision is Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007). ECF No. 93-1 at page 5. Plaintiff notes the case-name error for accuracy. *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317–18 (3d Cir. 2007), requires a defendant-focused inquiry* into purposeful forum contacts and claim-relatedness. A refusal communicated to Plaintiff while both she and the officers were in New Jersey does not become Pennsylvania-directed conduct merely because the order originated in Pennsylvania. Plaintiff instead relies on the identified alleged Edison communications with Pennsylvania officials and requests an opportunity to establish their purpose, participants, substance, and

relationship to the *asserted deprivation*. *Marten* affirmed rejection of jurisdiction over out-of-state actors where the required express aiming at Pennsylvania was not established. Its discussion of Pennsylvania injury cannot be converted into a holding that the label "conspiracy" establishes jurisdiction over every alleged participant. Plaintiff preserves her coordination allegations while asking the Court to examine the acts attributable to Edison itself. *Marten*, 499 F.3d at 296–99; *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014).

**D. Edison Cannot Borrow Torrance's California-Specific Jurisdictional Defenses by Incorporation.**

At the close of its memorandum, Edison states that, "beyond the arguments set forth herein, Edison adopts the arguments set forth in the City of Torrance's Motion to Dismiss (ECF No. 35) as if set forth herein at length." ECF No. 93-1, page 19. Torrance's motion addressed personal jurisdiction based on Torrance's own, specifically California, contacts with Pennsylvania — contacts Edison does not have and does not claim to have. A New Jersey municipality cannot adopt a California municipality's jurisdictional defense by reference and expect it to transfer intact; **jurisdiction is analyzed defendant by defendant**, *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (jurisdiction over one defendant may not be premised on the contacts of another), and Edison's own motion, pages 1 through 18, already acknowledges this by arguing its own contacts rather than Torrance's. <u>Edison does not get the benefit of both: a defendant-specific jurisdictional argument where convenient, and a wholesale adoption of a different defendant's California-specific argument everywhere else</u>. The incorporated memorandum also raises pleading specificity, underlying constitutional injury, policy/custom and ratification, the power to provide process, and interference with qualifying state proceedings. ECF No. 35-1 at pages 12–18. Plaintiff addresses those grounds in Sections III–V, not by treating incorporation itself as invalid.

To the extent Edison means only to incorporate a shared legal standard or doctrinal argument Torrance also raised, that is unobjectionable; to the extent Edison means to borrow Torrance's factual showing of Torrance's own contacts, or lack thereof, with Pennsylvania as if they were Edison's contacts, *Rush* forecloses it, and Edison's own blanket incorporation language does not distinguish between the two.

**E. Edison's Pennsylvania-Directed Communications Require a Claim-Specific Jurisdictional Determination.**

*Walden v. Fiore*, 571 U.S. 277, 284–86 (2014), requires Edison's own contacts with Pennsylvania; Plaintiff's residence and the Pennsylvania origin of her PFA cannot supply those contacts. The April encounter occurred in New Jersey, and an officer's allegedly inaccurate statement there is not automatically an act directed into Pennsylvania. Plaintiff states that Supervisor Esposito announced that he would call the Philadelphia Police Department, asked her for the 15th District's telephone number, and then placed the call after she presented the order; the substance of that communication is not independently documented. Plaintiff's identification of the Philadelphia Police Department as the intended recipient rests on Supervisor Esposito's own express statement and his request for the 15th District's telephone number, not on an inference from the order's Pennsylvania origin. Nor was the April call isolated: Plaintiff's account identifies a second Pennsylvania-directed telephone contact by the same supervisor during the separate July 20–21, 2025 complaint encounter, when Supervisor Esposito went to telephone the Philadelphia Police Department while holding Plaintiff's legal papers. Statement of Facts §§ B–C. The nature and relationship of that alleged communication to the challenged official decisions must be supported rather than inferred from the order's origin. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358–62 (2021), does not require strict causation in every case, but

its relatedness analysis does not eliminate purposeful contacts or permit jurisdiction based solely on Plaintiff's forum connection. Plaintiff requests application of both requirements to the particular Edison conduct, with the confined discovery sought below if the threshold showing is sufficient. The Third Circuit's decisions in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 266–68 (3d Cir. 1998), *Remick v. Manfredy*, 238 F.3d 248, 255–60 (3d Cir. 2001), and *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317–18, 323–24 (3d Cir. 2007), explain why the actual purpose and consequences of Edison's Pennsylvania communications are decisive. *IMO Industries* rejected jurisdiction where the asserted forum connection consisted substantially of the plaintiff's location, the anticipated injury, and contacts directed elsewhere. *Remick*, by contrast, upheld jurisdiction over a claim aimed at Pennsylvania-centered activity while rejecting it for other claims lacking the required forum connection. *O'Connor*'s hotel repeatedly solicited the Pennsylvania residents and arranged the very services that produced the injury. Jurisdiction is therefore examined by reference to the defendant's own conduct and each particular claim, not the historical relationship among the parties, and Plaintiff does not equate a single interstate telephone call with that course of conduct. Plaintiff alleges more than the Pennsylvania origin of her order. She identifies Supervisor Esposito's announced intention to contact the Philadelphia Police Department, his request for the 15th District's telephone number, the telephone activity that followed, and a separate July 20–21 contact with the same Department. Statement of Facts §§ B–C. Whether those exchanges were routine verification for a New Jersey police decision or deliberate governmental participation directed toward Pennsylvania remains the material question. If Edison personnel requested Pennsylvania governmental action, supplied information intended to influence Pennsylvania decisions, or participated in a coordinated course of conduct directed at Plaintiff's protected interests in Pennsylvania, those facts may supply defendant-created, suit-related contacts. Plaintiff

does not represent that the presently undisclosed contents of the calls establish those facts. She requests the limited inquiry described below to determine whether the particular contacts satisfy the purposeful-direction and claim-relatedness requirements of *Walden*, 571 U.S. at 284–90, and *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186–97 (3d Cir. 2024). *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130–31 (3d Cir. 2020), confirms that even actual forum contacts do not suffice when insufficiently related to the claims; it does not eliminate the inquiry, but it requires a genuine relationship between Edison's contacts and these claims.

Under *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024) (slip op. at 26–28), this Court must consider both the *Calder* effects test and the traditional purposeful-availment and relatedness analysis required by *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). Even if the Court were to conclude that Edison did not "expressly aim" its conduct at Pennsylvania under *Calder*, it must still determine whether Edison's alleged communications with Pennsylvania governmental participants, and its alleged reliance on information received from those participants concerning A.N., the Pennsylvania PFA, and Plaintiff's parental authority, constitute purposeful contacts with Pennsylvania that give rise to or relate to Plaintiff's claims. *Hasson* holds that a district court's failure to conduct that traditional analysis is error. Accordingly, if the existing record is insufficient to resolve whether those Pennsylvania-directed contacts satisfy the traditional test, Plaintiff requests that the Court defer dismissal and permit narrowly tailored jurisdictional discovery limited to the identified April 22 and July 20–21, 2025 communications, consistent with *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456–58 (3d Cir. 2003), and subject to an appropriate limited modification of the discovery stay entered at ECF No. 115. The traditional inquiry also requires fair play and substantial justice after purposeful contacts and claim-relatedness are shown. Relevant considerations include the burden on Edison,

Pennsylvania's interest, Plaintiff's interest in effective relief, interstate efficiency, and the States' shared substantive interests. *O'Connor*, 496 F.3d at 324–25; *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1226–27 (3d Cir. 1992). Plaintiff relies on Pennsylvania's interest in allegedly wrongful participation by its own governmental actors and seeks a confined inquiry into identified communications, while recognizing New Jersey's interest in local police conduct. Convenience and forum interest cannot create missing minimum contacts.

The same consolidated precedential opinion affirmed dismissal of Schnur's claims, distinguishing his asserted contacts from *Hasson*'s because the challenged website interactions did not establish a sufficient Pennsylvania connection. *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024) (slip op. at 9–21, 28) (consolidated appeals including Schnur). Plaintiff acknowledges that adverse disposition. <u>Her requested distinction turns on whether the Edison personnel's particular communications with Pennsylvania officials were purposeful, defendant-created, and suit-related—not merely on the fact that Plaintiff possessed a Pennsylvania court order. That contested factual question supports the confined request for jurisdictional discovery;</u> it does not itself establish the necessary contacts.

The Fourteenth Amendment's jurisdictional requirement focuses upon the defendant's own purposeful contacts with Pennsylvania, not Plaintiff's residence alone. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Marten v. Godwin*, 499 F.3d 290, 296–99 (3d Cir. 2007). Plaintiff reports that Edison personnel made telephone contact with the Philadelphia Police Department during the events involving her Pennsylvania PFA and alleges more generally that Edison acted upon information from Pennsylvania governmental participants. The actual subject and content of the calls remain unestablished. ECF No. 21 at 12 alleges coordinated action and reliance on Pennsylvania information; it does not specifically plead the April 22 telephone call. The call

account appears in the Statement of Facts as Plaintiff's additional firsthand allegation and must be supplied through competent jurisdictional evidence if relied upon to meet her burden. Because the purpose, participants, and substance of these suit-related communications bear on whether Edison deliberately directed conduct toward Pennsylvania, Plaintiff alternatively seeks limited jurisdictional discovery under *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455–56 (3d Cir. 2003), and *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Plaintiff requests appropriate relief from ECF No. 115's discovery stay if necessary to permit that targeted inquiry. The primary request remains denial on a sufficient, defendant-specific jurisdictional showing. Without an evidentiary hearing, the applicable prima facie inquiry must be distinguished from ultimate factfinding, and factual disputes are not resolved against Plaintiff merely because the defendant disputes jurisdiction. *Danziger*, 948 F.3d at 129; *Mellon Bank*, 960 F.2d at 1223. Nevertheless, the allegation at ECF No. 21 at 12 does not identify the April caller, Pennsylvania recipient, contents, or purpose. Plaintiff does not represent that an unexecuted statement or unproduced recording supplies those missing particulars. If the existing competent submission does not permit a jurisdictional determination, the independent request is a threshold ruling on limited discovery, not a finding that the unknown call contents are already proved.

Alternatively, Plaintiff requests a limited jurisdictional-discovery determination before any jurisdictional disposition. The Third Circuit has held that where factual allegations suggest with reasonable particularity the possible existence of defendant-forum contacts, jurisdictional discovery ordinarily should be permitted unless the jurisdictional theory is clearly frivolous. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456–58 (3d Cir. 2003); *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Plaintiff's request is confined to identified Edison communications directly relevant to Pennsylvania contacts: (1) the April 22, 2025 calls

and communications between Edison personnel and the Philadelphia Police Department concerning PFA No. 2503-V-7369; (2) corresponding dispatch, CAD, telephone, and supervisory records identifying the initiator, recipient, purpose, and substance of those communications; and (3) any directly related July 20–21, 2025 Edison communications with Pennsylvania governmental personnel concerning the same order and Plaintiff's requests for assistance. These records concern identifiable incidents and communications, rather than an unrestricted search for unrelated contacts. ECF No. 102, Section III.B, at pages 10–11 denied Torrance discovery because unspecified contacts did not satisfy reasonable particularity. The relevant distinction must therefore be the specificity and suit-related purpose supported for Edison's identified calls—not merely Edison's New Jersey location. Plaintiff bears the threshold burden and requests no presumption that discovery will establish jurisdiction. ECF No. 94 at 5, 12–15 identifies the categories of records previously requested. *Toys "R" Us* reversed a discovery denial because identified record facts and admissions suggested additional relevant contacts; it did not authorize discovery based solely on a hope of finding a connection. 318 F.3d at 456–58. Here, the proposed first step is limited to nonprivileged call-routing or telephone logs, dispatch/CAD audit entries, and existing incident records sufficient to identify the April 22 and July 20–21 communications alleged in Statement of Facts §§ B–C, their initiators and recipients, and any contemporaneous connection to the decisions challenged. Plaintiff requests production of associated substantive communications only to the extent that initial identification supports their jurisdictional relevance. No general search of all municipal communications, merits-wide discovery, or presumption of a favorable answer is requested. ECF No. 94 at 12–15 supplies the earlier requested record categories; it is not itself proof that a particular recording exists.

Plaintiff recognizes that ECF No. 115 presently stays discovery pending resolution of the motions to dismiss. She therefore requests a narrowly limited modification of that stay, or an express determination permitting jurisdictional discovery before any jurisdictional disposition, rather than treating the outstanding records as though they had been produced or treating their contents as established. See *Toys "R" Us,* 318 F.3d at 456–58. Plaintiff requests an express ruling on this alternative so that both the jurisdictional determination and the disposition of her request for discovery are preserved for review. The requested procedural relief is an express, case-specific order authorizing this limited inquiry under Rules 26(d)(1) and 26(b)(1), and revising the interlocutory stay to that extent under Rule 54(b), before any production obligation is imposed. ECF No. 104 at 1 n.1 denied the earlier demand as premature; Plaintiff does not ask that it be treated as an outstanding compulsory-production order or silently reopened. ECF No. 115 at 1 controls until modified. If a separate Rule 7(b)(1) application is required, Plaintiff requests an opportunity to present the confined request with its supporting declaration, precise record categories, proportional limits, and proposed order. This opposition does not represent that such a separate application has already been filed, and no discovery is authorized by this request alone.

The requested inquiry is further supported by *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330–31, 336 (3d Cir. 2009), and *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781–82 & n.20 (3d Cir. 2018). Where personal jurisdiction is challenged and no evidentiary hearing has been held, Plaintiff need only make a prima facie showing, with her allegations taken as true and factual disputes resolved in her favor; *Metcalfe* distinguishes that preliminary showing from the ultimate burden of proof. *Shuker* confirms that narrowly confined jurisdictional discovery is available where specific allegations support a potentially cognizable jurisdictional theory, so long as it is directed to jurisdiction rather than to the merits.

Plaintiff's request rests on identified events, not a demand to search for some unidentified interstate conspiracy. She identifies Supervisor Esposito, the April 22 and July 20–21, 2025 encounters, his stated intention to contact the Philadelphia Police Department, his request for the 15th District's telephone number, and the telephone activity described in Statement of Facts §§ B–C. The initial records would show the originating and receiving numbers, the participating personnel, the timing and routing, and whether communications concerning PFA No. 2503-V-7369 occurred; substantive communications would be sought only if those records establish their jurisdictional relevance. That specific foundation and confined scope distinguish *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155–57 (3d Cir. 2010), where discovery was sought on speculation. Proof that a call occurred is relevant to, but does not by itself establish, purposeful direction or claim-relatedness. She requests a limited opportunity to determine whether Edison itself deliberately engaged Pennsylvania governmental participants in the conduct challenged here, subject to an express modification of ECF No. 115 before any discovery proceeds.

**F. The Child's Protective Status, Pennsylvania Agency Communications, and Threshold Questions Requiring Particularized Discovery.**

Plaintiff does not ask the Court to assume an interstate conspiracy merely because state agencies communicated. Rather, the factual circumstances of A.N.'s reported flight from Pennsylvania state-arranged placement, Plaintiff's account of the February 22, 2025 sexual assault, the active March 31, 2025 Pennsylvania PFA, and the April 22 emergency at Alla Izrailova's Edison residence identify concrete questions bearing on who exercised governmental authority and where that authority was deliberately directed. The March 31 PFA expressly identified "child of Plaintiff" as a protected person on its Final Order page 2; its no-contact terms restricted Bonilla's contact with Plaintiff and other protected persons. PFA No. 2503-V-7369 (Mar. 31, 2025 Final

Order at 1–2); see Statement of Facts §§ B–C, supra. The later May 21 custody disposition cannot, by its own date, explain all official decisions made on April 22.

First, **did Pennsylvania DHS retain legal custody of A.N. or another legally significant protective responsibility on April 22, 2025? Were DHS and the Philadelphia Police Department aware that A.N. had left her state-arranged placement because she reported danger and feared being exposed to further abuse? What information about her departure, prior reported assault, location, immediate safety, and custodial status was transmitted to Edison personnel, by whom, and when?**

Second, **did Edison officers independently assess A.N.'s immediate safety at the station and at Alla Izrailova's residence, or did they instead rely on information from the same Pennsylvania DHS and PPD personnel whose handling of A.N.'s placement Plaintiff was challenging? Did responding officers take affirmative action that exposed A.N. to a greater danger, facilitated prohibited contact with Bonilla, or interfered with Plaintiff's ability to protect her?** These are questions about the conduct of identified governmental actors, not an assertion that the requested recordings have already confirmed any answer.

Third, with respect to personal jurisdiction, **were Edison officers merely checking the status of a Pennsylvania order, or did they intentionally coordinate with Pennsylvania officials concerning how A.N. would be treated, whether PFA No. 2503-V-7369 would be recognized or enforced, and whether Plaintiff's existing parental authority would be acknowledged? What specific Pennsylvania agency, employee, telephone number, office, or official participated; who initiated each communication; what was communicated; what response was received; and what governmental decision followed?** Plaintiff alleges an April Edison-to-PPD telephone call after presentation of the PFA and a separate July telephone contact

involving Supervisor Esposito. The April responding residence officers' identities are not established merely by Esposito's later participation. See Statement of Facts §§ B–C for Plaintiff's separate April and July accounts; ECF No. 21 at 12 only for the general information-and-coordination allegation; ECF No. 94 at 12–15 for the requested record categories. The observation of a telephone being used must be distinguished from personal knowledge of the recipient, content, or purpose; any declaration must explain the actual basis for identifying Philadelphia Police.

Fourth, **did communications initiated by or involving Edison constitute purposeful, suit-related contacts with Pennsylvania rather than merely information-gathering incidental to conduct in New Jersey?** This requires assessment under 42 Pa. Cons. Stat. § 5322(a)(4), (a)(10), and (b), the Fourteenth Amendment, and the defendant-focused minimum-contacts and relatedness requirements. See *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 129–31 (3d Cir. 2020). A Pennsylvania PFA or Pennsylvania injury alone does not answer that inquiry. The purpose, participants, content, and resulting decisions of the specific calls are relevant to distinguishing Edison's alleged contacts from the insufficiently particularized contacts addressed in the Court's Torrance ruling, ECF No. 102.

Plaintiff asks that the Court resolve the foregoing questions on competent evidence, or permit the confined jurisdictional inquiry already requested in Section II.E, rather than treat the silence of unproduced CAD, dispatch, telephone, and supervisory records as an affirmative finding for Edison. Under *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456–58 (3d Cir. 2003), factual allegations suggesting with reasonable particularity the possible existence of forum contacts may support limited jurisdictional discovery. Plaintiff acknowledges ECF No. 104's denial of the earlier motion as premature and ECF No. 115's stay, and seeks only the narrowly

limited modification described above before any threshold jurisdictional dismissal. Plaintiff requests distinct findings on purposeful direction, the connection of each asserted claim to the identified contact, and the reasonable-particularity showing for discovery. Those rulings would identify whether any deficiency concerns the evidentiary showing, the scope of a permissible inquiry, or the substantive pleading. No merits disposition should be inferred from a ruling that jurisdiction is lacking. Plaintiff requests an express ruling on her alternative request for jurisdictional discovery and, where appropriate, an opportunity to seek amendment. A general reservation of rights does not independently preserve an omitted argument or establish appellate jurisdiction.

## III. PLAINTIFF HAS PLED A VIABLE § 1983 MONELL CLAIM AGAINST EDISON, AND THE RECORDS REQUESTED IN ECF NO. 94 GO DIRECTLY TO PLAINTIFF'S § 1983 CLAIM.

### A. This Is Not a Castle Rock Non-Enforcement Claim.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The liberty at issue is Plaintiff's interest in the care, custody, and management of her own child, an interest that temporary state custody does not extinguish. *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982); *Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123 (3d Cir. 1997). The Clause restrains the exercise of state power. It does not guarantee protection against private harm, and Plaintiff does not contend that it does. *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *Burella v. City of Philadelphia*, 501 F.3d 134, 146–48 (3d Cir. 2007). What the Clause does reach is the affirmative use of governmental authority that creates or increases a danger, or that displaces a parent's own protective decisions. *Bright v. Westmoreland County*, 443 F.3d 276, 281–84 (3d

Cir. 2006); *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). The analysis that follows applies each state-created-danger element to what Edison's officers are alleged to have done, not to what they declined to do.

The before-and-after comparison follows the sequence set out in the Statement of Facts, and the sequence matters. Before arriving at her mother's residence, Plaintiff first went to the Edison Police Department and asked for help, while Alla Izrailova, at the residence with A.N., urgently and repeatedly asked that officers be sent without delay. Plaintiff then went to the residence, where she informed the responding officers of the Pennsylvania Final Order while those officers were communicating with Anjelique Bonilla, the person the order restrained, who was not present. After the officers directed Plaintiff away, she returned to the station and physically presented the order to Supervisor Esposito. Before the officers exercised their authority, Plaintiff and A.N.'s grandmother were both seeking police protection for a child who had been sexually assaulted two months earlier, and the person the order restrained held no custodial authority over the child. After the officers exercised their authority, that person's directions concerning A.N. had been treated as authoritative, and Plaintiff had been sent away by police. Plaintiff was not merely left without help. Governmental authority was used to remove her from the place where she was attempting to protect her daughter.

Congress did not leave interstate recognition of protection orders to comity or local practice. A protection order that satisfies 18 U.S.C. § 2265(b) "shall be accorded full faith and credit by the court of another State . . . and enforced by the court and law enforcement personnel of the other State . . . as if it were the order of the enforcing State." 18 U.S.C. § 2265(a). Full faith and credit applies notwithstanding any failure to register or file the order. *Id.* § 2265(d)(2). The duty runs to "law enforcement personnel," not only to courts, and it is stated in mandatory terms

that leave no room for a categorical announcement that an order from a sister State has no force. The order carried the same command on its face. It is a final order entered March 31, 2025, effective through March 30, 2028, "subject to full enforcement pursuant to the Protection From Abuse Act," and under the heading "NOTICE TO SHERIFF, POLICE, AND LAW ENFORCEMENT OFFICIALS" it directs that the police where a violation occurs "shall enforce this Order." ECF No. 68-2 at 17–18. Against that text, Plaintiff states that Supervisor Esposito told her the order was not valid in New Jersey, after she had explained that the child's name was struck to protect the minor's identity, directed him to the following page identifying "child of Plaintiff" among the protected persons, and read 18 U.S.C. § 2265 aloud. Section 2265 establishes the obligation against which the officers' conduct is measured. It does not by itself supply a private damages action, and Plaintiff's claim rests on the Fourteenth Amendment deprivation described above, not on the statute standing alone.

Section 1983 reaches every person who "subjects, or causes to be subjected," another to the deprivation of a federal right. 42 U.S.C. § 1983. That text confirms that an officer who uses governmental authority to cause or facilitate a deprivation is answerable even where a private person completes the harm. *See Horton v. Flenory*, 889 F.2d 454 (3d Cir. 1989); *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998). It does not dispense with the separate requirement, addressed in Section III.B, that the Township's own policy, custom, or deliberately indifferent training or supervision caused the deprivation. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978); *Connick v. Thompson*, 563 U.S. 51 (2011). Individual causation and municipal attribution are distinct inquiries, and Plaintiff addresses each.

Edison frames Plaintiff's claim as one of non-enforcement of a protection order and invokes *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992), for the requirement of an underlying

constitutional deprivation before municipal liability may attach. ECF No. 93-1 at 9–10. That requirement does not dispose of Plaintiff's actual allegations. Plaintiff does not assert a constitutional entitlement to a particular arrest. She challenges the affirmative exercise of governmental authority during an **existing child-safety emergency**, when Edison officers allegedly communicated with the very individual restrained by a Pennsylvania Final Protection From Abuse Order, accepted or acted upon her disputed representations **concerning Plaintiff's minor daughter, and disregarded Plaintiff's objections and the protective restrictions brought directly to their attention**. *Collins* requires identification of an underlying constitutional violation and separate municipal attribution; it does not permit the Court to characterize alleged affirmative governmental interference as mere inaction without examining what the officers actually did.

The April 22, 2025 incident cannot be isolated from the danger that prompted Plaintiff to obtain Pennsylvania Final Protection From Abuse Order No. 2503-V-7369. Plaintiff states that Anjelique Josephine Bonilla, acting in coordination with Jose Anwar Tripp, Thomas Joseph Naylor, Michael Anthony Jiannotti, and others, participated in false accusations and interference contributing to A.N.'s removal from Plaintiff's custody, her subsequent exposure to harm while in state-arranged placement, and continuing efforts to separate her from Plaintiff. Plaintiff further states that Bonilla threatened and enticed A.N., maintained prohibited communications with Plaintiff's mother and daughter, and pursued a plan to relocate A.N. to California.[1]

Following the February 22, 2025 sexual assault while in state-arranged custody, A.N. fled the Pennsylvania DHS/CUA placement because she feared being harmed again. Plaintiff found her minor child with the help of her friends and arranged for A.N. to stay temporarily with

[1] Bonilla’s recent November 15, 2026 emergency phone call to Plaintiff, confirms this.

Plaintiff's cousin in New Jersey, away from the placement in which she feared further harm, pending court proceedings. **Plaintiff's arrangement was a protective response to her daughter's reported fear and prior injuries, not a placement directed or arranged by Pennsylvania authorities.** A.N.'s presence in New Jersey therefore cannot be characterized merely as a child-custody retrieval dispute without addressing the circumstances that brought her there and the continuing danger Plaintiff was attempting to prevent.

At the residence, Plaintiff informed responding officers of the PFA, objected to Bonilla's involvement, and told them of A.N.'s prior sexual assault, flight from placement, and fear of further harm. At the police station, Plaintiff identified the order's protection of "child of Plaintiff" and read 18 U.S.C. § 2265 aloud. Plaintiff alleges that the officers' affirmative actions during the April 22 encounter interfered with her efforts to protect A.N. and increased the danger she had identified; her constitutional claim does not rest on non-enforcement alone.[2]

The Third Circuit requires four showings under the state-created-danger doctrine: (1) foreseeable and fairly direct harm; (2) culpability that shocks the conscience; (3) a relationship making the plaintiff a foreseeable victim of the challenged conduct, or a member of a discrete class subjected to the danger, rather than the public generally; and (4) an affirmative exercise of state authority creating danger or rendering the person more vulnerable than if the State had not acted. *Bright v. Westmoreland County*, 443 F.3d 276, 281–84 (3d Cir. 2006); *Kneipp v. Tedder*, 95 F.3d 1199, 1208–09 (3d Cir. 1996). Here, the alleged danger concerned identified persons, an existing protective order, and an unfolding incident involving a minor child who had fled state-arranged placement because she feared further injury following a reported sexual assault. Plaintiff was not

[2] In 1998 the same PD and the state of NJ placed and enforced a TRO followed by FRO against Bonilla's father in Edison, for domestic physical abuse and endangerment of minor child.

a member of the general public seeking unspecified police services; she was the identified parent and protected party invoking an existing court order against the person interfering with her minor daughter. The temporary protective arrangement in New Jersey is material to the before-and-after comparison under *Kneipp*: Plaintiff had arranged shelter for her endangered daughter pending judicial proceedings and was attempting to prevent further interference when Edison officers allegedly intervened in favor of Bonilla's disputed representations. The culpability inquiry must consider what the officers knew, the warnings they received, their opportunity to deliberate, and whether their affirmative decisions increased the danger. Plaintiff asserts an injury to her own protected interests, while preserving the distinction between that injury and any injury belonging independently to A.N.

Plaintiff directly addresses *Burella v. City of Philadelphia*, 501 F.3d 134, 146–48 (3d Cir. 2007). There, the Third Circuit rejected a state-created-danger claim based on repeated failures to enforce a protection order and inaccurate police advice, even though prohibited telephone contact occurred in the officers' presence. Plaintiff's claim does not rest on Bonilla's voice on police communications alone. The materially different alleged conduct is that Edison officers themselves communicated with Bonilla during the emergency, treated her disputed assertions concerning A.N. as authoritative, disregarded Plaintiff's explanation of the PFA's restrictions, and directed Plaintiff to stay away from the residence to seek assistance at a station where she - herself had already requested intervention. Plaintiff challenges the alleged governmental decisions made in response to Bonilla's representations, not simply the absence of an arrest.

The distinction between neutral police presence and affirmative assistance is particularly important. In *Horton v. Flenory*, 889 F.2d 454, 458–60 (3d Cir. 1989), the Third Circuit examined an officer's apparent authorization of a private actor's continued detention and interrogation of

another person, demonstrating the constitutional significance of official participation in private conduct. In *Abbott v. Latshaw*, 164 F.3d 141, 145–48 (3d Cir. 1998), the Court distinguished officers who remained neutral during a disputed private repossession from an officer who affirmatively supported one party's asserted entitlement and intervened against the other. Although *Abbott* concerned property and procedural due process rather than child protection, its distinction between verification and active governmental assistance is directly relevant to the character of the police conduct alleged here. Plaintiff states that Edison officers did not merely hear Bonilla's statements; they gave weight to her disputed authority concerning A.N. while disregarding the contemporaneous objections and protective-order restrictions presented by a protected party-mother. The Court must examine whether this amounted to official facilitation of Bonilla's continued interference rather than neutral investigation.

The affirmative-act and causation inquiries are further informed by *Kneipp*, *Phillips v. County of Allegheny*, 515 F.3d 224, 235–42 (3d Cir. 2008), and *L.R. v. School District of Philadelphia*, 836 F.3d 235, 242–46 (3d Cir. 2016). *Kneipp* examined how police intervention increased a vulnerable person's exposure to harm; *Phillips* distinguished passive failures from affirmative governmental assistance that facilitated private violence; and *L.R.* directed courts to examine the status quo before official intervention and whether the exercise of authority left an identifiable child more vulnerable to danger. Plaintiff does not contend that Edison physically released A.N. to Bonilla or that these cases arose from identical circumstances. Rather, she contends that the officers' alleged acceptance of Bonilla's asserted authority, combined with their directions to Plaintiff during the developing incident, altered the practical circumstances in which Plaintiff was attempting to prevent additional prohibited contact and interference. The relevant comparison is whether the challenged exercise of police authority increased the identified danger

beyond that which existed before the officers intervened, including whether it undermined the temporary protective arrangement Plaintiff had established in response to A.N.'s fear of further injury.

The officers' knowledge and the continuity of the danger are equally material. Under *Kedra v. Schroeter*, 876 F.3d 424, 440–47 (3d Cir. 2017), specific warnings, training, and obvious risks may support an inference of actual awareness of a substantial danger. Plaintiff states that she informed the responding Edison officers at the residence of the order, explained its protective purpose and restrictions, and identified the immediate danger involving A.N.; at the station, she physically presented the order to Supervisor Esposito, identified its operative protections, and read the applicable federal statute aloud. **The New Jersey Attorney General's domestic-violence and interstate-protection-order directives also inform the officers' training and notice**. See also *Okin v. Village of Cornwall-on-Hudson Police Department*, 577 F.3d 415, 428–32 (2d Cir. 2009) (persuasive authority examining whether police interactions implicitly but affirmatively encouraged continued private abuse). Plaintiff maintains that Edison's response facilitated Bonilla's continued involvement during the April emergency and contributed to the continuation of the alleged interference preceding A.N.'s later transportation to California. The earlier assault is not attributed to Edison, and the later transportation involves additional actors and intervening events. Nevertheless, Plaintiff's alleged causal connection cannot be dismissed merely by treating the April police encounter as an unrelated request for discretionary assistance. The Court must examine the challenged affirmative conduct, its relationship to the existing danger, and the foreseeability and directness of the resulting injury under *Bright*, *Burella*, *Phillips*, and *L.R.*

Edison's alleged categorical rejection of the Pennsylvania PFA also departed from mandatory statewide policy in force well before April 22, 2025. The New Jersey **Attorney**

**General's Standards to Ensure the Rights of Crime Victims** — issued pursuant to N.J.S.A. 52:17B-97 et seq. and N.J.S.A. 52:4B-44, directed to all New Jersey law enforcement officers, who ***shall*** follow the Standards and whose agencies ***shall*** adopt them as agency policy and procedure — require, in mandatory terms, that "[a]ppropriate attention ***shall*** be given to investigating victim reports of threats or intimidation and these reports ***shall*** be promptly forwarded to the County Prosecutor's Office." N.J. Att'y Gen. **Standards to Ensure the Rights of Crime Victims**, Part One, § III.A (rev. Apr. 1993) (emphasis supplied). The Standards define "victim" to include persons harmed "as a result of … domestic violence," *id.* at 3, **squarely covering the person who presented to Edison officers with a Pennsylvania domestic-violence protective order in hand**. The Standards' commentary to Part One, § III.A recommends preparing a written report when warranted and recognizes that such a report may document a pattern of intimidation relevant at trial or sentencing. Plaintiff seeks the corresponding complaint-intake, CAD, body-camera, and supervisory-review records to determine what Edison documented and how the reported conduct was handled. The contents, completeness, and existence of particular responsive records remain to be established. Plaintiff **invokes** these mandatory Standards as evidence of Edison's investigative obligations, notice, and training requirements, not as an independent federal damages cause of action or the enforcement entitlement rejected in *Castle Rock. In Burella, the Third Circuit held that the alleged refusal to enforce a protection order, together with the officers' statement that nothing could be done, did not state a state-created-danger claim, because the plaintiff contended only that the officers failed to act. Burella, 501 F.3d at 147–48.* Any training, custom, or *policy theory still* requires an underlying constitutional deprivation, municipal attribution, the applicable culpability, and causation.

**The New Jersey Attorney General's separate out-of-state protection-order Guidelines** directly address the April 22, 2025 encounter. **The New Jersey Attorney General's Guidelines for the Enforcement of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases** — issued pursuant to the Full Faith and Credit mandate of the Violence Against Women Act, 18 U.S.C. § 2265, and directed to all New Jersey law enforcement officers — state that "[t]he restraining order or order of protection should be presumed valid when presented to an officer" and that "[t]he primary responsibility of the officer should be to ensure the safety of the holder of the out-of-state order." N.J. Att'y Gen., Guidelines for the Enforcement of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases, § II.A (issued April 1996, revised September 2000). The Guidelines define the precise situation confronting Edison officers on April 22, 2025 — a victim of domestic violence presenting a valid, identified Pennsylvania court order — and instruct officers to presume such an order valid, prioritize the holder's safety, and assess the specified facial-validity criteria before determining the appropriate enforcement response. *Id.* § II.A(2)(b). Pennsylvania Protection From Abuse Order No. 2503-V-7369 bore the identifying information, named the correct parties, and was presented as current and valid on April 22, 2025 — satisfying the first two facial-validity criteria on its face; the third turns on what the victim reported to the officer, a matter for the record and discovery. Edison officers instead told Plaintiff the order was "not applicable out of state," contrary to the presumption of validity the AG Guidelines direct and the primary-responsibility guidance those Guidelines give. That alleged response conflicts with the identified enforcement guidance, but the policy documents do not independently establish an affirmative constitutional act under *Bright* or *Burella*. Plaintiff relies upon the additional officer–Bonilla interactions and resulting official decisions described above, while retaining both policy sources: the 1993 Standards calling for investigation of victim reports

of threats and intimidation, and the 2000 Guidelines directing that a protective order of the type Plaintiff presented that day be presumed valid.

Edison's attempt to recast April 22, 2025 as an ordinary interstate custody dispute is inconsistent with the distinction drawn by New Jersey's own law-enforcement guidance. The New Jersey Attorney General's *Guidelines for the Enforcement of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases*, issued April 1996 and revised September 2000, expressly distinguish an emergency involving violent behavior, threats, or violations of a no-contact order from a non-emergency request concerning custody, visitation, or other relief that does not involve such conduct. *Id.* § I.C–D, at 1. Plaintiff alleges the former: a minor child absent from state-arranged placement; concerns about instructions attributed to the PFA-restrained individual; an existing judicial prohibition against direct and indirect contact; a request for immediate police intervention; and responding Edison officers allegedly communicating with that restrained individual while Plaintiff objected. This was not merely a request to adjudicate competing custody rights.

The Guidelines further instruct officers to seek clarification of apparent facial defects rather than disregard an out-of-state order, and specifically address suspected violators who are no longer present at the scene. Id. § II.A.2(d), 4, at 3. Both provisions are directly relevant. Plaintiff explained the operative protections notwithstanding the struck-through preprinted wording, while Bonilla allegedly communicated remotely with responding officers. Neither the apparent irregularity nor Bonilla's physical absence justified categorically treating the Pennsylvania PFA as unenforceable.

Federal law supplies an additional, independent enforcement obligation. Congress enacted 18 U.S.C. § 2265 in 1994, after New Jersey's 1993 Attorney General Standards to Ensure the Rights of Crime Victims and before the issuance of New Jersey's 1996 Guidelines for the

Enforcement of Out-of-State Restraining Orders, revised in September 2000. Under 18 U.S.C. § 2265(a), a protection order issued by one State that is consistent with subsection (b) "**shall** be accorded full faith and credit by the court of another State, Indian tribe, or territory (the enforcing State, Indian tribe, or territory)" and is enforced by the enforcing State's courts and law enforcement personnel "as if it were the order of the enforcing State or tribe." Section 2265(d)(2) adds that "[a]ny protection order that is otherwise consistent with this section **shall** be accorded full faith and credit, notwithstanding failure to comply with any requirement that the order be registered or filed in the enforcing State, tribal, or territorial jurisdiction." 18 U.S.C. § 2265(d)(2). Pennsylvania Protection From Abuse Order No. 2503-V-7369 was presented to Edison officers as current on April 22, 2025. Edison has offered no record showing that its officers checked the order's validity, confirmed its expiration status, or identified any legal basis for the statement that the order was "not applicable out of state" before making that statement to Plaintiff while she read § 2265 aloud to them. ECF No. 28-1, page 21. Plaintiff's § 1983 affirmative-misuse-of-authority claim under *Bright* is accordingly grounded in three distinct sources of statutory and administrative guidance with different legal consequences — the 1993 AG victim-rights Standards, the 2000 AG out-of-state order Guidelines, and the congressional mandate in 18 U.S.C. § 2265(a) and (d)(2) — together directing that Edison's officers presume, enforce, and not misstate the law governing PFA No. 2503-V-7369, whose application must be assessed against what each officer actually knew and did. Plaintiff alleges noncompliance; the requested records have not independently established the officers' complete response. The Full Faith and Credit Clause supplies the constitutional foundation for Congress's interstate-enforcement mandate, while the Supremacy Clause prevents a State from disregarding that federal command merely because a qualifying protection order originated elsewhere.

The Final Order itself speaks to responding officers. Under the heading "**NOTICE TO SHERIFF, POLICE, AND LAW ENFORCEMENT OFFICIALS**," it provides that the police and the sheriff who have jurisdiction over Plaintiff's residence, over any location where a violation of the order occurs, or over any place where Defendant may be located "**shall enforce this Order**," and that an arrest for a violation may be made without a warrant based on probable cause. PFA **No. 2503-V-7369, Final Order (Mar. 31, 2025)**, Notice to Sheriff, Police, and Law Enforcement Officials; **see ECF No. 68-2 at 17.** Plaintiff informed the Edison officers of that order at the residence and presented it at the station. Its enforcement notice, its statement that it is enforceable in all fifty States, 18 U.S.C. § 2265, and New Jersey's own Guidelines all pointed in one direction; the officers' categorical statement that the order was not valid in New Jersey contradicted every one of them. Plaintiff does not rely on the notice's mandatory wording as an independent federal damages right. She relies on it, together with the warnings she gave, as evidence of what the officers were shown and knew when they credited the restrained person's representations instead.

**New Jersey's Constitutional and Statutory Protections for Crime Victims and Witnesses**

New Jersey independently recognizes enforceable protections for crime victims and witnesses under Article I, paragraph 22 of its **Constitution and the Crime Victims' Bill of Rights**, N.J.S.A. §§ 52:4B-35 to -36. Section 52:4B-36(c) protects victims and witnesses against intimidation, harassment, or abuse arising from their participation in the criminal justice process. Section 52:4B-36(r) further affords crime victims procedural standing to seek judicial enforcement of rights conferred by the statute and the New Jersey Victims' Rights Amendment. In *State v. Lavrik, 472 N.J. Super. 192 (App. Div. 2022)*, the Appellate Division examined those protections in a proceeding involving a minor victim of sexual misconduct, recognized the enforceability of victims' procedural rights, and permitted the victim to challenge an adverse civil-reservation order

under the circumstances presented. *Id.* (slip op. at 14–16, 20–23, 33–34). *Lavrik* limited the appeal right to the circumstances addressed, required trial-court intervention when the victim's interests diverge from the State's, required appellate intervention, and required leave for an interlocutory appeal; it excused procedural defects in that case. It does not establish a federal damages right for every person seeking police assistance.

Cf. *Kirby v. Borough of Woodcliff Lake*, No. 2:20-cv-01670, Doc. 75, at 7–9 (D.N.J. Dec. 14, 2021) (recognizing that N.J.S.A. § 52:4B-36(r) permits participation in an existing proceeding but does not independently authorize a standalone civil claim under the Crime Victims' Bill of Rights; separately assuming, without deciding, that a claim arising under New Jersey's constitutional Victims' Rights Amendment could be pursued through the New Jersey Civil Rights Act).

These authorities provide relevant legal context for Plaintiff's allegations concerning her interactions with Edison police personnel while seeking assistance regarding her minor child, reporting alleged wrongdoing, and requesting recognition and enforcement of an existing protection order. To the extent Plaintiff's participation implicated protections available to a qualifying crime victim or witness under New Jersey law, the underlying police reports, CAD/RMS entries, body-camera recordings, communications, complaint-handling records, and applicable policies and training materials are material to determining what information Edison personnel received, what actions they undertook, and whether their treatment of Plaintiff was connected to her reporting activities. Plaintiff separately maintains her federal constitutional and statutory claims under the governing elements of 42 U.S.C. §§ 1983, 1985, and 1986, rather than asserting that the New Jersey statute alone establishes federal liability.

The **2022 New Jersey Domestic Violence Procedures Manual**, § IX, at 140–43, further confirms that registration of a qualifying out-of-state protection order is optional and records the Division of Criminal Justice's assurance that full faith and credit would be emphasized in police training. This is directly relevant to Edison's training and supervision: the alleged categorical rejection of Plaintiff's Pennsylvania PFA concerned a rule New Jersey had expressly incorporated into its law-enforcement instruction, not an unsettled question of interstate recognition.

Statutory compliance does not by itself create an individually enforceable federal damages right. Section 1983 reaches a federal statute only where Congress unambiguously confers an individual right. *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002); *Medina v. Planned Parenthood South Atlantic*, No. 23-1275, slip op. (U.S. June 26, 2025) (Medicaid provision did not clearly and unambiguously confer individual rights enforceable under section 1983). Plaintiff therefore relies on 18 U.S.C. § 2265 and the New Jersey directives to identify the legal error in Edison's blanket statement that the Pennsylvania order was not valid in New Jersey, and asserts her § 1983 claim through the Fourteenth Amendment state-created-danger framework rather than as an automatic federal damages right under either instrument.

The Third Circuit has addressed the limits of this doctrine. A mere assurance of well-being is not an affirmative act. *Ye v. United States*, 484 F.3d 634, 641–42 (3d Cir. 2007). A failure to warn cannot itself predicate liability. *Walter v. Pike County*, 544 F.3d 182, 194–96 (3d Cir. 2008). Passive inaction, however redescribed, is not an affirmative act. *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) (en banc). Plaintiff's theory is therefore not based on non-enforcement or the statement alone. Plaintiff alleges that officers communicated with Bonilla, gave weight to her disputed representations concerning A.N., and directed Plaintiff away despite the PFA and her objections. Whether those alleged affirmative actions—as distinct from a mistaken statement

alone—created or increased a foreseeable danger requires evaluation under *Bright*, *Burella*, and *Phillips*. The requested records have not been produced, and their contents are not established.

The protective-order record contains judicial recitals and a service affidavit relevant to notice and jurisdiction; those sources must be assessed under § 2265(b), rather than treating an out-of-state origin as disqualifying. A Los Angeles County Sheriff's affidavit of service certifies personal delivery to Defendant Bonilla, at the California address identified in that service affidavit, on March 26, 2025 at 9:12 a.m., of the notice of hearing, petition, and temporary order, and a Pennsylvania affidavit of service of the same date bears the deputy's signature. The March 31, 2025 Final Order, which was in effect on April 22, 2025 as described in the cited historical order, states that the court "has jurisdiction over the parties and subject matter, and the Defendant has been provided with reasonable notice and opportunity to be heard," and recites that Defendant "was served in accordance with Pa. R.C.P. No. 1930.4 and provided notice of the time, date and location of the hearing scheduled in this matter." PFA No. 2503-V-7369, Final Order at 1–2 (Mar. 31, 2025) served by L.A.S.D. on April 7, 2025. Its first page states that the order "is enforceable in all fifty (50) States . . . under the Violence Against Women Act, 18 U.S.C. §2265." *Id.* at 1.

Plaintiff's state-created-danger claim rests on the combined effect of Edison's alleged affirmative conduct, not its failure to arrest Bonilla or its inaccurate enforcement advice standing alone. Plaintiff identifies the officers' communications with Bonilla, their acceptance of her disputed authority concerning A.N., and their directions restricting Plaintiff's protective intervention as the governmental acts that allegedly increased an existing danger. The decisive inquiry is whether those acts foreseeably and fairly directly worsened A.N.'s vulnerability and interfered with Plaintiff's own protected parental interests, rather than merely leaving a preexisting danger unremedied. *Bright*, 443 F.3d at 281–84; *Burella*, 501 F.3d at 146–48; *Phillips*, 515 F.3d

at 235–42. Plaintiff does not attribute the preceding February 22 assault or the physical May 28 transportation to Edison officers. She alleges that their April intervention facilitated continuing interference before that transportation, with resulting injury and economic consequences requiring proof of causation. These distinctions require examination of the challenged affirmative acts and their consequences, not dismissal through the characterization of the entire encounter as discretionary non-enforcement. *Burella turned on the absence of any alleged affirmative act by the officers; it does not resolve whether officers' own affirmative communications or directions can support a state-created-danger claim, and it does not eliminate this separate inquiry into the officers' own affirmative exercise of authority.* Plaintiff asks the Court to apply the four state-created-danger elements to that particular conduct.

Separate from personal jurisdiction is whether Edison officers affirmatively exercised governmental authority to displace Plaintiff's protective efforts and impair her constitutionally protected parental relationship. That determination turns on the officers' knowledge, decisions, and resulting interference on April 22, not upon the retroactive application of the May 21 unlawful temporary custody disposition to avoid state government accountability.

**The Fourteenth Amendment protects Plaintiff’s fundamental liberty interest in the care, custody, and management of her child; temporary state custody does not, by itself, extinguish that parental interest**. *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982); *Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123, 1125–27 (3d Cir. 1997). That interest is not absolute and does not authorize Plaintiff to disregard lawful custody orders. The May 21, 2025 termination order, at printed page 1, states that temporary legal custody is granted to the maternal grandmother. Plaintiff challenges the jurisdictional foundation, procedural validity, lawful entry and service, and legal effect of that disposition; her challenge does not deny that the

document exists. More importantly, an order dated May 21 cannot retroactively determine whether Edison officers' affirmative conduct on April 22 violated Plaintiff's constitutionally protected parental interests or foreseeably increased A.N.'s vulnerability to an identified danger. The Court must examine the officers' knowledge, their exercise of governmental authority, and the resulting interference under the law and circumstances that applied when they acted, without presuming that later custody arrangements extinguished Plaintiff's constitutional protections or established the lawfulness of the earlier police response.

In *Nicini v. Morra*, 212 F.3d 798, 808–11 (3d Cir. 2000) (en banc), the Third Circuit recognized that a state's placement of a child in state-regulated foster care may create a special relationship imposing affirmative protective duties; the court did not thereby impose Pennsylvania DHS's duties automatically on every New Jersey officer who later encounters the child. Whether A.N. remained in state custody, what DHS and PPD knew, and what Edison was told are relevant to assessing each responsible actor's knowledge and acts.

At this stage Plaintiff is not required to prove an agreement. Her well-pleaded factual allegations are accepted as true, and she has identified the participants, the approximate times, the subject matter, and the governmental decisions that followed. Edison cannot convert the absence of discovery it controls, stayed by this Court's own order, into affirmative evidence that the communications Plaintiff identifies did not occur or were innocuous.

Plaintiff also preserves her allegation that the challenged interference affected her own Jewish religious practice and parental role in A.N.'s religious upbringing. A First Amendment free-exercise theory requires an actionable burden attributable to Edison and the applicable neutrality and general-applicability analysis; protected-class membership alone is not that showing. *Fulton v. City of Philadelphia*, 593 U.S. 522, 532–34 (2021). Plaintiff's parental-liberty

theory under the Fourteenth Amendment, her own free-exercise interest, and the discriminatory-purpose element of § 1985(3) must be assessed separately. She does not attribute Pennsylvania placement decisions to Edison without facts establishing Edison's own participation and municipal responsibility, and she does not surrender the religious-discrimination allegations by recognizing those distinct requirements.

The common-law maxim *ubi jus, ibi remedium—where there is a legal right, there is a legal remedy*—reflects the principle discussed in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). The maxim does not displace Rule 12, § 1983 elements, immunity, personal jurisdiction, or the distinction between Plaintiff's own claims and those belonging independently to A.N. Plaintiff advances her own claimed injury to the constitutionally protected parental relationship; Plaintiff asserts her own constitutionally protected parental-liberty claims in her own right; those claims are distinct from any independent claim belonging to A.N., and Plaintiff does not concede that they are barred by *Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 882–83 (3d Cir. 1991), or by any rule governing claims brought on a minor's behalf. Nothing in this paragraph surrenders the child's substantive rights. These limitations do not permit the challenged government actions to be declared lawful by default.

**B. Edison's Township Code Identifies the Municipal Police Policymaking Authority Relevant to Monell Liability.**

Section III.A identifies the constitutional deprivation. The municipal question is whether a Township policy, custom, or deliberately indifferent deficiency in training or supervision caused it. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Connick*, 563 U.S. 51; *Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019); *Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019). The record identified to date bears on four specific inquiries: what training and written instruction

governed Edison officers' enforcement of out-of-state protection orders, including the Attorney General's Guidelines, which direct that such an order be presumed valid when presented and that apparent defects be inquired into rather than treated as grounds for rejection, Guidelines § II.A, at 2; § II.A.2.d; whether the officers who responded at the residence on April 22 and the supervisor at the station had received that instruction; what the Township did upon receiving Plaintiff's July 15–16, 2025 written complaint, including its receipt, routing, review, and disposition, ECF No. 94-1 at 2, 10; and why the same supervisor was again involved in the July 20–21 encounter, at which Plaintiff's complaint was not properly documented and her papers were taken from her hand. Those facts are in Edison's possession, were identified in ECF No. 94 at 12–15, and are subject to the stay entered at ECF No. 115.

Plaintiff’s municipal theory does not rest on a single encounter. It rests instead on the written statewide instruction defining what officers were required to do; the departure from that instruction at the residence and again at the station on the same night; the Township's written notice in July; and the repetition of the same supervisor's conduct after that notice. If the Court concludes that further municipal specificity is required, Plaintiff requests leave under Rule 15(a)(2) to plead it, rather than a disposition treating the stayed records as proof that no municipal practice exists.

Edison argues a single officer's discretionary act cannot create *Monell* liability. ECF No. 93-1, pages 10–11 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986)). Plaintiff’s claim does not depend on Supervisor Esposito’s individual discretion. The Township Code identifies the municipal authority responsible for police governance: Section 2-27.1 provides that “any and all functions, duties or responsibilities which are assigned to the Director of Public Safety by this Code shall be assigned to the **Mayor**. The Mayor shall be designated as the ‘appropriate authority’ as provided by N.J.S.A. 40A:14-118. The Mayor shall promulgate and adopt such rules

and regulations of the government of the Division of Police and for the discipline of its members." Edison Township Code § 2-27.1 (Ord. No. O.1865-2014). Section 2-28.5 independently confirms that "the appropriate authority as established in this chapter, and in accordance with N.J.S.A. 40A:14-118, shall promulgate rules and regulations for the governance of the Police Division and for the discipline of its members." Edison Township Code § 2-28.5 (Ord. No. O.1865-2014). Section 2-28.4(b)(7) also assigns a police training function, and subsection (b)(8) identifies the Mayor as the authority for promulgating governing and disciplinary rules. These provisions place responsibility for the training, governance, and discipline of Edison's officers in one identified municipal authority. Whether the conduct alleged here resulted from that authority's policy, custom, training, supervision, or ratification is a question answered by records Edison holds. Edison's objection is not only that the relevant municipal records remain in its possession; it also disputes whether Plaintiff has identified a municipal policy, custom, or deliberately indifferent deficiency that caused a constitutional deprivation. The Township Code answers the distinct and necessary question of where final police-governance and disciplinary authority lies, but identifying the policymaker does not by itself establish an unconstitutional decision, policymaker notice, ratification, or municipal causation. *Santiago v. Warminster Township*, 629 F.3d 121, 134–35 & n.10 (3d Cir. 2010). Plaintiff identifies the April 22 official responses, the July 15–16 written complaint, and the later involvement of the same supervisor as the concrete factual sequence that requires examination. The requested training, incident-review, complaint-routing, and supervisory records bear on whether those events reflected an actionable municipal deficiency, whether a municipal decisionmaker received notice, and whether that deficiency caused the injuries described in Section III.A. Plaintiff relies on the pleaded and identified events as her factual foundation, not on an assumption that undisclosed records contain favorable evidence.

Plaintiff identifies the challenged municipal functions with specificity: the Township's training, supervision, and review of police responses to out-of-state domestic-violence protection orders and related reports involving potential violations of no-contact restrictions. New Jersey's statewide Attorney General guidelines and the *2022 Domestic Violence Procedures Manual* establish the published enforcement framework against which the alleged Edison responses must be evaluated. Plaintiff alleges deficient responses during the separate April 22 and July 20–21, 2025 encounters, including the alleged categorical rejection of the Pennsylvania PFA and the later refusal to document Plaintiff's complaint as requested. Those allegations identify the practices and training issues under examination; Those encounters are not isolated: the departure occurred at the residence and again at the station on the same night, and again in July, after written notice, involving the same supervisor. The officers' categorical statement that a Pennsylvania order was not valid in New Jersey remains relevant evidence on that inquiry, because it contradicts the specific instruction that New Jersey's Attorney *General Guidelines and the Domestic Violence Procedures Manual* direct every officer to receive concerning out-of-state protection orders. These allegations call for examination of the Township's actual training, implementation, supervision, and review practices, rather than an assumption that the existence of statewide guidance establishes Edison's compliance with it; the identified municipal records are material to those distinct inquiries.

Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978), the relevant constitutional deprivation must be attributable to municipal policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989), recognizes failure-to-train liability where the relevant inadequacy reflects deliberate indifference and causes the constitutional deprivation. The Third Circuit recognizes two distinct routes to municipal liability: an unconstitutional policy or custom

that causes the deprivation, and a failure or inadequacy in training, supervision, or discipline amounting to deliberate indifference; a plaintiff proceeding on the second route need not plead an unconstitutional policy at all. *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019). Plaintiff pleads both routes in the alternative, and each must be assessed under its own governing elements. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–800 (3d Cir. 2019), distinguishes the identification of a municipal practice from the additional requirement that it be causally connected to an actionable injury. The Edison Township Code identifies the municipal authority responsible for police governance and discipline, while the requested records would bear upon the content of the Township's actual training, incident-review, and supervisory practices. A ratification theory requires facts attributing approval of the challenged decision and its basis to an official with the relevant final authority; supervisory status or failure to respond alone does not supply that attribution. A training theory must connect an identified deficiency and deliberate indifference to the particular constitutional deprivation, rather than rely solely on the availability of a training program. Plaintiff seeks assessment of the particular allegations already pleaded and, if further municipal specificity is legally necessary, an opportunity to seek amendment under Rule 15 rather than treating the absence of presently stayed discovery as affirmative proof that no potentially relevant municipal practice exists.

The distinction recognized in *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019), is consequential here. Plaintiff does not rest municipal liability solely upon the proposition that an individual Edison officer incorrectly rejected an out-of-state protection order. Plaintiff challenges the Township's alleged deficiencies in training, supervision, complaint investigation, and enforcement practices concerning qualifying interstate protection orders and reports of violations involving protected persons. The New Jersey Attorney General's *Guidelines for the Enforcement*

*of Out-of-State Restraining Orders or Orders of Protection in Domestic Violence Cases*, the applicable statewide *crime-victim standards*, and the New Jersey *Domestic Violence Procedures Manual* identify the governing law-enforcement framework. Those materials define what every Edison officer was required to know and do when presented with an out-of-state protection order, and therefore define the training, supervision, and accountability the Township owed. Under *Forrest*, Plaintiff's policy-or-custom theory and her alternative failure-or-inadequacy theory must be analyzed according to their respective elements, rather than requiring proof of a formal unconstitutional policy as a prerequisite to both. The alleged April 22, 2025 rejection of the Pennsylvania PFA and the separate July 20–21, 2025 complaint-handling episode identify the challenged official responses. The municipal-liability inquiry must then address whether a qualifying Township policy, custom, or deliberately indifferent deficiency in training, supervision, or discipline caused an actionable constitutional deprivation. Plaintiff's theory is that Edison's repeated departure from that framework, by officers including the same supervisor, before and after written notice, reflects a deficiency in training and supervision that caused the deprivation described in Section III.A. Plaintiff requests evaluation of the allegations actually contained in the operative pleading, with legally appropriate consideration of curative amendment if the Court finds the municipal allegations insufficiently particularized.

The constitutional deprivation alleged in Section III.A must be connected to municipal responsibility, rather than attributed to the Township merely because its officers committed the challenged acts. *Forrest*, 930 F.3d at 105–06, and *Estate of Roman*, 914 F.3d at 798–800, recognize municipal liability arising from qualifying customs and deliberately indifferent deficiencies in training, supervision, or discipline. *Hightower v. City of Philadelphia*, 130 F.4th 352, 356–57 (3d Cir. 2025), makes clear that the absence of a policy, or an employee's failure to follow an existing

one, does not by itself establish municipal culpability; the failure must meet the deliberate-indifference standard and cause an independently actionable deprivation. *Miller v. City of Philadelphia*, 162 F.4th 88, 94–95 (3d Cir. 2025), applies that requirement at the pleading stage, rejecting generalized allegations unsupported by facts showing similar misconduct and municipal notice, and emphasizes that single-incident failure-to-train liability is exceptional. *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Connick v. Thompson*, 563 U.S. 51, 61–64 (2011).

Plaintiff's allegations concern an identified sequence, not a department-wide deficiency offered in the abstract. On April 22, 2025, Edison personnel disregarded the interstate-protection-order framework while exercising governmental authority during an emergency concerning A.N. The responding officers communicated with Bonilla, credited her representations, and directed Plaintiff away from the residence over her warnings and objections. That official intervention cost Plaintiff her opportunity to protect her daughter that night and forced the additional protective efforts that followed, including her report to the Philadelphia Police Department. ECF No. 28-1 at 21. Plaintiff then submitted her July 15–16 written complaint concerning the Edison response, ECF No. 94-1 at 2, 10, and was met during the July 20–21 station encounter by the same supervisor, who took her papers from her hand. These events identify the conduct and the resulting injuries for which municipal causation must be assessed, including the distress, physical consequences, time, and economic losses described in Plaintiff's sworn declaration to the extent attributable to Edison. ECF No. 17 at 25  at 9; *id.* at 27  para. 14.

The New Jersey Attorney General's interstate-protection-order Guidelines and the Domestic Violence Procedures Manual identify the governing instructions and the precise subject of the municipal training and supervisory inquiry. Their existence supports examination of what Edison personnel were instructed to do, what training was actually provided, and why the official

departures occurred; it does not by itself establish that Edison failed to provide that training. The July written complaint bears on notice and supervision as to the conduct that followed it, but it cannot retroactively supply municipal notice before April 22. Whether an authorized decisionmaker received or reviewed the complaint, whether the Township failed to correct a known or obvious risk, and whether the July conduct resulted from the same deficiency are questions the identified records will answer. If the Court finds the municipal allegations insufficiently particularized but curable, Plaintiff requests leave under Rule 15(a)(2), without treating the discovery stay as proof either of liability or of the absence of any municipal deficiency.

**C. The Targeted Requests in ECF No. 94 and the Later Stay.**

On September 9, 2026, Plaintiff moved to compel ten requests for Edison records, set forth in Attachment A to ECF No. 94, pages 12–15, targeting exactly the events described above: the complete CAD record for CAD No. 25042401, including, per Plaintiff's account of statements attributed to Supervisor Esposito in Statement of Facts § C, all linked event or incident numbers, supplements, and audit history consolidated under that record; all CAD, RMS, dispatch, radio, telephone, station, and body-worn-camera records concerning the April 22, 2025 contact at Alla Izrailova's Edison residence and any request to verify or enforce PFA No. 2503-V-7369; all records of the July 20–21, 2025 station encounter involving Supervisor Esposito and Officer Shammy; every database query or verification concerning the PFA; and every interagency communication between Edison and the Philadelphia Police Department, Philadelphia DHS, CUA3/El Concilio, New Jersey DCPP, Torrance Police, Bonilla, or Izrailova. ECF No. 94, pages 12–15. Nineteen days later, on September 28, 2026, the Court stayed discovery pending the motions to dismiss. ECF No. 115. Plaintiff's motion sought court-ordered production under Rules 26(d)(1) and 26(d)(3). ECF No. 94 at 3 expressly disclaimed any claim that an expired Rule 34 response

deadline had been violated. This Court denied the motion as premature, noting the freestanding preservation duty imposed by the Federal Rules. ECF No. 104 at 1 n.1. ECF Nos. 104 and 115 govern production; an unresolved discovery request does not bar a Rule 12(b)(6) motion, establish noncompliance, or supply missing allegations. Plaintiff seeks the separately justified and narrowly limited jurisdictional inquiry described in Section II, with express relief from the stay before discovery proceeds. The preservation obligation and the right to obtain production are distinct.

**D. Edison's Own Footnote Cites a Case That Does Not Hold What Edison Says It Holds.**

Edison invokes *Poluhovich v. Pellerano*, 373 N.J. Super. 319 (App. Div. 2004), to suggest that interstate custody procedures deprived its officers of authority to act. ECF No. 93-1 at 10 n.4. Edison offers it in response to Plaintiff's allegation that an existing Georgia custody order governed and that the Pennsylvania family court modified another State's custody determination without first making the jurisdictional findings the UCCJEA requires; *Poluhovich* does not address, let alone defeat, that allegation. But *Poluhovich* concerned judicial jurisdiction over a custody dispute under New Jersey's former Uniform Child Custody Jurisdiction Act. It did not determine municipal police obligations under 18 U.S.C. § 2265, address enforcement of a sister-state domestic-violence protection order, or establish an exemption from federal full-faith-and-credit requirements. The jurisdiction of a court to adjudicate custody and the obligation of police officers to recognize and evaluate an existing protection order are legally distinct. Edison's reliance on *Poluhovich* therefore does not answer Plaintiff's claim that officers disregarded the PFA and affirmatively facilitated Bonilla's interference during a reported emergency.

Edison's reliance on *Poluhovich* also requires attention to the statutes governing the distinct protective functions at issue. N.J.S.A. § 2A:34-85 does not eliminate law-enforcement authority whenever a custody dispute touches another jurisdiction. Subsection (a) addresses judicial

warrants to take physical custody, while subsections (f) and (g) separately authorize a law-enforcement officer, after a temporary or permanent custody or visitation order has issued, to take a child into protective custody upon reasonable cause to believe that a person is likely to flee the State with the child or otherwise evade the jurisdiction of New Jersey courts. Those provisions carry their own prerequisites, and Plaintiff does not contend that they required officers to place A.N. with her on April 22. They do defeat the undifferentiated proposition that New Jersey law left officers without protective authority except on the particular showing Edison identifies.

More fundamentally, authority to determine or modify custody is distinct from the statutory duties governing qualifying protection orders. Congress requires interstate recognition and enforcement of qualifying orders by courts and law-enforcement personnel, 18 U.S.C. § 2265(a), subject to subsection (b)'s jurisdiction and notice requirements, and removes registration as a prerequisite, *id.* § 2265(d)(2). New Jersey's domestic-violence enforcement provisions, including N.J.S.A. § 2C:25-31, address law-enforcement action when their predicates are met. Plaintiff does not contend that those statutes automatically established grounds for arrest, authorized disregard of an operative custody determination, or created a federal damages remedy. Her allegation is that Edison personnel were required to evaluate the protection order and the reported emergency under the applicable law, rather than categorically reject a Pennsylvania order while exercising governmental authority in a manner that facilitated the restrained person's interference and impaired Plaintiff's protective efforts. A judicial custody-jurisdiction decision does not resolve that allegation.

**IV. PLAINTIFF'S §§ 1985 AND 1986 CLAIMS ARE NOT DEFEATED BY EDISON'S MOTION.**

**A. Edison Acknowledges Protected-Class Membership but Disputes Discriminatory Purpose.**

Edison's own brief concedes that Plaintiff's pleaded facts concerning her Jewish faith and her efforts to maintain A.N.'s religious upbringing "likely satisfy the pleading requirements to indicate she is a member of a protected class." ECF No. 93-1, page 12. *Farber v. City of Paterson*, 440 F.3d 131, 134–35 (3d Cir. 2006), and *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), require a qualifying agreement, class-based invidiously discriminatory purpose, an act in furtherance, and resulting injury or deprivation. Membership in an identifiable class is separate from discriminatory motivation attributable to Edison. The derivative § 1986 claim under *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994), rises or falls with that showing.

**B. Knowledge, Participation, and Agreement Are Different Showings, and Edison's Conduct Satisfies More Than Mere Knowledge.**

The rights the alleged agreement targeted are identified by constitutional text: Plaintiff's Fourteenth Amendment liberty in the care and protection of her child, and her free exercise of religion in A.N.'s upbringing. U.S. Const. amends. I, XIV. That text identifies what was at stake. It does not supply the agreement, the class-based discriminatory purpose, or the overt act that 42 U.S.C. § 1985(3) separately requires. The facts Plaintiff identifies as bearing on agreement are specific: the responding officers' communications with Bonilla on April 22 while Bonilla was absent from the scene; Supervisor Esposito's statement that same night that he was going to call the Philadelphia Police Department, his request for the 15th District's telephone number, and his statement after a lengthy call that nothing could be done; his telephone call to the Philadelphia

Police Department during the July 20–21 encounter while holding Plaintiff's papers; and the interagency communications among Edison, Philadelphia DHS, CUA3/El Concilio, the Philadelphia Police Department, and New Jersey DCPP that Plaintiff identified for production. ECF No. 94 at 12–15. Whether those communications reflect an agreement, and with what purpose, is what the identified records will show.

A § 1985(3) conspiracy claim requires more than parallel conduct by independent actors; it requires an agreement, or conduct from which an agreement may reasonably be inferred. Three distinct propositions are at issue here, and they carry different evidentiary weight: that Edison knew of the Pennsylvania PFA and the underlying facts; that Edison affirmatively participated in defeating its purpose; and that Edison agreed with Bonilla, Izrailova, or the Pennsylvania-based actors to do so. Edison's conduct reaches beyond mere knowledge. A private party who willfully participates in joint action with a state actor to deprive a person of a constitutional right acts under color of law for § 1983 purposes, and that joint-action framework informs the overt-act showing required here. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Edison's own officers told Plaintiff, falsely, that her Pennsylvania order could not be enforced against Bonilla — the named respondent then in contact with the people Edison was dispatched to protect — and Plaintiff reports that Edison later confirmed Bonilla's address in Torrance, California as A.N.'s location without taking further protective action. *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), concerns affirmative police assistance in a private property deprivation. The relevant proposed analogy is the alleged official facilitation of Bonilla's asserted authority, not a claim that inaccurate enforcement advice alone escapes *Burella* or *Castle Rock*. Plaintiff relies on the alleged April 22 officer–Bonilla interaction and affirmative conduct, not on Edison's nonproduction of discovery, as the alleged acts requiring assessment. The Court denied ECF No. 94 as premature and later stayed discovery at ECF No.

115; nonproduction under those orders is not independent evidence of an agreement or an overt act in furtherance of conspiracy. Plaintiff must establish a plausible agreement and the additional elements of § 1985(3) through facts attributable to the participants. Plaintiff also preserves the following allegations as context, without treating their similarity as independent proof of agreement: Plaintiff's prior ECF filings describe officers from three separate agencies — the Philadelphia Police Department, the Edison Township Police Department, and the Torrance Police Department — each of whom, Plaintiff reports, told her that the Pennsylvania PFA was not applicable or could not be enforced. The Edison statement appears in ECF No. 28-1, page 21. The significance of the April 22 encounter is not merely that separate agencies allegedly misstated the same federal law. Plaintiff identifies a specific interaction between Edison officers and Bonilla during an ongoing child-safety incident. Bonilla was not physically present; nevertheless, Plaintiff alleges that responding officers communicated with her, treated her representations as authoritative concerning A.N., and disregarded Plaintiff's objections after being informed of the existing PFA. These circumstances identify the participants, approximate time, subject matter, and alleged conduct from which Plaintiff seeks to establish coordinated action. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010), requires sufficiently specific facts supporting a plausible inference of agreement and affirmed rejection of a proposed conspiracy pleading that lacked them; Plaintiff relies on her identified officer–Bonilla allegations, not the mere existence of interagency communication or parallel conduct. To establish liability under § 1985(3), the evidence must additionally support the requisite class-based discriminatory purpose. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Farber v. City of Paterson*, 440 F.3d 131, 134–36 (3d Cir. 2006).

The discriminatory-purpose element is independently governed by *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971), and *Farber v. City of Paterson*, 440 F.3d 131, 134–36 (3d Cir. 2006). Edison's acknowledgment of Plaintiff's Jewish religious identity addresses the existence of an identifiable class; it does not itself establish that the responding officers acted with invidiously discriminatory animus because of that identity. Plaintiff preserves her allegations of religious discrimination and the causal connection between the alleged agreement and protected-class animus is supported by the specific factual circumstances attributable to the participants identified in this memorandum. The Attorney General's guidelines, the *2022 Domestic Violence Procedures Manual*, and 18 U.S.C. § 2265 establish the governing framework for evaluating the officers' alleged treatment of the protection order. They do not, by themselves, establish discriminatory motivation.

Plaintiff separately preserves the statutory elements of 42 U.S.C. § 1986. Under *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994), liability requires actual knowledge of a qualifying § 1985 conspiracy, together with the statutory ability to prevent or aid in preventing the wrongful act and the requisite neglect or refusal. Notice of the PFA and knowledge of 18 U.S.C. § 2265 cannot be substituted for actual knowledge of such a conspiracy. The specific April 22 communications are relevant to evaluating what the officers knew and whether a coordinated wrongful act was contemplated, but Plaintiff does not represent that the unproduced recordings conclusively establish the statutory knowledge element. Plaintiff requests that any perceived deficiency in the operative pleading be evaluated under Rule 12(b)(6), with an opportunity to seek curative amendment under Rule 15(a)(2) where amendment would be legally permissible, rather than imputing facts to Edison without supporting allegations.

Edison's actual § 1986 argument is pleading sufficiency, principally knowledge of an actionable § 1985 conspiracy, which the preceding paragraph answers under *Clark*. Edison raises no limitations defense. Plaintiff addresses timeliness only so that the pleading history is accurately before the Court: the § 1986 claim cannot be measured from ECF No. 21 alone. The verified pleading received by the Clerk on January 29, 2026 and docketed as ECF No. 8 names Edison Township Police Department among the defendants and pleads Count III under 42 U.S.C. § 1986. This Court's Order of January 30, 2026 identifies that filing as the "Amended Complaint (ECF No. 8)," ECF No. 9 at 1, and ECF No. 129 confirms that ECF Nos. 2 and 8 are access-restricted, not sealed. Both the April 22 and July 20–21, 2025 encounters fall within one year of January 29, 2026. Limitations is an affirmative defense that Edison would bear the burden to plead and prove. Nor may Edison treat the complaint as filed on January 28, 2026 for purposes of its own Rule 4(m) computation, ECF No. 93-1 at 15, while treating the same pleadings as unfiled for limitations purposes. To the extent ECF No. 20 at 3 n.4 bears on the filing date, *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996), treats a complaint as constructively filed upon receipt by the Clerk once the fee requirement is satisfied, as it was on May 1, 2026. ECF No. 23. Whether ECF No. 8's allegations attribute each § 1986 element to Edison, and that pleading's status under the Court's operative-pleading orders, are separate questions that require examination of its actual text rather than measuring timeliness exclusively from the later ECF No. 21.

If relation back becomes necessary, the governing inquiry under Federal Rule of Civil Procedure 15(c)(1)(B) is whether the amendment asserts a claim arising from conduct, transactions, or occurrences set out, or attempted to be set out, in the original pleading. Plaintiff maintains that ECF Nos. 2 and 8 identified the underlying protective-order controversy and asserted claims arising from the conduct of Edison police personnel. ECF No. 8 expressly names

the Edison Township Police Department and pleads Count III under 42 U.S.C. § 1986. Thus, Plaintiff's position does not depend exclusively upon a later pleading to establish that Edison-related conduct and the statutory claim were previously presented.

ECF No. 2-1 at pages 21–22 further contains Plaintiff's July 31, 2025 written request addressed and hand delivered to the Edison Police Department and the Philadelphia Police Department. That contemporaneous writing describes the Pennsylvania Final Protection From Abuse Order, the April 22, 2025 encounter, and subsequent Edison police conduct during July 2025. Plaintiff relies on the document for its actual contents and its presence among the materials originally submitted to the Court. Plaintiff does not contend that the mere attachment of an evidentiary narrative automatically transforms every statement into an operative pleading allegation. Federal Rule of Civil Procedure 10(c) incorporates qualifying written instruments; *Rose v. Bartle*, 871 F.2d 331, 339–40 n.3 (3d Cir. 1989), distinguishes such instruments from affidavits or other evidentiary narratives. The effect of ECF No. 2-1 must therefore be assessed together with the allegations actually contained in ECF Nos. 2 and 8, not as a substitute for those pleadings.

Under *Glover v. FDIC*, 698 F.3d 139, 145–47 (3d Cir. 2012), and *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), relation back turns on the factual relationship between the original and later allegations and whether the original pleading afforded the notice required by Rule 15(c). Plaintiff maintains that later factual particulars concerning the same identified Edison encounters amplify the previously asserted controversy rather than introduce an unrelated transaction. Whether an amendment adds a claim, corrects a party's designation, or substitutes a legally distinct party must nevertheless be determined from the authentic pleadings and the actual amendment history.

If naming Edison Township rather than the Edison Township Police Department[3] constitutes a change of party, the separate requirements of Rule 15(c)(1)(C) must also be addressed, including the prospective defendant's timely notice without prejudice and its knowledge, or reason to know, that the action would have been brought against it but for a mistake concerning the proper party's identity. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548–54 (2010). The applicable notice period must be calculated under Rule 4(m), subject to any legally effective extension and the distinction recognized in *Moore v. Walton*, 96 F.4th 616, 623–27 (3d Cir. 2024). The document addressed to Edison in ECF No. 2-1 is not, merely by having been attached to a federal pleading, independent proof of when the Township actually received notice. Plaintiff relies separately on the service, correspondence, and appearance record discussed in Argument I.

Accordingly, Plaintiff requests that the Court examine the original pleadings, the actual party-identification history, and the documented notice record before resolving any relation-back question. This argument does not concede that relation back is required where a claim was already timely asserted against the legally relevant defendant, nor does it abandon Plaintiff's request for leave to cure any legally remediable pleading deficiency under Rule 15(a)(2).

Edison may contend that an agreement among its own officers is legally impossible. The Supreme Court has described the intra-corporate-conspiracy doctrine as providing that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy," and has expressly declined to approve or disapprove its application to § 1985(3), noting "a division in the courts of appeals" on that question. *Ziglar v.*

[3] In which Plaintiff has known to call since her childhood. Edison and Highland Park is where Plaintiff calls "home" Middlesex county is the "heart" of NJ. Edison PD and its municipal plaza, was a place where more than several of her childhood friends/classmates were employed.

*Abbasi*, 582 U.S. 120 (2017). The Third Circuit addressed the doctrine in the attorney-client context and recorded the same division. *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999). Plaintiff's alleged agreement is not confined to communications among employees of a single municipal entity. It includes alleged participation by Bonilla, a private individual, and by persons associated with distinct governmental entities, so it falls outside an asserted agreement solely among agents of one entity; the agreement itself, the required discriminatory purpose, and an act in furtherance must still be supported by particularized allegations rather than inferred from organizational relationships or communications alone. It concerns communications between Edison personnel and persons outside Edison: Anjelique Bonilla, a private individual restrained by the order; the Philadelphia Police Department; and the other agencies identified in ECF No. 94 at 12–15. Neither decision supplies the agreement, class-based purpose, or overt act that § 1985(3) separately requires, and Plaintiff relies on them only to answer the intra-corporate objection.

Section 1985(3). The claim requires a conspiracy; for the purpose of depriving a person or class of the equal protection of the laws or of equal privileges and immunities, motivated by class-based discriminatory animus; an act in furtherance; and resulting injury or deprivation of a federal right. *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Farber v. City of Paterson*, 440 F.3d 131 (3d Cir. 2006); 42 U.S.C. § 1985(3). Applied here: the alleged participants and communications are those identified above; the protected class is the one Edison itself acknowledges, as discussed in Section IV.A; the acts in furtherance are the April 22 officers' crediting of the restrained person's directions and their removal of Plaintiff from the residence, the station refusal that same night, and the July refusal to document her complaint and the taking of her papers; and the resulting injuries are those set out in Section IX. Whether the communications reflect an agreement driven by the

required purpose is the question the identified records will answer, and Plaintiff does not ask the Court to presume it.

Section 1986. The claim imposes a distinct, derivative obligation on a person who has actual knowledge that a wrong conspired to be done under § 1985 is about to be committed, has the power to prevent or aid in preventing it, and neglects or refuses to do so, where the wrongful act is then committed and could have been prevented by reasonable diligence. 42 U.S.C. § 1986; *Clark v. Clabaugh*, 20 F.3d 1290, 1295–98 (3d Cir. 1994). The statute requires more than notice of an existing protection order or general awareness that a child faces danger. It requires knowledge of the contemplated conspiratorial wrong, together with the legal ability to intervene.

Plaintiff alleges that the April 22 officers communicated with Bonilla during the protective emergency, treated her representations as authoritative, and then exercised governmental authority in a manner that interfered with Plaintiff's protective efforts. She separately identifies Supervisor Esposito's contacts concerning the Pennsylvania order, after he had held that order in his hands and heard 18 U.S.C. § 2265 read aloud, and his later role in the July complaint encounter. Whether those communications conveyed knowledge of an actionable conspiracy, whether a qualifying defendant had the power to prevent the contemplated wrong, and whether the failure to act caused preventable injury must be assessed on the specific allegations and competent evidence. Plaintiff does not equate knowledge of the order with the separate knowledge element *Clark* requires.

Section 1986 carries a one-year limitations period. 42 U.S.C. § 1986. Plaintiff preserves her position that the Edison-related § 1986 claim was first asserted in ECF No. 8, filed January 29, 2026, which names the Edison Township Police Department and pleads Count III under 42 U.S.C. § 1986. ECF No. 8 at 2, 12–13. Any limitations, party-identification, or relation-back question must be examined against the authentic filing and notice chronology developed in this

memorandum, including the alternative transfer request that preserves the original federal filing date. The statutory elements and the timeliness inquiry are distinct, and Plaintiff requests adjudication under the correct requirements, with an opportunity to seek a fact-supported amendment where legally available.

## V. YOUNGER ABSTENTION DOES NOT APPLY.

Edison's invocation of *Younger v. Harris*, 401 U.S. 37 (1971), requires identification of an actual ongoing state proceeding within the exceptional categories recognized in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78–81 (2013), and a determination that the particular federal relief would interfere with that proceeding. An important state interest or the existence of related custody litigation is insufficient by itself. Edison's reliance on *Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017), and *Borowski v. Kean University*, 68 F.4th 844 (3d Cir. 2023), does not dispense with *Sprint*'s threshold requirements. *Hamilton* expressly identified the error of applying the *Middlesex* considerations without first determining whether a proceeding falls within a recognized *Younger* category. *Borowski* likewise requires a qualifying proceeding that was ongoing when the federal action commenced and confirms that damages claims cannot simply be dismissed on abstention grounds. *Moore v. Sims*, 442 U.S. 415 (1979), recognizes that qualifying state-initiated child-protection proceedings may warrant abstention; *Lazaridis v. Wehmer*, 591 F.3d 666 (3d Cir. 2010), and the nonprecedential *McDaniels v. New Jersey Division of Youth & Family Services*, 144 F. App'x 213 (3d Cir. 2005), do not dispense with *Sprint*'s threshold inquiry. Plaintiff's filed account identifies the May 21, 2025 closure of the Philadelphia dependency proceeding. ECF No. 17 at 9. Edison also asserts that related child-welfare and PFA matters remain ongoing. Edison must therefore identify the particular proceeding allegedly pending when this

federal action commenced, its qualifying character, Plaintiff's participation, and the precise interference it contends adjudication of the Edison claims would cause.

That proceeding-specific inquiry is reinforced by *Malhan v. Secretary United States Department of State*, 938 F.3d 453, 462–65 (3d Cir. 2019), and *Borowski v. Kean University*, 68 F.4th 844, 849–55 (3d Cir. 2023). *Malhan* rejects the assumption that family litigation qualifies for *Younger* abstention merely because the State has a substantial interest in domestic relations. *Borowski* requires a proceeding within the exceptional categories identified in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77–82 (2013), before the *Middlesex* factors are reached. Those authorities require identification of the particular state proceeding, its initiating and enforcement character, its status when this action began, and the federal relief alleged to interfere with it.

Plaintiff does not concede that any Pennsylvania proceeding within the Sprint categories is pending or that the claims against Edison seek to enjoin one. Her contention is that the claims against Edison concern completed police conduct and independently alleged constitutional injuries, including official interference with her efforts to protect A.N., not a request that this Court review a state custody decree. Even if abstention were appropriate as to particular equitable relief, a damages claim that cannot be adjudicated in the state proceeding may not be dismissed on that basis. *Deakins v. Monaghan*, 484 U.S. 193, 202 & n.6 (1988); *Borowski*, 68 F.4th at 855. The Court must therefore distinguish the Edison claims and the remedies sought before applying abstention to the action as a whole.

The Third Circuit's precedential decision in *National Shooting Sports Foundation v. Attorney General of New Jersey*, No. 25-2546, slip op. at 17–23 (3d Cir. Sept. 8, 2026), reinforces that party identity and actual interference cannot be replaced by subject-matter overlap, subject to

the recognized exception for sufficiently closely related parties. Plaintiff acknowledges her participation in certain Pennsylvania proceedings but seeks adjudication of completed Edison police conduct, not appellate review or modification of a state custody judgment through this opposition. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), does not extend the diversity-jurisdiction domestic-relations exception to bar independent federal-question claims. If the Court identifies a qualifying proceeding and concludes abstention applies to particular equitable relief, it must separately address damages claims that cannot be redressed in that proceeding under *Deakins v. Monaghan*, 484 U.S. 193, 202 & n.6 (1988), rather than order an undifferentiated dismissal with prejudice.

## VI. THE PROPOSED ORDER (ECF NO. 93-2) IMPROPERLY SEEKS ONE DISPOSITION FOR FOUR DIFFERENT GROUNDS.

A Rule 12(b)(2) dismissal is not a merits adjudication and is ordinarily **without prejudice.** A Rule 4(m)/12(b)(5) dismissal is, by rule, **without prejudice** or an order for proper service, not a with-prejudice disposition. *Where Younger* requires deferral and damages claims cannot be redressed in the **state** proceeding, *Deakins* requires their retention and a stay. Edison's proposed order asks this Court to skip all of these distinctions and dismiss everything, on every ground, with prejudice. The Court should instead resolve each asserted ground under its governing standard and enter a disposition appropriate to that ground.

## VII. PLAINTIFF'S PRO SE STATUS REQUIRES LIBERAL CONSTRUCTION OF HER FILINGS — IT DOES NOT EXCUSE EDISON'S COUNSEL FROM ACCURATE ONES.

Plaintiff's pro se pleadings must be liberally construed under *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), consistently with the

plausibility requirements of *Twombly* and *Iqbal* and the procedural obligations recognized in *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Those limitations do not authorize Edison to misidentify the controlling filings or substitute inaccurate docket descriptions for the documents themselves.[4]

## VIII. EDISON'S DOCUMENTED RECORD-CITATION ERRORS MUST BE EVALUATED AGAINST THE COURT'S ACTUAL DOCKET AND SERVICE EVIDENCE.

Federal Rule of Civil Procedure 11(b) requires counsel to ensure that factual representations to this Court have evidentiary support following reasonable inquiry. Plaintiff identifies two concrete citation defects[5] in ECF No. 93-1 at 15. First, Edison identifies ECF No. 1 as Plaintiff's original complaint, although this Court's Order at ECF No. 13 at 1 identifies that filing as the application to proceed in forma pauperis. Second, Edison cites the May 1, 2026 court-receipt notation on ECF No. 21 in connection with its claimed May 26 receipt of service, although a stamp establishing when the Court received a pleading does not establish when Edison Township received the separate service package. The actual mailing and delivery evidence appears in ECF Nos. 29-2, 31, 31-1, and 78.

These are identifiable documentary discrepancies, not differences in legal opinion. Plaintiff requests that the Court evaluate the challenged representations against the cited records and decline to attribute evidentiary significance to entries that do not establish the propositions for which they are offered. The underlying litigation concerns Plaintiff's efforts to protect her minor child following a reported sexual assault while in state-arranged custody. Accurate treatment of the

---

[4] Counsel should read Judge Kenney's own POLICIES AND PROCEDURES FOR COUNSEL for that reason. Last updated version is fairly recent.

[5] Refer to n.4 (extra emphasis added).

evidence, protective orders, and procedural history is indispensable to a fair determination. Plaintiff seeks the reasonable inquiry, record accuracy, and professional treatment required in federal litigation, without requesting an unsupported finding of intentional misconduct.

## IX. PLAINTIFF'S STATED INJURIES, CAUSATION, AND LEGALLY AVAILABLE REMEDIES UNDER FEDERAL RULES OF CIVIL PROCEDURE 8(a)(3) AND 54(c).

Defendant's request for dismissal under Rule 12(b)(6) must not conflate the sufficiency of Plaintiff's constitutional claims with the separate evidentiary burden of establishing the monetary value of her injuries. Federal Rule of Civil Procedure 8(a)(3) requires a demand for the relief sought; it does not require Plaintiff to calculate and prove the full amount of compensatory damages before discovery or trial. Rule 54(c), subject to its express exception concerning default judgments, further recognizes that final relief is governed by the relief to which a party is legally entitled, not solely by the terminology of the demand for judgment. Neither rule excuses a failure to state an actionable claim, but neither permits dismissal merely because the precise monetary value of an otherwise legally cognizable injury has not yet been established.

Plaintiff seeks relief for injuries attributable to Edison's own alleged conduct, distinct from the earlier removal and sexual assault. Plaintiff alleges that the April 22 officers' affirmative reliance on Bonilla's disputed authority impaired Plaintiff's immediate efforts to protect her daughter, undermined the temporary protective arrangement in New Jersey, and increased the identified danger of continuing interference. During the separate July 20–21 encounter, Plaintiff alleges that Supervisor Esposito physically took her legal papers over her express objection before returning them, while officers failed to properly document her complaint. Plaintiff identifies interference with her protected parental interests, resulting distress, additional travel and

expenditures, lost earning opportunities, and other provable losses. These claimed injuries must be assessed according to the constitutional deprivation and causal responsibility attributable to Edison, without assigning to the Township injuries independently caused by other defendants.

The deprivations alleged above produced consequences Plaintiff has stated under oath. She has sworn that these events caused her "a significant amount of stress, trauma, grief, loss of weight, financial hardship and physical distress," and that "[e]very time I have to draft motions for court, I have to keep reliving this trauma, which causes significant amount of stress and grief." ECF No. 17 at 27 para. 14. When she learned her daughter had been assaulted, "[a]ll Plaintiff wanted to do was comfort, love and be with her child," and she was "denied all access to medical records and prevented from participating in any follow-up care decisions for A.N." *Id.* at 25 para. 9. As to A.N., Plaintiff has sworn that her daughter missed six months of school and did not graduate seventh grade, and that since removal she has been enrolled in a secular public school, "denied all kosher food, denied Shabbat and Holy day observance, and compelled to celebrate non-Jewish holidays." *Id.* at 27 para. 13.

Plaintiff attributes to Edison what Edison's own conduct caused: the loss of her ability to reach and protect her daughter on the night of April 22 while the restrained person's involvement continued; the travel, time, and second police report that same night into April 23 at the Philadelphia Police Department's 15th District; the continuation of prohibited interference in the period that followed; the burden of a complaint she put in writing and then had to repeat in person, which ended with her papers taken from her hand; and her share of the distress, physical consequences, and economic losses described above, to the extent proof establishes that Edison's conduct caused or aggravated them. Edison officers did not commit the February 22, 2025 assault

and did not transport A.N. to California on May 28, 2025, and Plaintiff does not ask this Court to hold Edison answerable for either.

The July 20–21 taking of Plaintiff's legal papers from her hand, over her express objection, is conduct the Fourth Amendment addresses in its own terms, securing the right of the people to be secure in their “papers” against unreasonable seizures. U.S. Const. amend. IV. An opposition brief does not amend the operative pleading. If the Court finds that the operative pleading does not fairly present a Fourth Amendment claim based on that conduct, Plaintiff requests leave under Rule 15(a)(2) to plead it.

Plaintiff also seeks recognition of the economic consequences directly attributable to actionable conduct by Edison personnel, to the extent such losses are supported by evidence and encompassed by the operative pleading. Such consequences may include documented transportation expenses, identifiable lost earning opportunities, and other actual expenditures incurred in responding to the particular police encounters. Plaintiff does not request that this Court presume an amount of financial loss, attribute expenses caused by other defendants to Edison, or award damages unsupported by proof. Nor does Plaintiff contend that the ordinary cost of prosecuting a federal action automatically constitutes compensatory damages.

The Supreme Court has established that the purpose of compensatory damages under 42 U.S.C. § 1983 is to redress actual injury caused by the deprivation of federal rights. *Carey v. Piphus*, 435 U.S. 247, 254–64 (1978). Mental, psychological and emotional distress resulting from an actionable constitutional deprivation and separation may be compensable when causation and actual injury are established. *Id.* at 263–64. Where a procedural-due-process violation is established without proof of compensable injury, nominal damages may nevertheless be appropriate. *Id.* at 266–67. Separately, municipal liability requires that the asserted deprivation be

attributable to the Township under the applicable requirements of *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978).

A plaintiff's own sworn account of emotional and physical distress may support compensatory damages under § 1983 without expert or medical testimony in every case. *Bolden v. Southeastern Pennsylvania Transportation Authority*, 21 F.3d 29 (3d Cir. 1994). That account must still establish actual injury caused by the deprivation, not the deprivation alone. *Spence v. Board of Education of Christina School District*, 806 F.2d 1198, 1201 (3d Cir. 1986). Plaintiff's sworn statements at ECF No. 17 at 25 and 27 are specific, contemporaneous, and tied to identified events, and they are the evidence on which these damages will be proved.

Accordingly, Plaintiff respectfully requests that this Court reject any argument equating the absence of a finalized monetary damages calculation with the absence of a legally cognizable injury; evaluate Edison's conduct and the resulting injuries under the applicable constitutional and municipal-liability standards; deny dismissal of claims sufficiently stated in the operative pleading; and preserve consideration of legally available relief upon the appropriate evidentiary showing.

Plaintiff preserves all remedies legally available under the operative pleading and the applicable causes of action, including compensatory damages, appropriate prospective and declaratory relief, nominal damages where authorized, and recoverable costs and fees to the extent permitted by law. Plaintiff affirmatively seeks punitive damages against each defendant sued in an individual capacity within the operative pleading whose conduct is shown to have been motivated by evil motive or intent, or to involve reckless or callous indifference to her federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Such damages are never awarded as of right. *Id.* at 52. Plaintiff preserves punitive-damages claims against all defendants and in capacities for which

such relief is legally available, and does not waive legally available claims or remedies against other defendants individually, and does not enlarge the claims contained in the operative pleading.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant the following relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

First, **DENY** Defendant Township of Edison's Motion to Dismiss (ECF No. 93) in its entirety, including its objections concerning personal jurisdiction, service, the sufficiency of Plaintiff's federal civil-rights claims, and *Younger* abstention.

Plaintiff separately preserves her August 26, 2026 request for Clerk's entry of default, ECF No. 78. She asks that its status and supporting service record be addressed under Rule 55(a) on its own record and under the applicable requirements of Rule 55(a). This opposition does not represent that default has been entered, that later litigation automatically cures earlier service questions, or that an extension necessarily decides the separate default application. ECF No. 94's statement that Plaintiff was not challenging the extension through that discovery motion does not negate the distinct positions stated in ECF No. 78.

Second, alternatively, if the Court determines that service was untimely or deficient, **extend** the time for proper service pursuant to Fed. R. Civ. P. 4(m), upon a finding of good cause or, independently, through the Court's discretionary authority recognized in *Petrucelli v. Bohringer*

*& Ratzinger, GmbH*, 46 F.3d 1298, 1305–06 (3d Cir. 1995), and permit any corrective service within a period specified by the Court.

Third, alternatively, if the Court determines that the current competent evidence does not permit resolution of specific personal jurisdiction over Edison, defer the Rule 12(b)(2) determination and permit narrowly tailored jurisdictional discovery concerning the identified April 22 and July 20–21, 2025 communications between Edison personnel and Pennsylvania governmental participants, subject to a correspondingly limited modification or clarification of the discovery stay entered at ECF No. 115. See *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456–58 (3d Cir. 2003). Plaintiff requests that the inquiry proceed in sequence: first, nonprivileged call-routing, CAD, and dispatch records sufficient to identify the relevant communications and participants; then the associated substantive recordings where that initial identification establishes their jurisdictional relevance. Within that limited scope, Plaintiff further requests confirmation of the preservation obligations recognized in ECF No. 104 at 1 n.1 as to the identified April 22 and July 20–21, 2025 records; authorization of narrowly drawn Rule 45 subpoenas confined to those communications; sworn identification by Edison of any responsive record that is missing, withheld, altered, or unproduced; and, if the jurisdictional facts remain disputed after that showing, an evidentiary hearing under Fed. R. Civ. P. 12(i). Plaintiff seeks these measures through express judicial authorization, consistent with the existing stay and the Court's disposition of ECF No. 94, not as a declaration that the outstanding records have already been produced or that the stay has been lifted.

Fourth, alternatively, to the extent the Court finds any claim insufficiently pleaded, and without conceding deficiency, permit Plaintiff to seek amendment pursuant to Fed. R. Civ. P.

15(a)(2), rather than dismissing with prejudice where amendment would not be futile or inequitable. See *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108, 111 (3d Cir. 2002).

Fifth, alternatively, and only if the Court determines that personal jurisdiction over Edison Township is lacking after addressing Plaintiff's request for jurisdictional discovery, Plaintiff requests that the Court sever the claims against Edison alone pursuant to Federal Rule of Civil Procedure 21 and transfer those claims to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1631, upon finding that the transferred action could have been brought in that district when filed and that transfer serves the interest of justice. In the further alternative, Plaintiff requests consideration of transfer under 28 U.S.C. § 1406(a) if the Court determines that provision governs the identified jurisdictional or venue defect. Plaintiff does not request transfer of the claims against the remaining defendants.

The District of New Jersey is the proposed transferee forum because Edison Township is a New Jersey municipality and the challenged police encounters occurred in Edison, New Jersey. The federal civil-rights claims invoke subject-matter jurisdiction under 28 U.S.C. § 1331, and a substantial part of the alleged events occurred within the District of New Jersey for purposes of 28 U.S.C. § 1391(b)(2). Under *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132–33 (3d Cir. 2020), a district court lacking personal jurisdiction ***must*** consider whether transfer is appropriate rather than dismissing without undertaking the statutory inquiry.

The interest-of-justice determination is particularly consequential because 42 U.S.C. § 1986 imposes a one-year limitations period, and dismissal followed by commencement of a new action may create additional limitations prejudice. Where § 1631 governs and its prerequisites are satisfied, Congress expressly directs that the transferred action proceed as if filed in the transferee court on the date it was actually filed in the transferor court. Plaintiff invokes that statutory

protection and requests preservation of the original federal filing date. Plaintiff does not ask this Court to decide, merely by ordering transfer, the separate questions of accrual, original pleading sufficiency, relation back, or the ultimate timeliness of any particular claim.

Where 28 U.S.C. § 1406(a) rather than § 1631 governs, transfer remains available even if this Court lacks personal jurisdiction over Edison. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (§ 1406(a) "is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not"). The Supreme Court grounded that holding in the injustice of a limitations bar falling on a plaintiff who filed in good faith in the wrong forum. *Id.* Section 1406(a) contains no filing-date provision comparable to § 1631, and Plaintiff does not contend that either statute automatically resolves the timeliness of any § 1986 claim. She asks that the limitations consequences of dismissal weigh in the interest-of-justice determination under whichever statute applies.

Plaintiff maintains her primary position that ECF No. 93 **should be denied** in its entirety and that this Court should retain jurisdiction. The foregoing request is strictly alternative, made to prevent an unnecessary jurisdictional dismissal and avoid the potential loss of claims through duplicative litigation, and constitutes no concession concerning Edison's asserted jurisdictional defenses.

Plaintiff requests that the Court consider these forms of relief separately, enter express rulings where necessary, and preserve the distinction between non-merits procedural dispositions and dismissals adjudicating the sufficiency of a claim. Plaintiff **does not** concede any of Edison's asserted grounds for dismissal by requesting relief in the alternative. As to jurisdictional discovery, Plaintiff requests either the limited order described in Section II.E or an opportunity to submit the

required supported application before a jurisdictional disposition; the stay remains effective unless the Court grants relief. Plaintiff's proposed order presents this alternative separately from outright denial, corrective service, and an opportunity to seek leave to amend.

Nothing in this filing waives, and Plaintiff expressly preserves: (1) her claims for compensatory damages and punitive damages against defendants and in capacities for which the law permits them; (2) individual-capacity and official-capacity claims against all Defendants; (3) claims against private co-conspirators; (4) her ability to submit supported information to appropriate criminal authorities, without asserting a private right to compel investigation or prosecution; and (5) any remedy available under 42 U.S.C. §§ 1983, 1985, and 1986, or applicable state law. These reservations do not themselves preserve an issue omitted from the pleadings or briefing, extend a deadline, cure defective service, or establish appellate jurisdiction.

Respectfully submitted,

/s/ Galina M. Novakhova

**Galina M. Novakhova**
*Plaintiff, Pro Se*
P.O. Box 17635
Philadelphia, PA 19135
GalinaMN@gmail.com

**All Rights Reserved Without Prejudice**

**Dated: November 20, 2026**